IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCHNITZER STEEL INDUSTRIES, INC., and
SCHNITZER INVESTMENT CORP.,

    Plaintiffs,

            CV 3:10-1174-PK

v.                                           OPINION AND
                                           ORDER

CONTINENTAL CASUALTY COMPANY and
TRANSPORTATION INSURANCE COMPANY,

    Defendants.

PAPAK, Magistrate Judge:

      Plaintiffs Schnitzer Steel Industries, Inc. ("SSI"), and Schnitzer Investment Corp. ("SIC" and, collectively with SSI, "Schnitzer") filed this action against two of its insurers, defendants Continental Casualty Company ("CCC") and Transportation Insurance Company ("TIC" and, collectively with CCC, "CNA" or "defendants") on September 28, 2010. Schnitzer alleges defendants' liability for breach of contract and seeks declaratory judgment in connection with defendants' obligations to undertake Schnitzer's defense under defendants' insurance policies with Schnitzer. This court has jurisdiction over Schnitzer's action pursuant to 28 U.S.C. § 1332, based on the complete diversity of the parties and the amount in controversy.

Page 1 - OPINION AND ORDER

Now before the court is Schnitzer's motion (#43) to compel production of documents. I have considered the motion, oral argument on behalf of the parties, and all of the pleadings on file, and I have inspected the subject documents *in camera*. For the reasons set forth below, Schnitzer's motion is granted in part and denied in part (with leave to refile if warranted), as discussed below.

## LEGAL STANDARD

### I.  Scope of Permissible Discovery, Generally

Federal Civil Procedure Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, the district courts should limit the scope of discovery under specified circumstances, as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> > (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> >
> > (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> >
> > (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance

of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

## II. Motion to Compel

As noted above, Federal Civil Procedure Rule 26(b)(1) authorizes discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Rule 26(b)(1) is to be construed broadly, and encompasses any matter that bears on, or that reasonably could lead to other matters that would bear on, any issue that is or may be in the case. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 351 n. 12 (1978).

If a party elects to oppose a propounding party's discovery requests, the opposing party bears the burden of establishing that the discovery is overly broad, unduly burdensome or not relevant. *See Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-4 (S.D. Ind. 2000). "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condominium Owners Assoc.*, 186 F.R.D. 584, 587 (C.D. Cal. 1999); *see also Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal. 2006).

Federal Civil Procedure Rule 37(a)(3)(B) empowers a propounding party to "move for an order compelling an answer, designation, production, or inspection" if:

> (i) a deponent fails to answer a question asked under Rules 30 or 31;
>
> (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);
>
> (iii) a party fails to answer an interrogatory submitted under Rule 33, or
>
> (iv) a party fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34.

Fed. R. Civ. Pro. 37(a)(3)(B). Moreover, Rule 37(a)(4) provides that "an evasive or incomplete

Page 3 - OPINION AND ORDER

disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Rule 26 provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. Pro. 26(b)(1).

## FACTUAL BACKGROUND

### I. The Parties

Plaintiff SSI is an Oregon corporation headquartered in Portland, Oregon, and engaged in the business of iron and scrap metal recycling. Plaintiff SIC is an Oregon corporation headquartered in Portland, Oregon, and engaged in the business of owning, developing, and managing commercial and residential real estate projects.

Defendant CCC is an Illinois corporation headquartered in Illinois. Defendant TIC is likewise an Illinois corporation headquartered in Illinois, and may be a wholly owned subsidiary of CCC. CCC and TIC are both in the business of selling insurance to companies and individuals.

### II. The Parties' Discovery Dispute

On or around March 17, 2011, Schnitzer served defendants with its first set of requests for production of documents, seeking production of, among other things, all of defendants' files related to Schnitzer's claim, as well as any consultant reports, coverage opinions, claims analyst files, and other documents relating to defendants' decisions regarding Schnitzer's invoices. On or around April 18, 2011, defendants responded to the first set of requests for production, indicating that it would produce responsive, non-privileged documents. Defendants produced documents that it deemed responsive approximately one month later.

On or around April 29, 2011, Schnitzer served defendants with its second set of requests

for production of documents. On May 31, 2011, defendants responded to the second set of requests for production, stating that it had already produced all documents responsive to some of the requests.

In May 2011, Schnitzer issued document subpoenas on defendants' outside claims administrator, Resolute Management, and on defendants' outside environmental bill reviewer, Aspect Consulting. Counsel for defendants responded to the subpoena issued to Resolute Management, indicating that he represented that company and would produce responsive documents.

Schnitzer asserts that some of the witnesses Schnitzer deposed in this action referred in their depositions to documents that Schnitzer argues were responsive to some of its requests for production, and that these documents were never produced to it. It appears that the documents to which Schnitzer is referring in this regard are "invoice tracking" data and related email messages. Defendants acknowledge that they have not yet produced these documents, and provide their estimate that they will be ready for production by August 15, 2011 (and thus may already have been produced as of the date hereof). Defendants contend that all information contained in the documents within the scope of this projected production will be duplicative of information contained in documents already produced.

Fact discovery closed for most purposes on May 31, 2011. Prior to the close of fact discovery, defendants produced a total of approximately 14,000 pages of documents in response to Schnitzer's requests for production.

On June 21, 2011, defendants produced a privilege log to Schnitzer, identifying those documents that had been withheld from defendants' production on grounds of evidentiary

Page 5 - OPINION AND ORDER

privilege or the work-product doctrine. Defendants amended their privilege log on July 7, 2011. The amended privilege log is 65 pages long.

On June 27, 2011, the parties entered into a stipulated protective order, pursuant to which the parties agreed, *inter alia*, that production of documents designated as "Privileged" to each other would not be construed as waiving any evidentiary privilege or the work-product doctrine.

## ANALYSIS

The documents that are the subject of Schnitzer's motion fall into four categories. First, defendants produced their "File Activities Report" to Schnitzer with numerous excerpts of the report redacted out. Schnitzer challenges defendants' assertions of work-product immunity and/or the lawyer-client privilege in the redacted portions of the File Activities Report, and moves to compel defendants to produce the report in an unredacted copy.

Second, defendants produced correspondence between their outside counsel and some of their in-house claims personnel or other staff in similarly redacted form. Schnitzer challenges defendants' assertions of work-product immunity and/or the lawyer-client privilege in the redacted portions of the claims-adjusting correspondence, and moves to compel defendants to produce the correspondence without redaction.

Third, defendants withheld from production in its entirety an exchange of communications between defendants and two consulting firms working with defendants. Schnitzer challenges defendants' assertions of work-product immunity and/or the lawyer-client privilege in the consultant communications and moves to compel defendants to produce the consultant communications in its entirety.

Fourth, and finally, at the time Schnitzer filed its motion defendants had failed to produce

Page 6 - OPINION AND ORDER

certain email messages and documents containing invoice receipt, review, and payment data, as well as certain email correspondence in the possession of some of the witnesses deposed by Schnitzer in this action. However, at oral argument, the parties indicated that their discovery dispute over these email messages and documents had been resolved. Schnitzer's motion is therefore denied as moot as to this latter category of documents, with leave to refile in the event warranted following review of defendants' document production.

I address each of the first three categories of documents below, in turn. Defendants excerpted and withheld from production portions of the File Activities Report and the claims-adjusting correspondence, and the entirety of the consultant correspondence, on the basis of the work-product doctrine and/or of the lawyer-client privilege. Where, as here, a federal district court's subject-matter jurisdiction is based on the diversity of the parties and the amount in controversy, the court must apply federal procedural law and the substantive law of the state in which the court is located. *See Zamani v. Carnes*, 491 F.3d 990, 995 (9th Cir. 2007); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The work-product doctrine is considered to function as a "procedural immunity" rather than as a substantive evidentiary privilege. *See, e.g., Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000); *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998). By contrast, true evidentiary privileges, such as the lawyer-client privilege, are treated as substantive. *See* Fed. R. Evid. 501; *see also, e.g., Liew v. Breen*, 640 F.2d 1046, 1049 (9th Cir. 1981). Thus, in evaluating the merits of Schnitzer's motion, I will treat defendants' assertions of the work-product doctrine as governed by federal procedural law, and defendants' assertions of the lawyer-client privilege as governed by Oregon substantive law.

The federal work-product doctrine is codified at Federal Civil Procedure Rule 26(b)(3). According to the provisions of Rule 26(b)(3), "a party may not [ordinarily] discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). To the contrary, such tangible attorney work product is discoverable only if relevant to a claim or defense asserted by one of the parties to an action and if the propounding party is able to show that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* Moreover, even where such tangible attorney work product may be otherwise discoverable, the courts must nevertheless "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," Fed. R. Civ. P. 26(b)(3)(B), except where such "mental impressions are at issue in a case and the need for the material is compelling," *see Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992). "The burden of establishing protection of materials as work product is on the proponent, and it must be specifically raised and demonstrated rather than asserted in a blanket fashion." *Green v. Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005), *quoting Southern Union Co. v. Southwest Gas Corp.*, 205 F.R.D. 542, 549 (D. Ariz. 2002).

Oregon's lawyer-client privilege is codified at Or. Rev. Stat. 40.225 (Or. Evid. C. 503). Section 225 provides, in relevant part, as follows:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:
>
> (a) Between the client or the client's representative and the client's

Page 8 - OPINION AND ORDER

        lawyer or a representative of the lawyer;

(b)    Between the client's lawyer and the lawyer's representative;

(c)    By the client or the client's lawyer to a lawyer representing another in a matter of common interest;

(d)    Between representatives of the client or between the client and a representative of the client; or

(e)    Between lawyers representing the client.

Or. Rev. Stat. 40.225(2). For purposes of the privilege, a "confidential communication" is "a communication not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Or. Rev. Stat. 40.225(1)(b). "In general, whether a communication is protected by the attorney-client privilege depends on whether the communication is a 'confidential communication' under [Or. Rev. Stat. 40.225](1)(b), whether the communication is made for the purpose of facilitating the rendition of professional legal services to the client as provided in [Or. Rev. Stat. 40.225](2), and whether the communication is between persons described in [Or. Rev. Stat. 40.225](2)(a) through (e)." *Port of Portland v. Or. Ctr. for Envtl. Health*, 238 Or. App. 404, 410 (2010) (citations, footnotes omitted). The party asserting the privilege has the burden to establish its applicability. *See Goldsborough v. Eagle Crest Partners, Ltd.*, 105 Or. App. 499, 503 (1991) (citations omitted).

**I.    File Activities Report**

As noted above, Schnitzer challenges all of defendants' redactions from the File Activities Report made on the basis of the work-product doctrine and the lawyer-client privilege. In connection with the work-product redactions, Schnitzer argues that no portion of the File

Page 9 - OPINION AND ORDER

Activities Report can constitute protected work product because the Report was generated in the ordinary course of defendants' business, and thus would have been produced whether or not defendants had grounds to anticipate imminent litigation. In support of its premise that the File Activities Report was prepared in the ordinary course of business, Schnitzer offers evidence that some of the authors of portions of the report are "internal CNA claims personnel," that claims personnel regularly use the Report to track claims activities, and that unredacted portions of the document address ordinary claims-handling activity. Schnitzer further argues that the redacted portions of the File Activities Report cannot have been produced in anticipation of litigation because the redacted entries were all authored prior to this action's filing date, in some cases several years prior.

Schnitzer overstates the conclusions that may properly be drawn from its proffered premises. First, while it is clear that the File Activities Report as a whole is maintained in the ordinary course of defendants' business, and that regardless of whether defendants anticipated litigation a File Activities Report would have been produced in one form or another, it is also clear that the File Activities Report cannot properly be treated as a single, discrete document. To the contrary, the Report is more properly construed as constituting a collection of separate, diverse documents, collectively generated by various authors to accomplish various purposes. As such, the fact that some File Activities Report entries were authored by claims-adjusting personnel to record ordinary claims-adjusting activity, and are relied upon by defendants' adjustors as a record of such activity, is without bearing on the question whether other, separate entries may have been authored by attorneys on behalf of defendants in anticipation of litigation. Second, while it is accurate to characterize some of the redacted portions of the File Activities

Page 10 - OPINION AND ORDER

Report as having been authored years prior to the date this litigation actually commenced, defendants offer competent evidence, and persuasively argue, that they reasonably anticipated litigation in connection with the complex environmental claims against Schnitzer years prior to the date this action was filed. I therefore reject Schnitzer's argument that defendants' reliance on the protections of the work-product doctrine was *necessarily* misplaced as to every redaction from the File Activities Report.

In connection with the redactions made on the purported basis of the lawyer-client privilege, Schnitzer argues that the privilege must be inapplicable to the File Activities Report in its entirety because, since the File Activities Report is generated in the ordinary course of defendants' business, any attorneys who authored File Activities Report entries must necessarily have done so as claims adjustors or investigators rather than in their capacity as attorneys providing legal services. However, in light of the fact that the File Activities Report is better viewed as a collection of disparate documents than as a single, unified document, it is clear that Schnitzer's argument in connection with the lawyer-client privilege merely begs the question. The fact that some of defendants' claims-adjusting personnel may hold law degrees does not foreclose the possibility that a confidential communication between defendants and their counsel could have been included as or within an entry appearing in the File Activities Report.

Schnitzer additionally argues that defendants necessarily waived any and all applicable privilege in any portion of the File Activities Report by virtue of having produced some portions of the Report. Defendants counter that, under the parties' stipulated protective order of June 27, 2011, production of portions of the File Activities Report cannot constitute waiver of privilege in unproduced portions of the Report. Both sets of parties' arguments in connection with the waiver

Page 11 - OPINION AND ORDER

question are misplaced. Defendants' argument is inapposite because the parties' stipulated protective order provides only that production of documents designated as "Privileged" by one party to another would not be construed as waiving any evidentiary privilege or the work-product doctrine, and is silent as to the effect of production of unprivileged portions of a document containing privileged information. However, Schnitzer's argument likewise fails, and for closely related reasons, because while Schnitzer is correct that "[v]oluntary disclosure of privileged communications constitutes waiver of the privilege for all other communications on the same subject," *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011), *citing Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981), *see also* Or. Rev. Stat. 40.280 (Or. Evid. C. 511) ("A person upon whom ORS 40.225 to 40.295 confer a privilege against disclosure of [a] confidential matter or communication waives the privilege if the person . . . voluntarily discloses or consents to disclosure of any significant part of the matter or communication"), Schnitzer does not assert that defendants produced portions of a privileged communication or privileged communications on the same subject matter as other, unproduced communications, but rather that defendants produced documents as to which no privilege is asserted. As such, applicable case law provides no basis for concluding that defendants' production of undisputedly non-privileged portions of the File Activities Report necessarily waives any assertion of privilege in other portions of the Report.

Notwithstanding the foregoing rejections of Schnitzer's various arguments that defendants' assertions of privilege in portions of the File Activities Report are necessarily and in all instances misplaced, *in camera* inspection of the redacted portions of the File Activities Report establishes without ambiguity that at least the large majority of defendants' assertions of

Page 12 - OPINION AND ORDER

evidentiary privilege or work-product immunity in portions of the Report are unjustified, and in some instances arguably frivolous. Simply by way of non-exhaustive illustration of defendants' unjustified assertions of privilege in portions of the File Activities Report, I note that on the first page of the portions of the File Activities Report produced for *in camera* inspection, Bates-labeled CCC-TIC08404, defendants redacted an entry dated April 21, 2005, and authored by Barbara Kerr, reading in full, "When database came up, did aggregate loss runs and gave to Claims Consultant."[1] This communication is neither fact nor opinion work product, and clearly does not constitute a confidential communication between lawyer and client. As such, it is clearly not subject to procedural immunity or evidentiary privilege.

Schnitzer's motion is therefore granted in part as to the File Activities Report. Within eleven days of the date hereof, defendants shall produce the File Activities Report to Schnitzer with all improperly redacted excerpts therefrom restored. In addition, defendants shall amend their privilege log accordingly – to remove entries as to which the assertion of immunity and/or privilege is withdrawn and to state with particularity sufficient information regarding each remaining assertion of immunity and/or privilege to permit Schnitzer to evaluate the propriety of the assertion – and shall produce the log, as amended, within the same period of time.

Defendants are expressly advised that the protections of the work-product doctrine extend only to tangible documents and things produced by them or by one of their representatives in anticipation of litigation, and to the mental impressions, conclusions, opinions, or legal theories of their attorneys or other representatives concerning the anticipated litigation. Defendants are

---

[1] I note, further, that although this entry has been redacted from the File Activities Report, it has been omitted from defendants' amended privilege log.

Page 13 - OPINION AND ORDER

further advised that the lawyer-client privilege extends only to confidential communications between lawyer and client (and/or their respective representatives) made for the purpose of facilitating the rendition of professional legal services by the lawyer to the client. Thus, procedural immunity or evidentiary privilege may only properly be asserted in a File Activities Report entry where such entry either constitutes or contains such a document, mental impression, or communication. Neither procedural immunity nor evidentiary privilege may properly be asserted in an entry that merely refers or relates to such a document, mental impression, or communication, or merely describes the subject matter of such a document, mental impression, or communication.

Other than as stated above, Schnitzer's motion is denied as to the File Activities Report, with leave to refile if warranted following review of defendants' supplemental production.

## II. Claims-Adjusting Correspondence

As noted above, Schnitzer challenges all of defendants' redactions from the claims-adjusting correspondence made on the basis of the work-product doctrine and the lawyer-client privilege. It is Schnitzer's position that defendants' assertions of privilege in portions of the claims-adjusting correspondence are necessarily misplaced because, although some of the authors of the correspondence are attorneys, in connection with the claims-adjusting correspondence they were acting, not in their capacity as attorneys, but rather as claims adjustors and/or claims investigators. However, while I agree with Schnitzer that a communication that would otherwise constitute a traditional claims-adjusting function does not become privileged merely because either its author or its recipient is a licensed attorney, Schnitzer's argument once again begs the question rather than establishes the truth of its conclusion.

Page 14 - OPINION AND ORDER

*In camera* inspection of the unredacted claims-adjusting correspondence establishes that a large proportion of defendants' assertions of procedural immunity and/or evidentiary privilege in the correspondence is unjustified and/or frivolous. Simply by way of non-exhaustive illustration of defendants' unjustified assertions of privilege in portions of the claims-adjusting correspondence, I note that defendants have redacted all information from the first two pages of the correspondence, Bates-labeled CCC-TIC03449-03450. The redacted information collectively constitutes the two sides of a United States Postal Service certified mail receipt. Again, defendants are expressly cautioned that the protections of the work-product doctrine extend only to tangible documents and things produced by them or by one of their representatives in anticipation of litigation, and to the mental impressions, conclusions, opinions, or legal theories of their attorneys or other representatives concerning the anticipated litigation, and that the lawyer-client privilege extends only to confidential communications between lawyer and client (and/or their respective representatives) made for the purpose of facilitating the rendition of professional legal services by the lawyer to the client. Procedural immunity or evidentiary privilege may only properly be asserted in a portion of the claims-adjusting correspondence where such entry either constitutes or contains such a document, mental impression, or communication. Neither procedural immunity nor evidentiary privilege may properly be asserted in an entry that merely refers or relates to such a document, mental impression, or communication, or merely describes the subject matter of such a document, mental impression, or communication. Where, as in the case of the redactions from CCC-TIC03449-03450, the redacted information at most memorializes the fact that a communication took place between lawyer and client, the assertion of privilege is patently inappropriate.

Page 15 - OPINION AND ORDER

Schnitzer's motion is therefore granted in part as to the claims-adjusting correspondence. Within eleven days of the date hereof, defendants shall produce the claims-adjusting correspondence to Schnitzer with all improperly redacted excerpts therefrom restored. In addition, defendants shall amend their privilege log accordingly – to remove entries as to which the assertion of immunity and/or privilege is withdrawn and to state with particularity sufficient information regarding each remaining assertion of immunity and/or privilege to permit Schnitzer to evaluate the propriety of the assertion – and shall produce the log, as amended, within the same period of time. Other than as stated above, Schnitzer's motion is denied as to the claims-adjusting correspondence, with leave to refile if warranted following review of defendants' supplemental production.

### III.  Consultant Communications

As noted above, Schnitzer challenges defendants' assertion that the consultant communications may properly be withheld from production on the basis of the work-product doctrine and/or the lawyer-client privilege. Schnitzer argues that defendants cannot make the showing that the documents containing the communications were produced in anticipation of litigation, in light of the fact that the documents all date from prior to the date this action was filed, in some cases by six or more years. On that basis, Schnitzer concludes that defendants the consultant correspondence cannot be treated as protected work product.[2] However, as noted above, defendants have made an adequate showing that they began reasonably anticipating litigation in connection with the dispute underlying this action years before Schnitzer filed this

---

[2] Although some documents within the consultant communications rubric were withheld on the basis of the lawyer-client privilege, Schnitzer omits to make any express argument that the lawyer-client privilege is inapplicable to the consultant communications.

Page 16 - OPINION AND ORDER

action. I therefore reject Schnitzer's argument that all of defendants' assertions of procedural immunity in the consultant communications are necessarily unjustified based solely on the dates the communications were authored.

*In camera* inspection of the consultant communications establishes that at least a large proportion of defendants' assertions of procedural immunity and/or evidentiary privilege in the communications is unjustified. By way of non-exhaustive illustration of defendants' unjustified assertions of immunity or privilege in the consultant communications, I note that the first two pages of documents withheld from production, Bates-labeled CCC-TIC04824-04824, constitute a facsimile transmission from one of defendants' consultants to one of defendants' employees of a news story originally appearing in the *Environment Reporter* newspaper, together with a cover letter indicating that the employee should contact the consultant if the employee had "current information on Schnitzer's claim" or questions regarding the consultant's investigation. No portion of the transmission was produced in connection with anticipated litigation, and in no portion of the transmission could defendants have had a reasonable expectation of confidentiality. Defendants' assertion of work-product immunity in the transmission is simply not colorable.

Schnitzer's motion is therefore granted in part as to the consultant communications. Within eleven days of the date hereof, defendants shall produce all portions of the consultant communications not properly subject to procedural immunity or evidentiary privilege to Schnitzer. In addition, defendants shall amend their privilege log accordingly -- to remove entries as to which the assertion of immunity and/or privilege is withdrawn and to state with particularity sufficient information regarding each remaining assertion of immunity and/or privilege to permit

Page 17 - OPINION AND ORDER

Schnitzer to evaluate the propriety of the assertion – and shall produce the log, as amended, within the same period of time. Other than as stated above, Schnitzer's motion is denied as to the consultant communications, with leave to refile if warranted following review of defendants' supplemental production.

## CONCLUSION

Schnitzer's motion (#43) to compel production of documents is granted in part and denied in part (with leave to refile if warranted following review of defendants' document production), as discussed above. Each party shall bear its own costs incurred in connection with Schnitzer's motion, with the proviso that, in the event Schnitzer refiles its motion in whole or in part following review of defendants' document production, at the time such refiled motion is decided the court shall make a new determination as to whether or not the prevailing party's costs incurred in connection with the motion should be shifted to the opposing party. Such new determination shall be made in connection with all costs incurred in connection with the motion, including those costs already incurred as of the date hereof.

Dated this 25th day of August, 2011.

_____
Honorable Paul Papak
United States Magistrate Judge