IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCHNITZER STEEL INDUSTRIES, INC., and
SCHNITZER INVESTMENT CORP.,

        Plaintiffs,

                                        CV 3:10-1174-PK

v.                                    FINDINGS AND
                                    RECOMMENDATION

CONTINENTAL CASUALTY COMPANY and
TRANSPORTATION INSURANCE COMPANY,

        Defendants.

PAPAK, Magistrate Judge:

      Plaintiffs Schnitzer Steel Industries, Inc. ("SSI"), and Schnitzer Investment Corp. ("SIC"

and, collectively with SSI, "Schnitzer") filed this action against two of Schnitzer's insurers,

defendants Continental Casualty Company ("CCC") and Transportation Insurance Company

("TIC" and, collectively with CCC, "CNA" or "defendants") on September 28, 2010.  Schnitzer

alleges defendants' liability for breach of contract and seeks declaratory judgment in connection

with defendants' obligations to undertake Schnitzer's defense pursuant to insurance policies they

issued to Schnitzer.

      By letters dated November 24, 1999, and December 8, 2000, Schnitzer was named as a

Page 1 - FINDINGS AND RECOMMENDATION

potentially responsible party ("PRP") in connection with a Superfund site located in the Portland

Harbor.  In December 1999, Schnitzer notified defendants that it had been so named, and

requested that defendants undertake its defense and indemnify it in connection with the EPA's

investigation of Schnitzer's role in causing environmental damage.  Defendants agreed to

undertake Schnitzer's defense, subject to a reservation of rights, and have been paying a portion

of Schnitzer's defense costs since April 2001.  However, defendants have declined to pay

Schnitzer's attorneys' fees at the full hourly rates requested by Schnitzer, have allegedly failed to

make payments toward Schnitzer's defense costs in timely fashion, have allegedly allocated to

Schnitzer a 40% proportion of Schnitzer's costs incurred in connection with retaining consultants

to assist in Schnitzer's defense, and have allegedly taken other, unspecified, arbitrary actions to

pay Schnitzer less than the full amount of its defense costs and/or to create uncertainty regarding

defendants' obligation to pay Schnitzer's defense costs.  Schnitzer specifically alleges defendants'

liability for breach of contract in an amount in excess of $3 million, plus pre- and post-judgment

interest thereon, and seeks this court's declaration that defendants (i) are jointly and severally

liable "to pay the full amount of Schnitzer's reasonable and necessary defense costs," (ii) are

obligated to pay "fair and reasonable rates of lawyers, consultants, and others hired to defend

Schnitzer," (iii) must "make a reasonably prompt determination and payment of the reasonable

and necessary fees, costs and expenses incurred by Schnitzer," (iv) are "not entitled to arbitrarily

reduce Schnitzer's reasonable and necessary fees, costs, and expenses by allocating an assumed

percentage of such fees, costs, or expenses to Schnitzer," and (v) are "not entitled to take other

arbitrary and unilateral action to delay or entirely avoid paying reasonable and necessary fees,

costs and expenses incurred by Schnitzer."  This court has jurisdiction over Schnitzer's action

Page 2 - FINDINGS AND RECOMMENDATION

pursuant to 28 U.S.C. § 1332, based on the complete diversity of the parties and the amount in controversy.

On August 3, 2011, these chambers recommended that the court grant Schnitzer's motion for partial judgment on the pleadings as to a portion of Schnitzer's claim for declaratory relief. On November 29, 2011, Judge Marsh adopted that recommendation as his own, declaring that defendants are jointly and severally liable to pay the full amount of Schnitzer's reasonable and necessary defense costs, and that defendants must make a reasonably prompt determination and payment of the reasonable and necessary fees, costs and expenses incurred by Schnitzer.

On or around September 15, 2011, defendants produced to Schnitzer the report of defendants' expert, William B. Crow, apparently in the form of a declaration. Attached to Crow's report as Exhibit C was a two-page document described as a "summary" of the rate schedules by which defendants have reimbursed the legal representatives of certain of its insureds engaged in environmental litigation.

Now before the court are (i) Schnitzer's motion (#67) for partial summary judgment as to defendants' third and sixth affirmative defenses, respectively asserting the defenses of waiver and estoppel, and as to Schnizer's claim for declaratory relief to the extent Schnitzer seeks this court's declarations that defendants are jointly and severally liable to pay the full amount of Schnitzer's reasonable and necessary defense costs, and that defendants must make a reasonably prompt determination and payment of the reasonable and necessary fees, costs and expenses incurred by Schnitzer, (ii) defendants' motion (#70) for partial summary judgment as to its estoppel affirmative defense, as to Schnitzer's breach of contract claim to the extent premised on defendants' refusal to pay Schnitzer's attorneys' fees at the full hourly rates requested by

Page 3 - FINDINGS AND RECOMMENDATION

Schnitzer, as to Schnitzer's prayer for pre-judgment interest on its claims for money damages, and, in the alternative to its request for partial summary judgment on Schnitzer's breach of contract claim and/or defendants' estoppel defense, as to Schnitzer's claim for money damages to the extent premised on the theory that the reasonableness of Schnitzer's defense costs should be determined by reference to the hourly rates for legal services prevailing in Los Angeles, California, (iii) Schnitzer's motion (#84) to compel production of documents, by and through which Schnitzer seeks to compel defendants to produce all documents underlying or relating to the document attached as Exhibit C to Crow's expert report, or, alternatively, that the court exclude the document, and all opinion based on it, at trial, and (iv) Schnitzer's motion (#118) for leave to supplement the evidentiary record in connection with its opposition to defendants' motion for partial summary judgment.  I have considered the motions, oral argument on behalf of the parties, and all of the pleadings and papers on file.  For the reasons set forth below, Schnitzer's motion (#67) for partial summary judgment should be granted as to defendants' third and sixth affirmative defenses and otherwise denied as moot, Schnitzer's motion (#118) for leave to supplement the evidentiary record should be denied, defendants' motion (#70) for partial summary judgment should be denied, and Schnitzer's motion (#84) to compel should be granted as discussed below.

## LEGAL STANDARDS

### I.      Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the other. *See* Fed. R. Civ. P. 56; *see also, e.g., Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). A court may not grant summary judgment where the court finds unresolved issues of material fact, even where the parties allege the absence of any material disputed facts. *See id.*

## II.    Scope of Permissible Discovery, Generally

Federal Civil Procedure Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible

at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible

evidence." *Id.* However, the district courts should limit the scope of discovery under specified

circumstances, as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> > (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> >
> > (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> >
> > (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

## III.    Motion to Compel

As noted above, Federal Civil Procedure Rule 26(b)(1) authorizes discovery regarding

any matter, not privileged, that is relevant to the claim or defense of any party.  Rule 26(b)(1) is

to be construed broadly, and encompasses any matter that bears on, or that reasonably could lead

to other matters that would bear on, any issue that is or may be in the case.  *See*, *e.g.*,

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 351 n. 12 (1978).

If a party elects to oppose a propounding party's discovery requests, the opposing party

bears the burden of establishing that the discovery is overly broad, unduly burdensome or not

relevant.  *See Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-4 (S.D. Ind. 2000).

"Boilerplate, generalized objections are inadequate and tantamount to not making any objection

at all." *Walker v. Lakewood Condominium Owners Assoc.*, 186 F.R.D. 584, 587 (C.D. Cal. 1999); *see also Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal. 2006).

Federal Civil Procedure Rule 37(a)(3)(B) empowers a propounding party to "move for an order compelling an answer, designation, production, or inspection" if:

(i) a deponent fails to answer a question asked under Rules 30 or 31;

(ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);

(iii) a party fails to answer an interrogatory submitted under Rule 33, or

(iv) a party fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34.

Fed. R. Civ. Pro. 37(a)(3)(B).  Moreover, Rule 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  Rule 26 provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  Fed. R. Civ. Pro. 26(b)(1).

## FACTUAL BACKGROUND[1]

### I.    The Parties

Plaintiff SSI is an Oregon corporation headquartered in Portland, Oregon, and engaged in the business of iron and scrap metal recycling.  Plaintiff SIC is an Oregon corporation headquartered in Portland, Oregon, and engaged in the business of owning, developing, and managing commercial and residential real estate projects.

Defendant CCC is an Illinois corporation headquartered in Illinois.  Defendant TIC is

---

[1] Except as otherwise provided, the following recital sets forth facts undisputed by either set of parties to this action.

likewise an Illinois corporation headquartered in Illinois, and may be a wholly owned subsidiary

of CCC.  CCC and TIC are both in the business of selling insurance to companies and

individuals.

## II.    The Parties' Dispute Over Defendants' Duty to Defend

From October 1, 1977, through October 1, 1983, Schnitzer was insured under a series of

seven insurance policies issued by defendants, each providing comprehensive general liability

insurance with a per-occurrence limit of $500,000.  The policies provide coverage for accidental

property damage, and that defendants "shall have the right and duty" to defend any lawsuit

against Schnitzer arising out of such property damage.  In addition to insurance from defendants,

Schnitzer was also insured during material periods by other insurers, including Employers

Insurance of Wausau ("Wausau") and Insurance Company of North America ("ACE").

In November 1999, the Oregon Department of Environmental Quality ("ODEQ")

identified Schnitzer as a potentially responsible party in connection with environmental damage

at the Portland Harbor Superfund site, based on Schnitzer's ownership and/or prior ownership of

tracts of land in and around the Burgard Industrial Park, one of which Schnitzer operated as a

scrap metal recycling yard.  In December 1999, Schnitzer gave notice to defendants and its other

insurers of the ODEQ investigation, and requested that defendants defend and indemnify it in

connection with the investigation and any related claims against it.  Approximately one year

later, in December 2000, the United States Environmental Protection Agency ("EPA") similarly

identified Schnitzer as a potentially responsible party in connection with the Portland Harbor

Superfund site.  Later that same month, Schnitzer gave notice to defendants and its other insurers

of the EPA investigation, and requested that defendants defend and indemnify it in connection

Page 8 - FINDINGS AND RECOMMENDATION

with the investigation and any related claims against it.  Since that time, Schnitzer has cooperated with the ODEQ and EPA investigations, and has kept defendants and its other insurers notified of all ODEQ and EPA demands on Schnitzer in connection with the ongoing investigation of the environmental damage at the Portland Harbor site.

On April 19, 2001, defendants agreed to participate in Schnitzer's defense in connection with the ODEQ and EPA claims against it, subject to reservations of its rights to withdraw from the defense in the event of any determination that Schnitzer's potential liability on the claims was subject to a coverage exclusion or in the event the coverage limits of defendants' policies were exhausted by indemnity payments, among other reservations.  Defendants subsequently entered into a cost-sharing agreement with Wausau and ACE, Schnitzer's other insurers, agreeing that defendants would undertake to pay 70% of Schnitzer's defense costs, Wausau would shoulder 20% of Schnitzer's defense costs, and ACE would be responsible for the remaining 10% of Schnitzer's defense costs.  Since that time, defendants have been paying a portion of Schnitzer's costs incurred in connection with its ongoing cooperation with the ODEQ and EPA investigations and in defending the environmental claims against it.

Schnitzer was originally represented by the Portland-based Stoel Rives law firm in connection with the Superfund investigation and claims.  Apparently due to a conflict of interest between Stoel Rives and defendants, on January 16, 2003, defendants advised Schnitzer that "in exercising [their] rights and obligations . . . to defend Schnitzer, [they had] decided to appoint independent counsel to represent Schnitzer's interests" in connection with the Superfund investigation and litigation.  Defendants advised Schnitzer that their selection for replacement counsel was William G. Earle of the Abbott, Davis lawfirm, and that the hourly billing rates at

which the Abbott, Davis firm's services were to be compensated would be capped at $160 for

partners, $140 for senior associates, $125 for junior associates, and $75 for paralegals.

Defendants further advised Schnitzer that defendants would continue to pay costs incurred by

Stoel Rives only "until Mr. Earle [advised] that the transition from Stoel Rives [wa]s complete or

until March 14, 2003, whichever occurs sooner."  Finally, defendants advised Schnitzer that, in

the event Schnitzer objected to being represented by attorney Earle, defendants would not object

to "retaining George W. McKallip, Jr., of the firm Sussman Shank, in his place."

   Schnitzer responded to defendants' advice by letter dated July 24, 2003, indicating its

displeasure with defendants' decision, but nevertheless indicating its agreement that it would

need to retain replacement counsel to represent it in connection with the Portland Harbor matter,

based on its independent identification of a conflict of interest between Stoel Rives and Schnitzer

(separate and discrete from any conflict between Stoel Rives and CNA).  In that connection,

Schnitzer indicated to defendants that, "[g]oing forward, Schnitzer's paramount interest is to

retain an outside counsel that can provide the same experience and expert representation as ha[d]

been provided by the Stoel Rives firm," that "Schnitzer's new counsel must have extensive

experience in multi-party Superfund matters, reviewing and, as necessary, challenging EPA

remedial decisions, sediment investigation and clean up issues, natural resources damages,

complex remedial settlements, and litigation," that "[g]overnment experience, in these types of

cases, particularly experience at EPA and the U.S. Department of Justice" was likewise desirable

in replacement counsel, and that replacement counsel "must . . . be free of material conflicts

associated with the Portland Harbor site."

   Schnitzer indicated that, "[o]ver the past months" preceding its reply of July 24, 2003,

Page 10 - FINDINGS AND RECOMMENDATION

Schnitzer had interviewed attorneys Earle and MacKallip, and concluded that neither

"possess[ed] the necessary depth and breadth of experience in sediment clean ups, natural

resource damages and multi-party Superfund settlements and litigation[ or] experience [with]

EPA and DOJ . . . cases . . . ."  Schnitzer advised defendants that, in consequence, it did not

believe that either Earle or MacKallip could represent it "competently" in connection with the

Portland harbor matter.[2]

Schnitzer further indicated that it had "selected [Los Angeles, California-based attorney]

Jim Dragna of the Bingham McCutchen firm as [its] choice for outside counsel" in the Portland

Harbor matter.[3]  Schnitzer explained that:

> Jim's unique experience in Superfund matters is particularly well suited for this
> matter.  Jim began his career as one of the founding members of EPA's Hazardous
> Waste Enforcement Task Force in Washington D.C., the entity responsible for the
> creation of EPA's Superfund program.  While at EPA, Jim worked on several
> multi-party Superfund matters, including litigation and settlements.  Jim joined the
> U.S. Department of Justice, Environmental Enforcement Section in Washington,
> D.C., where he represented EPA in enforcement litigation nationwide.  When Jim
> left the Department, he was responsible for all of EPA's enforcement matters,
> including Superfund, in EPA Regions IX and X.  Since entering private practice in
> 1988, Jim has focused his practice on hazardous waste matters, including cost
> recovery litigation, Superfund settlements, and natural resource matters, including
> sediment cases.  Jim is presently working on three major matters, one in EPA
> Region IX, that involve sediment clean ups and natural resource damages.  Jim is
> an experienced trial attorney who has litigated Superfund cases and who is well
> versed in the machinations of multi-party Superfund groups (both from inside and
> out) and in the cost effective resolution of complex Superfund matters.  In fact, Jim
> is Common Counsel to several of these multi-party groups in major Superfund
> actions.

---

[2]  The competence of attorney Earle to undertake Schnitzer's defense in and around July
2003 is an issue the parties now contest.

[3]  Evidence of record indicates that Dragna and the Bingham McCutchen firm first began
providing legal services to Schnitzer in connection with the Portland Harbor matter in or around
2002.

Schnitzer indicated that its preference was for attorney Dragna to represent it in all aspects of the Portland Harbor matter.  Schnitzer further indicated that Dragna's then-applicable hourly rate for legal services was $475, "which [wa]s comparable to the other experienced environmental attorneys whom [Schnitzer] interviewed."

On November 10, 2003, counsel for defendants responded to Schnitzer's letter, advising that defendants would "permit Schnitzer to select the law firm Bingham McCutchen as defense counsel, provided that Schnitzer compl[y] with certain conditions."  Defendants specified that "[i]f Schnitzer [wa]s unwilling or unable to comply with these conditions, then CNA w[ould] assign the defense of Schnitzer to a qualified Portland law firm of CNA's choosing."  In support of their right to impose such conditions unilaterally, defendants asserted that, under the terms of their insurance policies issued to Schnitzer, defendants "possesse[d] the right to control the defense of Schnitzer in the Portland Harbor Action," and that "[t]his right of control includes the right to select and retain counsel to represent Schnitzer's interests."

The conditions under which defendants expressed themselves willing to accept Schnitzer's retention of attorney Dragna were as follows:

> First, **the rates paid by CNA for attorneys' fees w[ould] be limited to rates that would be charged by competent local counsel**.  These rates [we]re $175 per hour for partners and $150 per hour for associates [as of November 2003].  In addition, fees for other firm employees, such as legal assistants, w[ould] be reimbursed at the Portland, Oregon market rate.

> Second, CNA w[ould] not pay expenses or fees associated with travel by Bingham McCutchen attorneys and employees from los Angeles to Portland.  These expenses include, but are not limited to, travel time, transportation expenses, hotel expenses, and rental car expenses.

> Third, CNA w[ould] not pay long distance charges for calls between Los Angeles and Portland, excess postage, and any other costs or expenses incurred as a result

Page 12 - FINDINGS AND RECOMMENDATION

of Bingham McCutchen's significant distance from Portland.

(Emphasis supplied.) Defendants insisted that:

> Schnitzer must agree to these conditions in advance and in writing. If Schnitzer [were] unwilling or unable to agree to the conditions set forth above, then CNA w[ould] assign a Portland law firm of its choosing to undertake Schnitzer's defense in the Portland Harbor Action.

On February 24, 2004. Schnitzer wrote to defendants to protest the conditions defendants sought to impose on Schnitzer's retention of attorney Dragna, and to indicate that Schnitzer was "not prepared to accept CNA's proposed billing structure." Schnitzer asserted that it had "searched throughout Oregon and Washington without success" in an effort to identify available, non-conflicted counsel with the expertise to represent Schnitzer competently in the Portland Harbor matter. In consequence, Schnitzer suggested, it was reasonable for Schnitzer to retain California counsel. In addition, Schnitzer took exception to:

> CNA's reliance on the hourly rates charged by local general practitioners as justification for limiting the reimbursable rate for Mr. Dragna and the Bingham firm. There is simply no relationship between the rates charged by a *general* practitioner in the Portland area and the rates charged by an experienced environmental litigator such as Mr. Dragna for representation in a matter as significant as Portland harbor. In fact, CNA made no such rate adjustment when it approved the Stoel Rives firm as Schnitzer's original defense counsel in this action. There is no justification to make such an adjustment now.

Schnitzer therefore requested that defendants reconsider their "proposal to limit Bingham's hourly rate and the associated travel, telephone and mailing costs."

It appears that defendants responded in the negative by telephone to Schnitzer's request for reconsideration, and instead elected to cleave strictly to the conditions set forth in their letter of November 10, 2003. On March 10, 2004, Schnitzer wrote to defendants as follows:

> As we described at length in our previous correspondence, the Portland Harbor

Page 13 - FINDINGS AND RECOMMENDATION

matter is of a complexity that requires counsel with environmental expertise and resources that will enable us to manage our potential exposure in the most effective manner.  It is our opinion that neither of the firms you selected have this level of expertise, and as we advised you, counsel in Portland who do have this level of competence in complex environmental superfund sites are conflicted by their representation of other [potentially responsible parties].

Of paramount importance to us is that Schnitzer be represented by competent counsel who will enable us to obtain the most favorable results in what we anticipate will be an arduous process.  Therefore, in order to move forward, **Schnitzer agrees to the conditions set forth in your letter of November 10, 2003, with regard to the retention of Bingham McCutchen, subject to their reservation of all rights available under applicable law to challenge your clients' decision, as the counsel proposed by your clients do not meet the standards of competent counsel**.

(Emphasis supplied.)

Over the course of the next few years, the Portland Harbor matter proceeded with Bingham McCutchen acting as Schnitzer's legal representative.  Bingham McCutchen would send its invoices directly to Schnitzer, which would forward them on to defendants with handwritten interpolations indicating that the rate caps set forth in defendants' correspondence of November 10, 2003, were to be substituted for Bingham McCutchen's requested rates.

In January 2007, Schnitzer requested an increase in the caps on the hourly rates defendants were willing to pay to reimburse Schnitzer's legal fees.  Following negotiations between the parties, in February 2008 defendants orally agreed to raise the caps.  On March 14, 2008, defendants confirmed their oral consent to an increase in the hourly rate caps though an email message.  According to defendants' email message of March 14, 2008, defendants would reimburse Schnitzer's legal expenses at maximum hourly rates of $260 for law firm partners, $240 for law firm associates, and $100 for paralegals.  Defendants agreed to apply these rate caps retroactively to legal services incurred on or after November 15, 2007, and projected applying

Page 14 - FINDINGS AND RECOMMENDATION

them to future legal services through December 31, 2009.  The parties did not effect any

additional changes to their procedures regarding reimbursement of Schnitzer's legal expenses.

On June 6, 2008, Schnitzer responded by letter to defendants' email confirmation, objecting to

defendants' failure to apply the increased rate caps retroactively to January 2007 (the date the rate

increase was requested), asserting that even the raised rates were insufficient to cover Schnitzer's

legal fees and that the raised rates would be insufficient to pay the legal fees of competent legal

counsel wherever located, and re-asserting its reservation of the "right to assert that the insurers

have breached their duty to defend Schnitzer against the Portland Harbor Claims by failing to

fully reimburse Schnitzer for the defense costs Schnitzer has incurred and will incur to defend

against the Portland Harbor Claims."

     In February 2010, Schnitzer requested an additional increase in the caps on the rates at

which defendants were willing to reimburse Schnitzer's legal expense, to $300 per hour for

partners and $275 per hour for associates.  In connection with its request, Schnitzer expressly

reserved its right to assert "that CNA's legal obligation to reimburse Schnitzer for the reasonable

costs of Schnitzer's defense obligates CNA to reimburse Schnitzer for the full amount of the

defense costs that Schnitzer has incurred."  Defendants rejected the request.

     Schnitzer takes the position in this litigation that defendants are in breach of contract as a

result of their refusal to compensate Schnitzer for its legal expenses at Bingham McCutchen's full

requested rates, alleged at the time this action was filed to range between $360 and $795 per

hour.  In addition, it is Schnitzer's position that defendants have breached their insurance

contracts with Schnitzer by failing to pay Schnitzer's invoices "promptly," by failing to make any

payment to compensate Schnitzer in connection with legal services provided by contract

Page 15 - FINDINGS AND RECOMMENDATION

attorneys retained and supervised by Bingham McCutchen in excess of the amounts paid by

Bingham McCutchen directly to the contact attorneys, by requiring Schnitzer to shoulder 40% of

all costs incurred in connection with the retention of consultants hired to perform certain "Source

Control Evaluation" tasks relating to the Portland Harbor investigation, and by taking other

"wrongful, arbitrary and unilateral action" including unspecified additional reductions in the

amounts paid to Schnitzer.

By and through this action, Schnitzer seeks in excess of $3 million in damages from

defendants resulting from defendants' alleged breach of contract, including both pre- and post-

judgment interest thereon.  In addition – setting aside the prayed-for declarations this court has

already issued in this action – Schnitzer seeks this court's declarations that defendants are

obligated to pay the "fair and reasonable rates of lawyers, consultants, and others hired to defend

Schnitzer," are "not entitled to arbitrarily reduce Schnitzer's reasonable and necessary fees, costs,

and expenses by allocating an assumed percentage of such fees, costs, or expenses to Schnitzer,"

and are "not entitled to take other arbitrary and unilateral action to delay or entirely avoid paying

reasonable and necessary fees, costs and expenses incurred by Schnitzer."

## III.    The Parties' Discovery Dispute

On or around September 15, 2011, defendants produced to Schnitzer the report of

defendants' expert, William B. Crow, in the form of a declaration.  Attached to Crow's report as

Exhibit C thereto was a two-page document setting forth certain hourly rate schedules by which

defendants have reimbursed the legal expenses of some of its insureds engaged in environmental

litigation.

Crow expressly states in his report that he reviewed the "schedule of rates paid by

Page 16 - FINDINGS AND RECOMMENDATION

[defendants] for environmental defense counsel in the Pacific Northwest during the relevant time frame" that he attached to his report as Exhibit C. Crow found the rates therein set forth to be "in line with" the rates at which defendants have been reimbursing Schnitzer's attorney fees. Crow further found the listed rates "to be a fair representation of reasonable rates for attorneys defending the type of claims at issue here." Crow expressly stated that his opinion that Bingham McCutcheon's rates are "unreasonable and not consistent with rates charged by Oregon lawyers who could have capably handled the litigation on behalf of Schnitzer" is based in part on the rates set forth in his Exhibit C. There is no suggestion that Crow at any time reviewed any other documents relating to the rates set forth in his Exhibit C, or that he took any steps to verify or cross-check the accuracy of the listed rates.

Schnitzer now takes the position that it is entitled to production of all documents in defendants' possession or control "supporting, contradicting, or otherwise relating to the" data set forth in the rate schedule reviewed by Crow and attached as Exhibit C to his expert report. Defendants take the contrary position that Schnitzer is entitled to no more than the rate schedule itself, to which Schnitzer already has access.

## ANALYSIS

As noted above, the parties have filed cross-motions for partial summary judgment as to defendants' asserted affirmative defense of estoppel. Schnitzer additionally moves for partial summary judgment as to defendants' asserted affirmative defense of waiver and as to its own claim for declaratory relief to the extent it seeks this court's declarations that defendants are jointly and severally liable to pay the full amount of Schnitzer's reasonable and necessary defense costs, and that defendants must make a reasonably prompt determination and payment of the

reasonable and necessary fees, costs and expenses incurred by Schnitzer.  Defendants

additionally move for partial summary judgment as to Schnitzer's breach of contract claim to the

extent premised on defendants' refusal to pay Schnitzer's attorneys' fees at the full hourly rates

requested by Schnitzer and as to Schnitzer's prayer for pre-judgment interest on its asserted

claims for money damages, and, in the alternative to partial summary judgment in defendants'

favor in connection with Schnitzer's breach of contract claim and/or with defendants' estoppel

affirmative defense, as to Schnitzer's claim for money damages to the extent premised on the

theory that the reasonableness of Schnitzer's defense costs should be determined by reference to

the hourly rates for legal services prevailing in Los Angeles, California.

      Schnitzer further moves to compel defendants to produce all documents underlying or

relating to the document attached as Exhibit C to Crow's expert report, or, alternatively, that the

court exclude that document, and all opinion based on it, at trial.  Finally, Schnitzer moves for

leave to supplement the evidentiary record.

## I.      Schnitzer's Motion for Partial Summary Judgment as to Defendants' Affirmative Defense of Waiver

      By and through their answer to Schnitzer's complaint, defendants assert the affirmative

defense of waiver.  Specifically, it is defendants' position that by expressly agreeing to accept the

rate caps that defendants imposed as a condition of their agreement to permit Schnitzer to retain

the Bingham McCutchen firm (albeit with an express reservation of rights) and by subsequently

invoicing defendants only for fees calculated in compliance with the imposed rate caps, Schnitzer

effectively waived its right to seek compensation for legal services provided by Bingham

McCutchen attorneys at rates in excess of the imposed caps.

Under Oregon law, "adults with the capacity to do so generally are free to waive a panoply of rights, statutory and constitutional, so long as the waiver is knowing and intentional." *McInnis & McInnis*, 199 Or. App. 223, 236 (2005) (citations omitted); *see also*, *e.g.*, *Bennett v. Farmers Ins. Co.*, 332 Or. 138, 156-157 (2001) (noting that "waiver . . . appl[ies] broadly to any contract term" and finding waiver of contractual rights enforceable where both voluntary and unequivocal). "A contractual waiver requires the intentional relinquishment of a known right, manifested in an unequivocal manner" *McMillan v. Follansbee*, 194 Or. App. 145, 153 (2004). Here, the evidence establishes that Schnitzer at no time unequivocally relinquished its right – if any – to seek compensation for legal services in connection with its defense in the Portland Harbor matter at hourly rates in excess of the applicable imposed rate caps. To the contrary, Schnitzer's purported acceptance of defendants' terms, far from constituting unequivocal relinquishment of the right to seek compensation at rates in excess of the caps, contained an express reservation of precisely that right. Moreover, although Schnitzer thereafter sought compensation only at rates consistent with the rate caps, in its communications with defendants it consistently re-affirmed that it continued to do so under its asserted reservation of rights, expressly reiterating its reservation of the "right to assert that the insurers have breached their duty to defend Schnitzer against the Portland Harbor Claims by failing to fully reimburse Schnitzer for the defense costs Schnitzer has incurred and will incur to defend against the Portland Harbor Claims" in June 2008, and its reservation of the right to assert "that CNA's legal obligation to reimburse Schnitzer for the reasonable costs of Schnitzer's defense obligates CNA to reimburse Schnitzer for the full amount of the defense costs that Schnitzer has incurred" in February 2010. If Schnitzer at any time had a right to seek compensation for legal services

provided by Bingham McCutchen attorneys at rates in excess of the imposed caps, its consistent, repeated, express reservation of the right to do so throughout the course of the parties' dealings forecloses any possibility that it could have waived that right.

In opposition to Schnitzer's motion, defendants appear to argue that Schnitzer is not entitled to partial summary judgment as to the waiver defense because Schnitzer never had the right it now asserts, so that its purported reservation of rights was without legal effect. This argument is patently flawed: if Schnitzer never had the right it now asserts, it cannot have waived that right, so that (on the *arguendo* assumption that Schnitzer never had the right to seek compensation for legal services in connection with its defense in the Portland Harbor matter at an hourly rate in excess of the imposed rate caps) while defendants could be expected ultimately to prevail as to the question of Schnitzer's right to avoid the imposed rate caps, they could not do so on grounds of waiver.

For purposes of Schnitzer's motion for partial summary judgment as to defendants' waiver defense, it is therefore unnecessary to determine whether or not Schnitzer actually had the rights it purported to reserve at the time it purported to reserve them. Either Schnitzer had the right to seek compensation for legal services at rates in excess of the imposed rate caps, in which case its reservation of that right was sufficient to defeat defendants' waiver defense, or it did not have a right to be waived, in which case the defense is inapposite. In either event, Schnitzer is entitled as a matter of law to partial summary judgment as to defendants' third affirmative defense, asserting the defense of waiver.

Page 20 - FINDINGS AND RECOMMENDATION

## II.    The Parties' Cross-Motions for Partial Summary Judgment as to Defendants' Affirmative Defense of Estoppel

Defendants assert the affirmative defense of estoppel without specifying whether equitable or promissory estoppel is intended.  It appearing likely that defendants may have intended to assert both varieties of estoppel, I analyze the potential applicability of each variety in turn.

"To constitute an equitable estoppel, or estoppel by conduct," under Oregon law:

(1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it.

*Guardian Mgmt., LLC v. Zamiello*, 194 Or. App. 524, 530 (2004), *quoting Bennett v. City of Salem et al.*, 192 Or. 531, 541 (1951).  To the extent that defendants intend to assert an equitable estoppel defense, their theory appears to be that Schnitzer's acquiescence to the rate caps that defendants imposed as a condition of their agreement to permit Schnitzer to retain the Bingham McCutchen firm (albeit conditioned by an express reservation of rights), considered together with Schnitzer's subsequent conduct in invoicing defendants only for reimbursement of legal expenses in amounts consistent with the imposed rate caps, constituted the requisite "false representation."  However, the facts do not support any such construction.  To the contrary, Schnitzer expressly agreed to accept and abide by the rate caps only provisionally, subject to an express reservation of rights that can only be interpreted as including both the right (to whatever extent Schnitzer had any such right) to challenge the rate caps themselves and the right to seek compensation at rates in excess of the applicable caps.  Schnitzer's provisional consent to the rate caps, containing as it did such an express reservation (and followed as it was by repeated,

Page 21 - FINDINGS AND RECOMMENDATION

consistent affirmations that Schnitzer continued to agree to defendants' imposed conditions

subject to express reservations of right), cannot properly be characterized in any relevant sense as

false, nor even as materially misleading.  Although defendants may have elected to construe the

express reservation as nugatory, and therefore Schnitzer's consent as unequivocal, they cannot

reasonably claim to be surprised that Schnitzer now seeks to exercise the right it consistently and

expressly purported to reserve.  Because Schnitzer's representation cannot properly be construed

as false, the equitable estoppel defense is necessarily inapplicable.

Under Oregon law, the elements of promissory estoppel are:

(1)     a promise
(2)     which the promisor, as a reasonable person, could foresee would induce
        conduct of the kind which occurred,
(3)     actual reliance on the promise,
(4)     resulting in a substantial change in position.

*Neiss v. Ehlers*, 135 Or. App. 218, 223 (1995) (internal quotation marks omitted), *quoting Bixler*

*v. First National Bank*, 49 Or. App. 195, 199-200 (1980).  To the extent defendants seek to assert

the defense of promissory estoppel, their theory appears to be that Schnitzer's March 10, 2004,

response to the conditions set forth in defendants' letter of November 10, 2003, on defendants'

consent to Schnitzer's retention of Bingham McCutchen constituted a "promise" to refrain from

seeking compensation at rates in excess of the imposed caps.

The first problem with defendants' theory of promissory estoppel is that Schnitzer's

response is simply not properly cognizable as a promise.  Rather than a promise, Schnitzer's

response bears the hallmarks of a counteroffer:  defendants proposed an agreement, and Schnitzer

purported to accept the offered agreement, subject to an additional term.  Even to the extent (if

any) that Schnitzer's response may appropriately be treated as a promise, however, defendants'

promissory estoppel theory additionally suffers from a defect closely related to the flaw in their equitable estoppel defense, namely, the failure to account for Schnitzer's express reservation of rights.  In light of Schnitzer's express reservation of its rights to challenge the imposed rate caps and to seek reimbursement of its legal expenses at rates exceeding the caps, Schnitzer could not reasonably have foreseen that defendants would elect to construe Schnitzer's response as though no such rights had been reserved.  Moreover, even if Schnitzer were estopped from refuting its construed "promise," because the promise was subject to reservation of the right to challenge the rate caps, Schnitzer does not now seek to do anything inconsistent with its commitment to defendants.  Schnitzer's claims are not within the scope of defendants' asserted promissory estoppel defense.

  As they did in connection with their waiver defense, defendants appear to argue that, on the theory that Schnitzer had no right to reserve, Schnitzer is not entitled to partial summary judgment as to their estoppel defense(s) because its purported reservation of rights was meaningless.  If defendants' theory that Schnitzer has never had a reservable right to challenge the imposed rate caps is correct, defendants might ultimately prevail as to the applicable components of Schnitzer's claims for money damages, but would not do so on grounds of estoppel.  Defendants' arguments that it should prevail on grounds unrelated to estoppel provide no reason for modifying the analysis set forth above.

  For the foregoing reasons, Schnitzer's motion for partial summary judgment should be granted as to defendants' sixth affirmative defense, asserting the defense of estoppel, and defendants' motion for partial summary judgment should be denied as to the estoppel defense.

Page 23 - FINDINGS AND RECOMMENDATION

**III.    Schnitzer's Motion for Partial Summary Judgment as to its Claim for Declaratory Relief**

As noted above, Schnitzer has moved for partial summary judgment as to its claim for declaratory relief, to the extent it seeks this court's declarations that defendants are jointly and severally liable to pay the full amount of Schnitzer's reasonable and necessary defense costs, and that defendants must make a reasonably prompt determination and payment of the reasonable and necessary fees, costs and expenses incurred by Schnitzer.  Also as noted above, Judge Marsh has already issued the requested declarations, by and through his order (#87) dated November 29, 2011.  In consequence, Schnitzer's motion for partial summary judgment as to its declaratory judgment claim should be denied as moot.

**IV.    Schnitzer's Motion for Leave to Supplement the Evidentiary Record**

On March 1, 2012,  more than fifty days after the parties' cross-motions for partial summary judgment were taken under advisement, Schnitzer moved for leave to supplement the evidentiary record in opposition to defendants' various arguments in favor of summary judgment as to Schnitzer's claims for short-paid attorney fees.  Specifically, Schnitzer seeks leave to offer into evidence excerpts from the transcript of David B. Markowitz, Schnitzer's own expert witness.  As discussed in greater detail below, Schnitzer has already offered into evidence excerpts from Markowitz' expert report.

Schnitzer argues, on the basis of opinions issued by district courts other than the District of Oregon, that this court has discretion to allow the parties to supplement the record after the close of briefing and after argument, where good cause exists to do so.  Schnitzer further argues that good cause exists for doing so here, because Markowitz was not deposed until February 24,

Page 24 - FINDINGS AND RECOMMENDATION

2012, well after the close of briefing and well after defendants' motion was taken under advisement.

Assuming *arguendo* that this court does indeed enjoy such discretion, I disagree with Schnitzer that good cause for supplementation exists here. Markowitz is Schnitzer's own witness, and Schnitzer offers no explanation as to why Markowitz could not have either included the content of his deposition testimony in his expert report or, in the alternative, provided Schnitzer with a declaration of that same testimony at or before the time Schnitzer's opposition memorandum was due. I therefore recommend that the court deny Schnitzer's motion for leave to supplement the record, and decline to consider the proffered supplemental evidence.

## V.    Defendants' Motion for Partial Summary Judgment as to Schnitzer's Claim for Breach of Contract

Defendants move for partial summary judgment as to certain components of Schnitzer's prayer for money damages in connection with its breach of contract claim. Defendants characterize their motion as seeking an order "dismissing Schnitzer's claim for recovery of unpaid attorney fees," apparently in its entirety. Defendants further characterize their position regarding their motion, and regarding Schnitzer's claim that defendants breached their insurance contracts with it by failing to reimburse it for all of its attorney fees incurred in connection with defending the Portland Harbor matter, as follows:

> Defendants seek dismissal of Schnitzer's legally and factually deficient claims related to allegedly unpaid defense fees. Paramount among Schnitzer's unsupported claims is its asserted right to hire defense counsel of its own choosing, even counsel far outside the forum, and force its insurers to pay rates that far exceed reasonable fees in the local forum. There is, however, no genuine issue of material fact supporting this claim. Defendants request that the Court decide that no such right exists under Oregon law. In the absence of this right, Schnitzer's other attorney fee-related claims fail as well.

Page 25 - FINDINGS AND RECOMMENDATION

As a preliminary matter, I take issue in two respects with defendants' characterization of their motion and of the legal posture in which it is presented.  First, Schnitzer's "asserted right to hire defense counsel of its own choosing" cannot properly be viewed as "[p]aramount" among the claims of which defendants seek dismissal, because Schnitzer does not assert its right to select its own counsel among its claims against the defendants.  While the court may have occasion to determine whether Schnitzer had any such right in determining the merits of Schnitzer's breach of contract claim, in the absence of any claim for declaratory judgment as to the "asserted" right, Schnitzer's position regarding that right is not a "claim" potentially subject to dismissal by this court.

Second, several of defendants' arguments in support of its motion appear to rely upon or relate to defendants' position that "[i]n the absence of th[e] right [to hire defense counsel of Schnitzer's own choosing], Schnitzer's other attorney fee-related claims fail as well."  This position is simply not defensible.  Assuming *arguendo* that an insured entirely lacks any right to select its own defense counsel after its insurer undertakes its defense, there can be no dispute that the insurer must compensate its insured for the fees charged by insurer-selected counsel, and that such compensation must be at a reasonable rate.  In the event the insurer places unreasonable caps or other conditions on the rates at which the insured's legal expenses may be reimbursed, absent an enforceable agreement to the contrary the insured has the clear right to seek compensation at a reasonable rate through litigation.  That clear right, entirely orthogonal to the "asserted" right to hire defense counsel of an insured's own choosing, underlies Schnitzer's prayer for money damages to the extent premised on short-paid attorney fees.  The right to retain defense counsel of Schnitzer's own choosing is likewise entirely orthogonal to Schnitzer's prayer

Page 26 - FINDINGS AND RECOMMENDATION

for money damages to the extent premised on defendants' alleged failure to compensate Schnitzer

fully for legal services performed by contract lawyers hired by Bingham McCutchen.  I take these

"attorney fee-related claims" asserted by Schnitzer to be entirely outside the scope of defendants'

motion, notwithstanding defendants' contrary characterization.

In light of the foregoing – and consistently with the arguments defendants offer in support

of their motion – I construe the scope of defendants' motion for partial summary judgment as to

Schnitzer's breach of contract claim for money damages as limited to the narrow issue of whether

defendants are entitled to partial summary judgment on that claim on the grounds that the parties

entered into an enforceable agreement regarding the maximum hourly rates at which Schnitzer's

defense counsel's legal services could be compensated.

So construed, analysis of defendants' motion closely tracks the analyses set forth above in

connection with the motions addressing defendants' waiver and estoppel defenses.  In January

2003, defendants advised Schnitzer that they had "decided to appoint independent counsel" to

replace Stoel Rives as Schnitzer's defense counsel in connection with the Portland Harbor matter,

and had selected attorney William G. Earle to serve in that capacity.  Defendants further advised

that, in the event Schnitzer objected to the appointment of Earle, defendants would not object to

the appointment of attorney George W. McKallip in Earle's stead.  In July 2003, Schnitzer

responded that it did not believe either Earle or MacKillip was competent to represent it in a

matter of the Portland Harbor Superfund litigation's complexity, and purported to advise

defendants that it had selected attorney Jim Dragna and the Bingham McCutchen firm as

replacement counsel, in lieu of defendants' selections.  In November 2003, defendants advised

Schnitzer that they would permit Schnitzer to select Dragna and Bingham McCutchen, but solely

on the condition that Schnitzer agree to specified caps in the hourly rates at which Schnitzer's counsel's legal services would be compensated (among other conditions not at issue in connection with defendants' motion).  Following further negotiations among the parties, in March 2004, Schnitzer purported to agree to defendants' conditions, including the hourly rate caps, but expressly stated that its agreement was "subject to [Schnitzer's] reservation of all rights available under applicable law to challenge [defendants'] decision, as the counsel proposed by [defendants] do not meet the standards of competent counsel."

As discussed above, while defendants strenuously argue that Schnitzer's reservation was either too vague to be given effect or so limited in its express scope as to apply only to defendants' decision regarding reasonable rate caps by reference to Portland standards only, considered in context the reservation can only be construed as applying to defendants' "decision" to cap the maximum hourly rates at which Bingham McCuthen's legal services could be compensated.  As such, Schnitzer's March 2004 communication functions not as acceptance of defendants' offer of November 2003 on its own terms, but rather as a counteroffer that defendants subsequently accepted by performance.  The parties' agreement as negotiated between January 2003 and March 2004 thus does not prevent Schnitzer from seeking compensation for its attorneys' legal services in excess of defendants' imposed rate caps:  Schnitzer's reservation of its right to do so was necessarily a part of the parties' agreement.  Defendants are therefore not entitled to partial summary judgment as a matter of law as to Schnitzer's breach of contract claim for short-paid attorney fees on grounds of the parties' negotiations between January 2003 and March 2004 regarding hourly fee caps.

Also as discussed above, defendants argue that Schnitzer's reservation of rights was

Page 28 - FINDINGS AND RECOMMENDATION

necessarily a legal nullity, because Schnitzer lacked any entitlement to select its own defense

counsel.  I agree with Schnitzer that the question whether Schnitzer was entitled to reject

defendants' selected counsel in favor of its own selection is not at issue in connection with

defendants' motion.  Assuming *arguendo* that Schnitzer entirely lacked any right to reject counsel

unilaterally selected by defendants, the foregoing analysis remains valid because defendants did

not make any such unilateral selection.  Presented with Schnitzer's counteroffer containing an

express reservation of rights, defendants neither rejected the counteroffer nor ended the

negotiations by exercising their presumed right to make unilateral selection of Schnitzer's

defense counsel, but rather proceeded as though in acquiescence to Schnitzer's reservation.

Because defendants did not exercise the right to select Schnitzer's counsel over Schnitzer's

objection, that right does not come into play in interpreting the parties' agreement regarding rate

caps.

**VI.    Defendants' Alternative Motion for Partial Summary Judgment as to Schnitzer's Theory of Recovery to the Extent Premised on the Proposition that the Reasonableness of Schnitzer's Attorney Fees Should be Measured by Reference to Market Rates Prevailing in Los Angeles, California**

        In the alternative to its arguments in favor of partial summary judgment as to Schnitzer's

prayer for money damages for short-paid attorney fees and/or as to defendants' estoppel defense,

defendants request partial summary judgment in their favor as to the proposition that the

reasonableness of Schnitzer's incurred attorney fees must be measured by reference to market

rates prevailing within the forum in which the Portland Harbor matter is being litigated.

        The Oregon courts do not appear ever to have addressed the issue raised by defendants'

motion (and by Schnitzer's prayer for damages), namely, whether an insured may ever recover

from its insurer attorney fees incurred in the defense of a covered claim at rates prevailing in a legal market outside the district in which the claim was litigated and, if so, under what circumstances the insured may recover at such rates.  Indeed, it appears that this issue has rarely been addressed by the courts of any American jurisdiction.  Among the courts to have expressly addressed the question is the Middle District of Georgia, which in a pair of unpublished decisions held that "a party may recover fees based on rates outside the district where the court sits if the party can show why it was necessary to go outside the district and obtain counsel at higher rates." *Lamensdorf v. Welin*, Case No. 5:09-CV-424 (MTT), 2011 U.S. Dist. LEXIS 142326 (M.D. Ga. Dec. 12, 2011); *see also Mun Hwa Broad. Corp v. Kim*, Case No. 5:07-CV-08 (WDO), 2007 U.S. Dist. LEXIS 42787 (M.D. Ga. June 13, 2007).

Upon analysis of the decisions of the Oregon courts regarding an insurers' duty to defend, I conclude that the Oregon courts would likely agree with the reasoning of the Middle District of Georgia.  It is well settled in Oregon that "a liability insurer who undertakes a duty to defend owes its insured a [heightened] duty of care that exists independent of the insurance contract. . . ." *Conway v. Pacific Univ.*, 324 Or. 231, 240 (1996) (citations omitted).  That is, "[t]he duty to defend requires that the insurer exercise reasonable care to protect its insured's interests, in addition to its own." *Maine Bonding & Casualty Co. v. Centennial Ins. Co.*, 298 Or. 514, 519 (1985); *see also Safeco Ins. Co. of Am. v. Barnes*, 133 Or. App. 390, 395 (1995) ("once [insurer] assumed th[e] duty to defend its insured], it was obligated to defend in a manner that protected [the insured]'s interests as well as its own").  Moreover, "[w]here . . . a liability insurer agrees to defend its insured against third-party claims, a failure to defend adequately is actionable at law." *Goddard v. Farmers Ins. Co.*, 173 Or. App. 633, 637 (2001).  The hallmark of the duty

of care an insurer owes to its insured thus appears to be the reasonableness of the insurer's arrangements in behalf of its insured.

Schnitzer asserted in its March 10, 2004, letter to defendants that it reserved its right to challenge defendants' decision (presumably, defendants' decision to cap the rates at which Schnitzer's counsel of choice would be reimbursed at rates purportedly prevailing in Portland) on the express ground that "the counsel proposed by [defendants] d[id] not meet the standards of competent counsel." The asserted ground appears to be premised on a mischaracterization of Oregon law. That is, Oregon law does not provide standards for measuring the competence of *counsel*. Instead, the Oregon Rules of Professional Conduct expressly require only that lawyers provide competent *representation* of their clients, and provide standards defining competence in representation only. *See* Or. R. Prof. Con. 1.1 ("Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation"). Because it is effectively impossible to determine in advance and with certainty whether the representation an attorney will provide in the future will meet the standards of competence – with enough time to prepare, virtually any attorney might be able to obtain the knowledge and skill and to achieve the thoroughness and preparation reasonably necessary for virtually any representation – it necessarily follows that an insurer is compliant with the duty of care it owes to its insured when, in the duty to defend context, it selects counsel to defend its insured that, under all of the circumstances, can reasonably be expected to provide competent *representation* as of the time the selection is made.

It further follows that if no such counsel exist within the forum in which the action against the insured is being litigated, an insurer would violate its duty of care if it required its

Page 31 - FINDINGS AND RECOMMENDATION

insured to accept appointment of local counsel.  Under Oregon law, as noted above, such a

violation would be actionable at law.  An insured whose insurer violated its duty of care by

insisting upon counsel that could not reasonably be expected to provide competent representation

would then have the option either (i) to accept the selection and, in the event insurer-selected

counsel failed to provide a competent defense, to bring a post-representation action against its

insurer, its counsel, or both, or (ii) instead to insist upon counsel reasonably likely to provide

competent representation.  However, it does not follow from the foregoing that an insured opting

to insist upon retaining counsel reasonably likely to provide competent representation would

enjoy unfettered discretion to select such counsel without regard to expense.  To the contrary,

even under the circumstance that no local counsel exist who can reasonably be expected to

provide competent representation, because an insured under a duty to defend has the right to

control the insured's defense, *see e.g. Maine Bonding & Casualty*, 298 Or. at 517, an insurer

could comply with its duty of care by selecting any non-local attorney or firm that could

reasonably be expected to provide competent representation, wherever located, including the

cheapest such counsel willing to travel to represent the insured.

The foregoing analysis leads me to conclude that the holding of the Middle District of

Georgia discussed above – that an insured may recover fees from its insurer based on rates other

than those prevailing within the market wherein the litigation against the insured is taking place

"if the party can show why it was necessary to go outside the district and obtain counsel at higher

rates" – may be derived from Oregon case law establishing that an insurer under a duty to defend

has the right to control its insured's defense but owes its insured a duty of reasonable care.  I

therefore assume in the analysis that follows that the Oregon Supreme Court would agree that an

Page 32 - FINDINGS AND RECOMMENDATION

insured may be entitled to recover attorney fees from its defending insurer at rates prevailing in a market other than the legal market within which the litigation against the insured is proceeding, but only (i) where no local counsel available to represent the insured can reasonably be expected to provide competent representation and (ii) where no reasonable effort to locate non-local counsel both willing to represent the insured and reasonably likely to provide competent representation could be successful.

Here, defendants have elected for purposes of their motion for partial summary judgment to limit their evidentiary proffer in support of the availability of local counsel who might reasonably be expected, as of approximately March 10, 2004, to provide Schnitzer with competent representation, to evidence regarding the availability and expertise of attorneys Earle and MacKallip, the two attorneys defendants proposed to retain on Schnitzer's behalf in their letter of January 16, 2003.[4]  Schnitzer offers in opposition to defendants' motion excerpts from the expert report of David B. Markowitz, who opines that to provide competent representation of Schnitzer in connection with the Portland Harbor matter, a lawyer or firm would need to have "extensive" experience in handling "a high level of complex legal and scientific issues; difficult administrative interactions; a large volume of sites and historical records; and; a large number of adverse parties, including governments," and in addition would need the capacity "to commit significant resources over an extended period of time."  Markowitz expressly opines that it was "necessary and reasonable" for Schnitzer to select legal representatives with such experience and capacity.  Markowitz further opines that neither Earle nor MacKallip nor any other non-

---

[4]  I note that defendants are under no restriction requiring them to limit their proof on this point to those attorneys whose ability to provide competent representation the attorneys discussed contemporaneously with their retention of counsel.

conflicted Portland attorney "had the required experience," and that their respective law firms lacked "sufficient depth."  In addition, Markowitz opines that it was "reasonable and necessary" for Schnitzer to retain attorney Dragna and the Bingham McCutchen firm.

Although I by no means find that Schnitzer's evidence is sufficient to establish the reasonableness of the Bingham McCutchen firm's requested rates, Markowitz's report is at minimum sufficient to create a question of fact as to the absence of available Portland counsel who might reasonably be expected to provide Schnitzer with competent representation and as to the reasonableness of Schnitzer's decision to retain Los Angeles counsel.  In consequence, defendants have failed to meet their burden to establish their entitlement to judgment as a matter of law, and defendants' motion for partial summary judgment should be denied to the extent defendants seek judgement as to the proposition that the reasonableness of Schnitzer's incurred attorney fees must be measured by reference to market rates prevailing within this forum.

## VII.   Defendants' Motion for Partial Summary Judgment as to Schnitzer's Prayer for Pre-Judgment Interest

Schnitzer prays for pre-judgment interest on some or all of its claims for money damages. In connection with a prevailing plaintiff's entitlement to pre-judgment interest on money damages, Or. Rev. Stat. 82.010 provides that:

> The rate of interest for the following transactions, if the parties have not otherwise agreed to a rate of interest, is nine percent per annum and is payable on:
>
> (a)   All moneys after they become due; but open accounts bear interest from the date of the last item thereof.

Or. Rev. Stat. 82.010(1).

That uncompromising language, however, has long been subject to a judicial gloss.  Interpreting a predecessor statute to ORS 82.010(1)(a), the Supreme Court

held that a party can receive prejudgment interest only when the "'exact pecuniary amount was either *ascertained*, or *ascertainable* by simple computation, or by reference to generally recognized standards such as market price,' and where 'the time from which interest * * * must run * * * can be ascertained.'" *Public Market Co. v. Portland*, 171 Ore. 522, 625, 138 P.2d 916 (1943) (quoting 1 *Sedgwick on Damages* § 300, 571 (9th ed 1916)) (emphasis in original). **In determining whether the amount of the damages and starting date of the interest are ascertainable, we do not operate from the perspective of the parties during litigation but from an objective, post-judgment perspective.** *Strader v. Grange Mutual Ins. Co.*, 179 Ore. App. 329, 339, 39 P.3d 903, *rev den*, 334 Ore. 190, 47 P.3d 485 (2002).

*Wilson v. Smurfit Newsprint Corp.*, 197 Ore. App. 648, 673 (2005) (bolded emphasis supplied).

Thus, prejudgment interest is to be awarded under Oregon law (i) only where the amount of the

underlying damages is known or easily ascertainable and became due and owing as of a date

certain, and (ii) the ascertainability inquiry is undertaken following resolution of any factual

disputes as to the amount owed. *See, e.g.*, *Strader v. Grange Mutual Ins. Co.*, 179 Or. App. 329,

339 (2002):

> By now, it is well settled that, "even though damages are not ascertainable until issues of fact have been decided [by the jury], prejudgment interest is proper." *Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto*, 129 Ore. App. 206, 218, 879 P.2d 193 (1994), *aff'd in part, rev'd in part* 325 Ore. 46, 932 P.2d 1141 (1997). Put another way, "although there are questions of fact about the amounts owed, that does not mean that defendant did not owe sums certain at dates certain." *Hazelwood Water Dist. v. First Union Management*, 78 Ore. App. 226, 231, 715 P.2d 498 (1986).

(Internal modifications original.)

I agree with defendants that, in light of the facts that defendants contest Schnitzer's claims

for money damages on multiple grounds and that certain questions of law and fact must be

resolved before Schnitzer's entitlement to damages can be established, Schnitzer's damages are

currently neither ascertained nor trivially ascertainable. However, I further agree with Schnitzer

that the ascertainability inquiry is currently premature, and should only be undertaken following

resolution of the contested questions.  In the event Schnitzer succeeds in establishing defendants'

liability for money damages in any amount, at that time the court will determine whether its

damages, and the dates on which they were incurred,  may readily be ascertained.  Defendants'

motion is therefore premature, and should be denied without prejudice to the extent defendants

seek partial summary judgment as to Schnitzer's prayer for pre-judgment interest.

## VIII.   Schnitzer's Motion to Compel

As noted above, Schnitzer seeks an order to compel defendants to produce all documents

within their possession or control "supporting, contradicting, or otherwise relating to the" data set

forth in the rate schedule reviewed by Crow and attached as Exhibit C to his expert report.

Specifically, Schnitzer seeks an order to compel production of all documents within defendants'

possession or control falling into any of the following four categories:

1.   All claims adjusting and other correspondence and documents relating to
defense counsel billing rates and reservations of rights to challenge those
rates;

2.   All agreements with [defendants'] insureds listed on Crow Exhibit C
and/or defense counsel regarding the billing rates identified there;

3.   Documents relating to the qualifications of the retained counsel and
whether their expertise is insurance coverage matters rather than
substantive environmental law; and

4.   Documents in categories 1-3 for environmental defense counsel funded by
[defendants] in the Pacific Northwest not included on Crow Exhibit C.

Schnitzer argues that it is entitled to the foregoing relief on several discrete theories:  (1) that

defendants should have produced all such documents as part of their initial disclosures, pursuant

to Federal Civil Procedure Rule 26(a)(1)(ii); (2) that defendants should have produced all such

documents in response to properly propounded and long-outstanding discovery requests; (3) that

defendants must produce all such documents pursuant to Federal Evidence Rule 1006, on the

theory that the rate schedule constitutes a summary of those documents; and (4) that defendants

must produce all such documents in order to permit Schnitzer effectively to cross-examine Crow

at trial.  In the alternative, Schnitzer requests that the rate schedule be excluded at trial, along

with any opinion based on it.  I address each of Schnitzer's theories in turn, below.

### A.   Schnitzer's Entitlement to the Requested Production Pursuant to Defendants' Initial Disclosure Obligations

Pursuant to Federal Civil Procedure Rule 26(a)(1)(ii):

> a party must, without awaiting a discovery request, provide to the other parties:
>
>> * * *
>
>> (ii)    a copy—or a description by category and location—of all
>> documents, electronically stored information, and tangible things
>> that the disclosing party has in its possession, custody, or control
>> and may use to support its claims or defenses, unless the use would
>> be solely for impeachment

Fed. R. Civ. P. 26(a)(1).  Relatedly, on March 17, 2011, Schnitzer propounded a set of requests

for production of documents, seeking in connection with its Request for Production No. 1, "all

documents identified in [defendants'] written disclosures," and defendants agreed to produce

responsive documents subject to objections as to privilege and confidentiality.  Schnitzer argues

that defendants are obliged under Rule 26(a)(1)(ii) and under its Request for Production No. 1 to

produce documents containing the information set forth in the rate schedule attached as Exhibit C

to Crow's expert report.

Here, however, defendants have asserted that they do not intend to rely on the documents

Page 37 - FINDINGS AND RECOMMENDATION

that are the subject of Schnitzer's motion in the trial of this matter, and that the rate schedule

itself – on which defendants do intend to rely in at least some degree – has already been made

available to Schnitzer, in compliance with Rule 26(a)(1)(ii) and in response to Schnitzer's

Request for Production No. 1.  In consequence, the documents of which Schnitzer seeks

production are not within the scope of either Rule 26(a)(1)(ii) or Request for Production No. 1.

Schnitzer's motion should therefore be denied to the extent premised on the theory that

defendants are obliged to produce the requested documents pursuant to Federal Civil Procedure

Rule 26(a)(1)(ii).

> **B.    Schnitzer's Entitlement to The Requested Production in Response to
> Outstanding Discovery Requests**

As noted above, on March 17, 2011, Schnitzer propounded a set of requests for

production of documents.  In connection with its Request for Production No. 13, Schnitzer

sought production of "all documents that explain or justify in any way Defendants' failure or

refusal to pay any part of Schnitzer's Portland Harbor Superfund site claim."  Defendants agreed

to produce all responsive, non-privileged documents in its possession or control, subject to

objections as to vagueness, overbreadth, burden, privilege, and confidentiality.

Also on March 17, 2011, Schnitzer propounded a set of interrogatory requests, seeking in

connection with its Interrogatory No. 4 defendants' detailed description of their "reasons for

declining to pay the legal fee hourly rates charged by the Bingham McCutcheon attorneys."

Defendants objected that the request was vague and ambiguous and might require disclosure of

privileged information, but subject to those objections responded "as follows:  the parties' prior

negotiations for appointment of defense counsel and the requirements as set forth in the

Page 38 - FINDINGS AND RECOMMENDATION

applicable Litigation Management Guidelines."

By its Interrogatory No. 8, Schnitzer requested that defendants:

Identify all other insureds for which you are providing a defense at the Portland Harbor, and, for each such insured:

    (a)    set forth the attorney billing rates you are paying for defense counsel; and

    (b)    set forth all procedures, if any, you have in place to prevent privileged or confidential information of Plaintiffs from being disclosed to your employees or representatives adjusting or otherwise handling the claims of other such insureds.

Defendants responded to that portion of the request enumerated as 8(b), stating that it has no such procedures, but initially refused to respond to any other portion of the request on grounds of overbreadth, burden, and oppression, on the grounds that the request calls for proprietary information of defendants' insureds, and on the grounds that the request "is not relevant or reasonably calculated to lead to the discovery of admissible evidence."  On May 27, 2011, defendants updated their response to Interrogatory No. 8, referring plaintiffs to the testimony of Luanne Ellison who "has testified regarding defense counsel rates," and further stating "See also pleadings filed in *Evraz Oregon Steel Mills, Inc. v. The Continental Insurance Company*, CV-08-447."  On October 21, 2011, defendants further supplemented their response by producing the rate schedule relied upon by Crow and attached as Exhibit C to his report.

It is Schnitzer's position that defendants should have produced the documents it now seeks in response to these discovery requests.  Specifically, Schnitzer argues that documents underlying the schedule of rates are relevant, non-privileged, and responsive to Requests for Production No. 13 and Interrogatories Nos. 4 and 8.  For the following reasons, I agree with

Page 39 - FINDINGS AND RECOMMENDATION

Schnitzer as to some but not all of the documents Schnitzer now seeks.

By and through its Request for Production No. 13, Schnitzer seeks "all documents that explain or justify in any way Defendants' failure or refusal to pay any part of Schnitzer's Portland Harbor Superfund site claim."  Defendants' expert report effectively establishes that defendants have taken or will take the litigation position that the rates they actually pay or actually have paid to environmental defense counsel representing defendants' insureds are reasonable, and therefore explain or justify at least in part defendants' refusal to pay Bingham McCutcheon's full requested rates.  In consequence, documents tending to establish the rates defendants are actually paying to environmental defense counsel representing their insureds in connection with the Portland Harbor matter or other similar matters (including to any such counsel omitted from the rate schedule reviewed by Crow), documents relating to any reservations of rights defendants' insureds may have made in connection with those rates, and documents reflecting any agreements between defendants and their insureds as to those rates are all responsive to Request No. 13 and, moreover, relevant to the claims and defenses asserted in this action.

By and through its Interrogatory No. 4, Schnitzer seeks defendants' detailed description of their "reasons for declining to pay the legal fee hourly rates charged by the Bingham McCutcheon attorneys."  I agree with Schnitzer that Crow's expert report tends to establish that among defendants' reasons for so declining were a comparative analysis of hourly rates actually being paid to environmental defense counsel and a reasonableness determination based on that analysis. However, it appears likely that defendants' initial response to that request – reference to the parties' prior negotiations – compassed those reasons.  I therefore conclude that defendants have already provided an adequate response to Schnitzer's Interrogatory No. 4.

Page 40 - FINDINGS AND RECOMMENDATION

By and through its Interrogatory No. 8, Schnitzer seeks identification of other insureds for which defendants are providing a Portland Harbor Superfund defense, and requests that defendants provide the hourly rates at which the attorneys involved in such defense are being compensated. Exhibit C to Crow's report, which defendants have already made available to Schnitzer, appears to contain the requested information. I therefore conclude that defendants have already provided an adequate response to Schnitzer's Interrogatory No. 8.

For the foregoing reasons, defendants should be ordered to produce to Schnitzer, within thirty days, documents within their possession or control establishing the rates defendants are actually paying to environmental defense counsel representing their insureds in connection with the Portland Harbor matter or other similar matters (including to any such counsel omitted from the rate schedule reviewed by Crow), documents within their possession or control relating to any reservations of rights defendants' insureds may have made in connection with those rates, and documents within their possession or control reflecting any agreements between defendants and their insureds as to those rates.

### C.    Schnitzer's Entitlement to the Requested Production Pursuant to Federal Evidence Rule 1006

Pursuant to Federal Evidence Rule 1006:

> [A] proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Fed. R. Evid. 1006. Schnitzer argues that the schedule of rates attached as Exhibit C to Crow's report constitutes a "summary" for purposes of Rule 1006. On that basis, Schnitzer argues that

Page 41 - FINDINGS AND RECOMMENDATION

defendants are obliged under Rule 1006 to produce all documents containing data presented in the schedule in order to establish the authenticity of the documents and the reliability of the rate schedule.

By its own terms, Rule 1006 governs summaries offered into evidence at trial in lieu of voluminous records, where examination of a summary is the only practicable means of making their contents known to judge or jury. Here, the rate schedule is not in any relevant sense a "summary" of the documents of which Schnitzer now seeks production, is not being offered in lieu of voluminous records that could not conveniently be examined in court, and is not being offered at trial. The rate schedule is therefore outside the scope of the Rule. Schnitzer's motion should therefore be denied to the extent premised on the theory that defendants are obliged to produce the requested documents pursuant to Federal Evidence Rule 1006.

### D. Schnitzer's Entitlement to the Requested Production *qua* Documents Relied Upon by Defendants' Expert Witness; Schnitzer's Entitlement to Exclusion of the Exhibit and Related Opinion

Pursuant to Federal Evidence Rule 705:

> Unless the court orders otherwise, an expert may state an opinion — and give the reasons for it — without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination.

Fed. R. Evid. 705.

As noted above, by and through his report, Crow provided an expert opinion expressly based in part on the schedule of rates attached as Exhibit C to his report. Schnitzer acknowledges that the schedule of rates that Crow actually considered in forming his opinion has already been made available to it, but nevertheless argues that it will not have a full and meaningful opportunity to cross-examine Crow as to his opinion absent inspection of all

Page 42 - FINDINGS AND RECOMMENDATION

documents containing data relating to the data presented in the rate schedule (without regard to the fact that there is no suggestion that Crow ever saw any such documents).  In the alternative, Schnitzer argues that the rate schedule together with Crow's opinion based in part on it must be excluded at trial.

Schnitzer mischaracterizes its rights under Rule 705.  Documents that Crow did not in fact consider in forming his expert opinion are not implicated by the Rule; the data that actually underlie Crow's opinion have already been made available to Schnitzer, and defendants are under no further disclosure obligation under Rule 705.  While the content of Crow's report may serve to illustrate that the documents Schnitzer now seeks may be relevant to the claims and defenses at issue in this action, Rule 705 creates no independent right to production of any documents which Crow has never seen and did not rely upon.

Moreover, an expert opinion does not become subject to exclusion merely because some of the data on which the opinion is based have not been exhaustively verified.  Crow's opinion is based on data rather than on conjecture, and the data he actually relied upon have been made available to Schnitzer.

Schnitzer's motion should therefore be denied to the extent premised on  the theory that defendants are obliged to produce the requested documents pursuant to Federal Evidence Rule 705.  Schnitzer's alternative motion to exclude Crow's Exhibit C and any opinion based thereon from trial should likewise be denied.

## CONCLUSION

Schnitzer's motion (#67) for partial summary judgment should be granted as to defendants' third and sixth affirmative defenses, respectively asserting the defenses of waiver and

Page 43 - FINDINGS AND RECOMMENDATION

estoppel, and otherwise denied as moot.  Schnitzer's motion (#118) for leave to supplement the

evidentiary record should be denied.  Defendants' motion (#70) for partial summary judgment

should be denied in its entirety as discussed above.

Schnitzer's motion (#84) to compel production of documents should be granted as

follows:  defendants should be ordered to produce to Schnitzer, within thirty days, documents

within their possession or control (i) tending to establish the rates defendants are actually paying

to environmental defense counsel representing their insureds in connection with the Portland

Harbor matter or other similar matters (including to any such counsel omitted from the rate

schedule reviewed by Crow), (ii) relating to any reservations of rights defendants' insureds may

have made in connection with those rates, and (iii) reflecting any agreements between defendants

and their insureds as to those rates.  Each party should be ordered to bear its own costs incurred

in connection with Schnitzer's motion to compel.

### SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any,

are due fourteen (14) days from service of the Findings and Recommendation.  If no objections

are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

/ / /

/ / /

/ / /

/ / /

/ / /

Page 44 - FINDINGS AND RECOMMENDATION

copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will go under advisement.

Dated this 9th day of March, 2012.

 /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge