IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCHNITZER STEEL INDUSTRIES, INC., and
SCHNITZER INVESTMENT CORP.,

        Plaintiffs,

CV 3:10-1174-PK

v.

OPINION AND
ORDER

CONTINENTAL CASUALTY COMPANY and
TRANSPORTATION INSURANCE COMPANY,

        Defendants.

PAPAK, Magistrate Judge:

        Plaintiffs Schnitzer Steel Industries, Inc. ("SSI"), and Schnitzer Investment Corp. ("SIC" and, collectively with SSI, "Schnitzer") filed this action against two of its insurers, defendants Continental Casualty Company ("CCC") and Transportation Insurance Company ("TIC" and, collectively with CCC, "CNA" or "defendants") on September 28, 2010. By letters dated November 24, 1999, and December 8, 2000, Schnitzer was named as a Primary Responsible Party in connection with a Superfund site located in Portland Harbor, Oregon. In December 1999, Schnitzer notified its insurers that it had been named a Primary Responsible Party and requested that they both undertake its defense and indemnify it. Defendants agreed to undertake Schnitzer's

Page 1 - OPINION AND ORDER

defense subject to a reservation of rights, and have been paying a portion of Schnitzer's defense costs since April 2001. However, defendants have declined to pay Schnitzer's attorneys' full requested hourly rates, have allegedly failed to make payments toward Schnitzer's defense costs in timely fashion, have allegedly allocated to Schnitzer a 40% proportion of Schnitzer's costs incurred in connection with retaining consultants to assist in Schnitzer's defense, and have allegedly taken other, unspecified, arbitrary actions to pay Schnitzer less than the full amount of its defense costs and/or to create uncertainty regarding defendants' obligation to pay Schnitzer's defense costs. Schnitzer alleges defendants' liability for breach of contract in an amount in excess of $3 million and seeks this court's declaration that defendants (i) are jointly and severally liable "to pay the full amount of Schnitzer's reasonable and necessary defense costs," (ii) are obligated to pay "fair and reasonable rates of lawyers, consultants, and others hired to defend Schnitzer," (iii) must "make a reasonably prompt determination and payment of the reasonable and necessary fees, costs and expenses incurred by Schnitzer," (iv) are "not entitled to arbitrarily reduce Schnitzer's reasonable and necessary fees, costs, and expenses by allocating an assumed percentage of such fees, costs, or expenses to Schnitzer," and (v) are "not entitled to take other arbitrary and unilateral action to delay or entirely avoid paying reasonable and necessary fees, costs and expenses incurred by Schnitzer." The court has diversity jurisdiction over Schnitzer's action against the defendants, based on the complete diversity of the parties and the amount in controversy, pursuant to 28 U.S.C. § 1332.

Now before the court is defendants' motion (#140) *in limine* regarding Schnitzer's right to assert the lawyer-client privilege in connection with its communications with attorneys George McKallip and William Earle regarding Schnitzer's assessment of those attorneys' competence to

Page 2 - OPINION AND ORDER

represent Schnitzer in the Portland Harbor Superfund matter. I have considered the motion, telephonic oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, defendants' motion is granted as discussed below.

## RELEVANT FACTS

### I.    Background

From October 1, 1977, through October 1, 1983, Schnitzer was insured under a series of seven insurance policies issued by defendants, each providing comprehensive general liability insurance with a per-occurrence limit of $500,000. The policies provide coverage for accidental property damage, and that defendants "shall have the right and duty" to defend any lawsuit against Schnitzer arising out of such property damage. In addition to insurance from defendants, Schnitzer was also insured during material periods by other insurers, including Employers Insurance of Wausau ("Wausau") and Insurance Company of North America ("ACE").

In November 1999, the Oregon Department of Environmental Quality ("ODEQ") identified Schnitzer as a potentially responsible party in connection with environmental damage at the Portland Harbor Superfund site, based on Schnitzer's ownership and/or prior ownership of tracts of land in and around the Burgard Industrial Park, one of which Schnitzer operated as a scrap metal recycling yard. In December 1999, Schnitzer gave notice to defendants and its other insurers of the ODEQ investigation, and requested that defendants defend and indemnify it in connection with the investigation and any related claims against it. Approximately one year later, in December 2000, the United States Environmental Protection Agency ("EPA") similarly identified Schnitzer as a potentially responsible party in connection with the Portland Harbor Superfund site. Later that same month, Schnitzer gave notice to defendants and its other insurers

Page 3 - OPINION AND ORDER

of the EPA investigation, and requested that defendants defend and indemnify it in connection with the investigation and any related claims against it. Since that time, Schnitzer has cooperated with the ODEQ and EPA investigations, and has kept defendants and its other insurers notified of all ODEQ and EPA demands on Schnitzer in connection with the ongoing investigation of the environmental damage at the Portland Harbor site.

On April 19, 2001, defendants agreed to participate in Schnitzer's defense in connection with the ODEQ and EPA claims against it, subject to reservations of its rights to withdraw from the defense in the event of any determination that Schnitzer's potential liability on the claims was subject to a coverage exclusion or in the event the coverage limits of defendants' policies were exhausted by indemnity payments, among other reservations. Defendants subsequently entered into a cost-sharing agreement with Wausau and ACE, Schnitzer's other insurers, agreeing that defendants would undertake to pay 70% of Schnitzer's defense costs, Wausau would shoulder 20% of Schnitzer's defense costs, and ACE would be responsible for the remaining 10% of Schnitzer's defense costs. Since that time, defendants have been paying a portion of Schnitzer's costs incurred in connection with its ongoing cooperation with the ODEQ and EPA investigations and in defending the environmental claims against it.

Schnitzer was originally represented by the Portland-based Stoel Rives law firm in connection with the Superfund investigation and claims. Apparently due to a conflict of interest between Stoel Rives and defendants, on January 16, 2003, defendants advised Schnitzer that "in exercising [their] rights and obligations . . . to defend Schnitzer, [they had] decided to appoint independent counsel to represent Schnitzer's interests" in connection with the Superfund investigation and litigation. Defendants advised Schnitzer that their selection for replacement

Page 4 - OPINION AND ORDER

counsel was William G. Earle of the Abbott, Davis lawfirm, and that the hourly billing rates at which the Abbott, Davis firm's services were to be compensated would be capped at $160 for partners, $140 for senior associates, $125 for junior associates, and $75 for paralegals. Defendants further advised Schnitzer that defendants would continue to pay costs incurred by Stoel Rives only "until Mr. Earle [advised] that the transition from Stoel Rives [wa]s complete or until March 14, 2003, whichever occurs sooner." Finally, defendants advised Schnitzer that, in the event Schnitzer objected to being represented by attorney Earle, defendants would not object to "retaining George W. McKallip, Jr., of the firm Sussman Shank, in his place."

Schnitzer responded to defendants' advice by letter dated July 24, 2003, indicating its displeasure with defendants' decision, but nevertheless indicating its agreement that it would need to retain replacement counsel to represent it in connection with the Portland Harbor matter, based on its independent identification of a conflict of interest between Stoel Rives and Schnitzer (separate and discrete from any conflict between Stoel Rives and CNA). In that connection, Schnitzer indicated to defendants that, "[g]oing forward, Schnitzer's paramount interest is to retain an outside counsel that can provide the same experience and expert representation as ha[d] been provided by the Stoel Rives firm," that "Schnitzer's new counsel must have extensive experience in multi-party Superfund matters, reviewing and, as necessary, challenging EPA remedial decisions, sediment investigation and clean up issues, natural resources damages, complex remedial settlements, and litigation," that "[g]overnment experience, in these types of cases, particularly experience at EPA and the U.S. Department of Justice" was likewise desirable in replacement counsel, and that replacement counsel "must . . . be free of material conflicts associated with the Portland Harbor site."

Page 5 - OPINION AND ORDER

Schnitzer indicated that, "[o]ver the past months" preceding its reply of July 24, 2003, Schnitzer had interviewed attorneys Earle and MacKallip, and concluded that neither "possess[ed] the necessary depth and breadth of experience in sediment clean ups, natural resource damages and multi-party Superfund settlements and litigation[ or] experience [with] EPA and DOJ . . . cases . . . ." Schnitzer advised defendants that, in consequence, it did not believe that either Earle or MacKallip could represent it "competently" in connection with the Portland Harbor matter.

Schnitzer further indicated that it had "selected [Los Angeles, California-based attorney] Jim Dragna of the Bingham McCutchen firm as [its] choice for outside counsel" in the Portland Harbor matter.[1] Schnitzer explained that:

> Jim's unique experience in Superfund matters is particularly well suited for this matter. Jim began his career as one of the founding members of EPA's Hazardous Waste Enforcement Task Force in Washington D.C., the entity responsible for the creation of EPA's Superfund program. While at EPA, Jim worked on several multi-party Superfund matters, including litigation and settlements. Jim joined the U.S. Department of Justice, Environmental Enforcement Section in Washington, D.C., where he represented EPA in enforcement litigation nationwide. When Jim left the Department, he was responsible for all of EPA's enforcement matters, including Superfund, in EPA Regions IX and X. Since entering private practice in 1988, Jim has focused his practice on hazardous waste matters, including cost recovery litigation, Superfund settlements, and natural resource matters, including sediment cases. Jim is presently working on three major matters, one in EPA Region IX, that involve sediment clean ups and natural resource damages. Jim is an experienced trial attorney who has litigated Superfund cases and who is well versed in the machinations of multi-party Superfund groups (both from inside and out) and in the cost effective resolution of complex Superfund matters. In fact, Jim is Common Counsel to several of these multi-party groups in major Superfund actions.

---

[1] Evidence of record indicates that Dragna and the Bingham McCutchen firm first began providing legal services to Schnitzer in connection with the Portland Harbor matter in or around 2002.

Page 6 - OPINION AND ORDER

Schnitzer indicated that its preference was for attorney Dragna to represent it in all aspects of the Portland Harbor matter. Schnitzer further indicated that Dragna's then-applicable hourly rate for legal services was $475, "which [wa]s comparable to the other experienced environmental attorneys whom [Schnitzer] interviewed."

On November 10, 2003, counsel for defendants responded to Schnitzer's letter, advising that defendants would "permit Schnitzer to select the law firm Bingham McCutchen as defense counsel, provided that Schnitzer compl[y] with certain conditions." Defendants specified that "[i]f Schnitzer [wa]s unwilling or unable to comply with these conditions, then CNA w[ould] assign the defense of Schnitzer to a qualified Portland law firm of CNA's choosing." In support of their right to impose such conditions unilaterally, defendants asserted that, under the terms of their insurance policies issued to Schnitzer, defendants "possesse[d] the right to control the defense of Schnitzer in the Portland Harbor Action," and that "[t]his right of control includes the right to select and retain counsel to represent Schnitzer's interests."

## II.     Testimony Regarding Schnitzer's Interviews of McKallip and Earle

As noted above, Schnitzer has taken the position that it rejected McKallip and Earle as candidate legal representatives on the basis of interviews conducted during the months preceding July 24, 2003. Those interviews of McKallip and Earle were apparently conducted by Schnitzer representatives Tom Zelenka and Ilene Davidson.

Zelenka was deposed on May 24, 2011, and in the course of deposition offered extensive testimony regarding his conversations with McKallip and Earle regarding their and their firm's capacities to undertake a representation such as that of Schnitzer in connection with the Portland Harbor matter, including testimony regarding his opinion of the two attorneys' competence to

Page 7 - OPINION AND ORDER

represent Schnitzer in connection with the Portland Harbor matter, the questions he asked of the two attorneys, and the information they provided to him regarding their experience, skill sets, and approach to litigating complex environmental matters.

Following the inception of this litigation, Schnitzer's expert witness David Markowitz interviewed Zelenka and Davidson regarding their discussions with McKallip and Earle. At his deposition on February 24, 2012, Markowitz offered extensive testimony reporting Zalenka's and Davidson's conclusions regarding McKallip's and Earle's competence to represent Schnitzer in connection with the Portland Harbor matter, and the information regarding the skill, experience, reputation and resources of the two attorneys and their respective law firms that Zelenka and Davidson gleaned from their interviews of McKallip and Earle.

## III. The Parties' Dispute Over Defendants' Right to Make Inquiry Regarding Schnitzer's Interviews of Earle and McKallip

When defendants approached McKallip regarding defendants' desire to interview him informally on the subject of his discussions with Schnitzer, McKallip refused to discuss the matter without first obtaining Schnitzer's consent to do so, lest the lawyer-client privilege, if applicable, be violated. Defendants subsequently requested Schnitzer's consent, which Schnitzer refused to provide. However, Schnitzer offered to permit defendants to conduct formal depositions of McKallip and Earle, with Schnitzer's attorneys present. Defendants refused to accept Schnitzer's proposal, and this motion followed.

## ANALYSIS

At oral argument in connection with defendants' motion *in limine*, counsel for Schnitzer advised the court that Schnitzer does not assert the lawyer-client privilege in any of its

represent Schnitzer in connection with the Portland Harbor matter, the questions he asked of the two attorneys, and the information they provided to him regarding their experience, skill sets, and approach to litigating complex environmental matters.

Following the inception of this litigation, Schnitzer's expert witness David Markowitz interviewed Zelenka and Davidson regarding their discussions with McKallip and Earle. At his deposition on February 24, 2012, Markowitz offered extensive testimony reporting Zalenka's and Davidson's conclusions regarding McKallip's and Earle's competence to represent Schnitzer in connection with the Portland Harbor matter, and the information regarding the skill, experience, reputation and resources of the two attorneys and their respective law firms that Zelenka and Davidson gleaned from their interviews of McKallip and Earle.

## III. The Parties' Dispute Over Defendants' Right to Make Inquiry Regarding Schnitzer's Interviews of Earle and McKallip

When defendants approached McKallip regarding defendants' desire to interview him informally on the subject of his discussions with Schnitzer, McKallip refused to discuss the matter without first obtaining Schnitzer's consent to do so, lest the lawyer-client privilege, if applicable, be violated. Defendants subsequently requested Schnitzer's consent, which Schnitzer refused to provide. However, Schnitzer offered to permit defendants to conduct formal depositions of McKallip and Earle, with Schnitzer's attorneys present. Defendants refused to accept Schnitzer's proposal, and this motion followed.

## ANALYSIS

At oral argument in connection with defendants' motion *in limine*, counsel for Schnitzer advised the court that Schnitzer does not assert the lawyer-client privilege in any of its

communications with attorneys McKallip and Earle.[2]  Schnitzer further advised the court that it

---

[2] I agree with Schnitzer that it may not assert the attorney-client privilege under the circumstances present here.  Because this court is exercising diversity jurisdiction over Schnitzer's action, Oregon law rather than federal law governs the lawyer-client privilege.  In Oregon, the lawyer-client privilege is codified at Or. Rev. Stat. 40.225 (Or. Evid. C. 503).  That section provides, in relevant part, as follows:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:
>
> (a)  Between the client or the client's representative and the client's lawyer or a representative of the lawyer;
>
> (b)  Between the client's lawyer and the lawyer's representative;
>
> (c)  By the client or the client's lawyer to a lawyer representing another in a matter of common interest;
>
> (d)  Between representatives of the client or between the client and a representative of the client; or
>
> (e)  Between lawyers representing the client.

Or. Rev. Stat. 40.225(2).  For purposes of the lawyer-client privilege, a "confidential communication" is "a communication not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Or. Rev. Stat. 40.225(1)(b).  "In general, whether a communication is protected by the attorney-client privilege depends on whether the communication is a 'confidential communication' under [Or. Rev. Stat. 40.225](1)(b), whether the communication is made for the purpose of facilitating the rendition of professional legal services to the client as provided in [Or. Rev. Stat. 40.225](2), and whether the communication is between persons described in [Or. Rev. Stat. 40.225](2)(a) through (e)." *Port of Portland v. Or. Ctr. for Envtl. Health*, 238 Or. App. 404, 410 (2010) (citations, footnotes omitted).  The party asserting the privilege has the burden to establish its applicability. *See Goldsborough v. Eagle Crest Partners, Ltd.*, 105 Or. App. 499, 503 (1991) (citations omitted).  Here, it appears clear that Schnitzer's discussions with McKallip and Earle were not intended to be "confidential" as that term is used in Section 40.225(2).  Moreover, to the extent that Schnitzer's communications to McKallip and Earle regarding the characteristics Schnitzer preferred its legal representatives to possess could have been intended as confidential, any privilege in those communications was clearly waived (at least for purposes of this litigation) by Schnitzer's proffer of the testimony of Zelenka and Markowitz described above, *see United*

Page 9 - OPINION AND ORDER

opposes defendants' motion on two grounds only: first, that its offer to permit defendants to conduct depositions of McKallip and Earle (with Schnitzer's attorneys present) rendered defendants' motion "unnecessary," and second, that its communications with Earle and McKallip are subject to Oregon Professional Conduct Rule 1.18(b), pursuant to which an attorney commits an ethical violation if he or she discloses the confidential communications of either a client or a prospective client, regardless of whether any attorney-client relationship is ultimately created between the attorney and the prospective client. These grounds are, however, clearly inapposite: in the absence of any evidentiary privilege, Schnitzer lacks authority to dictate the terms according to which defendants may interview or otherwise communicate with third-parties to this litigation, and while Rule 1.18 may be a codification of ethical rules implicated by the lawyer-client privilege, it does not create or give rise to any evidentiary privilege. Moreover, although I do not analyze whether Rule 1.18 has any material applicability to Schnitzer's communications with McKallip and Earle, it is clear that Schnitzer lacks authority to assert any ethical obligation created or codified by Rule 1.18 on behalf of the two attorneys.

In light of Schnitzer's advice to the court that it does not assert any evidentiary privilege in its communications with McKallip and Earle (and in light of the clear inapplicability of the

---

*States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011), *citing Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981), *see also* Or. Rev. Stat. 40.280 (Or. Evid. C. 511), and by Schnitzer's reliance in this action on McKallip's and Earle's purported incompetence to represent them in connection with the Portland Harbor matter, *see Bittaker v. Woodford*, 331 F.3d 715, 718-719 (9th Cir. 2003). Indeed, because defendants are Schnitzer's insurers and are undertaking Schnitzer's defense in connection with the Portland Harbor matter, and therefore hold the lawyer-client privilege in common with Schnitzer in connection with that matter, *see United States v. Gonzalez*, 669 F.3d 974, 977-978 (9th Cir. 2012), it is difficult to see how Schnitzer could properly assert the lawyer-client privilege as against the defendants in connection with any communications Schnitzer might have had with *any* attorney regarding the Portland Harbor action.

Page 10 - OPINION AND ORDER

lawyer-client privilege), defendants' motion *in limine* is granted. Neither the lawyer-client privilege nor the ethical rules codified in Oregon Professional Conduct Rule 1.18(b) prevent defendants from inquiring into the content of Schnitzer's communications with McKallip and Earle in the months preceding July 24, 2003, regarding those attorneys' competence to represent Schnitzer in connection with the Portland Harbor matter. This order shall not, however, be construed as requiring or compelling any third-party to this action to respond to defendants' contemplated informal inquiries.

## CONCLUSION

For the reasons set forth above, defendants' motion (#140) *in limine* is granted as discussed above.

Dated this 31st day of July, 2012.

                                                Honorable Paul Papak
                                                United States Magistrate Judge