Lawrence Gottlieb, OSB #070869
lgottlieb@bpmlaw.com
Brett Sommermeyer, OSB #964326
bsommermeyer@bpmlaw.com
Lisa C. Neal, *pro hac vice*
lneal@bpmlaw.com
Betts, Patterson & Mines, P.S.
701 Pike Street, Suite 1400
Seattle, WA  98101-3927
Telephone:  206-292-9988
Facsimile:   206-343-7053


Attorneys for Defendants
Continental Casualty Company and
Transportation Insurance Company

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| SCHNITZER STEEL INDUSTRIES, INC., an Oregon corporation; and MMGL CORP., a Washington corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> CONTINENTAL CASUALTY COMPANY, an Illinois corporation; and TRANSPORTATION INSURANCE COMPANY, an Illinois corporation, <br><br> Defendants. | NO. 3:10-cv-01174-MO <br><br> DEFENDANTS' OBJECTIONS TO PLAINTIFFS' PROPOSED JURY INSTRUCTIONS AND VERDICT FORM |

## I.      INTRODUCTION

Defendants Continental Casualty Company and Transportation Insurance Company

(collectively "Continental") provide the following objections to the proposed jury instructions

and verdict form submitted by Plaintiffs, Schnitzer Steel Industries, Inc. and Schnitzer

Investment Corp., (collectively "Schnitzer").

Page 1 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM

## II.    JURY INSTRUCTIONS

### A.    Objections to Schnitzer's Proposed Jury Instructions

#### 1.    Schnitzer's Proposed Jury Instruction No. 1 Compared with Continental's Proposed Jury Instruction No. 1 (Claims and Defenses)

Continental objects to Schnitzer's Proposed Jury Instruction No.1 on several grounds. First, Schnitzer's definition of "liability insurance" is not in accord with Oregon law and does not constitute a neutral statement of the facts and law as is appropriate for jury instructions. The Oregon Environmental Cleanup Assistance Act defines a "general liability insurance policy" as "any contract of insurance that provides coverage for the obligations at law or in equity of an insured for bodily injury, property damage or personal injury to others." O.R.S. § 465.475. This definition is similar to the plain meaning of "liability insurance" as "insurance against loss resulting from liability for injury or damage to the persons or property of others." *Goddard v. Farmers Ins. Co. of Oregon*, 202 Or.App. 79, 101, 120 P.3d 1260, 1272 (Or.App. 2005) (quoting *Webster's Third New Int'l Dictionary* 1302 (unabridged ed. 2002)). Rather than providing a neutral, legally supported definition like the foregoing, Schnitzer supplies a biased statement, unsupported by any authority, that strongly implies it is only seeking defense costs related to "potentially" covered claims.

Second, Schnitzer makes the irrelevant and potentially prejudicial allegation that the defendant "insurance companies are under common ownership." More specifically, whether or not the defendants are currently under "common ownership" has no relevance to how Schnitzer's claims were handled during the relevant time period, and there is no admissible evidence to suggest otherwise. Schnitzer's most likely motive for making this assertion is to impermissibly suggest to the jury that the defendant insurers are a monolithic entity that is better suited than Schnitzer to bear the financial burden of Schnitzer's claimed defense expenses. Additionally, Continental anticipates that Schnitzer further intends to introduce

Page 2 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM

evidence of the defendant insurers' ownership structure in supporting its claim that Continental had some financial incentive to delay paying defense expenses. Schnitzer is, thus, apparently laying the groundwork for this line of argument in making this irrelevant and unfairly prejudicial claim in the first instruction.

Third, Schnitzer simplistically and suggestively describes the case as a "breach of contract case" involving only the amount of "reimbursement" paid by Schnitzer. This description grossly oversimplifies the case, which involves far more issues than merely whether Continental breached the relevant insurance policies. Rather, the case also concerns, among other things, agreements separate from the policies, Schnitzer's duties under the policies, whether Schnitzer seeks recovery of reasonable and necessary defense costs, the reasonableness of the timing and payment of Schnitzer's alleged defense costs, Schnitzer's claimed entitlement to non-local rates, Schnitzer's duty to mitigate its alleged losses, and whether Schnitzer waived any right to, or should be estopped from claiming, the recovery of non-local rates. The description also inappropriately suggests to the jury that Continental has, in fact, breached the policies and the only remaining issue is the calculation of damages. Overall, by focusing on the alleged breach of contract, the instruction distracts the jury from the appropriate line of analysis in considering and weighing all of the other issues in the case. *See Holger v. Irish*, 316 Or. 402, 415, 851 P.2d 1122 (1993) (holding that even if an instruction correctly describes the law, it can be error to give an instruction that "inappropriately distracts the jury from the appropriate line of analysis"). Similarly, the description is misleading, unnecessary, and will likely result in jury confusion regarding the issues material to the case.

Fourth, Schnitzer improperly makes the blanket statement that Continental has the burden to prove all of its "defenses." While Continental may have the burden of proof on certain issues (*e.g.* waiver and estoppel), it does not have the burden of proof on others, including whether competent local counsel or competent non-local counsel (willing to assume

Schnitzer's defense at local rates) were available to defend Schnitzer in the Portland Harbor action. Schnitzer subsumes these other issues, which do not even qualify as a "defenses," in the single assertion that Continental must prove whether "Schnitzer is prevented from claiming a right to higher attorney billing rates." Schnitzer's attempt to shift the burden of proof on these "forum rule" issues is contrary to Magistrate Judge Papak's summary judgment ruling and to case law applying the rule that he adopted. *See* March 8, 2012 Findings and Recommendations ("March 2012 F&R") (Docket No. 124), at 32 (non-local rates are potentially recoverable "if the party can show why it was necessary to go outside the district and obtain counsel at higher rates"). At the very least, it is a disputed legal issue in the case, and this instruction suggests that, other than on breach of contract, Continental bears the burden of proving all of the other issues in the case.

The Court should reject Schnitzer's proffered "Claims and Defenses" instruction in favor of Continental's Proposed Instruction No. 1. Schnitzer cites the parties' Joint Pre-Trial Order as "source" for its instruction, yet none of the above-described assertions and descriptions actually originate in that document. In contrast, Continental crafted its instruction on the basis of the Joint Pre-Trial Order. In particular, the general case description in the second paragraph comes directly from the "Agreed Facts" section and the summary of the claims and defenses is a paraphrased version of the "Claims and Defenses" portion of the joint order. Continental elected to draft the instruction in this fashion to assure the highest level of neutrality possible. Schnitzer's instruction, by comparison, is a partisan version of the case that contains assertions that not supported by any authority.

> 2. **Schnitzer's Proposed Jury Instruction No. 3 (The Insurance Policy is a Contract) and Continental's Proposed Alterative Instructions**

Schnitzer's Proposed Instruction No. 3 purports to only support the claim that an "insurance policy is a contract," but in reality goes well beyond this simple assertion. Schnitzer begins by suggesting to the jury that, by paying money for the policy, it receives an entitlement

to coverage. Continental objects to Schnitzer's biased description of an insurance contract because it does not accurately reflect Oregon law. O.R.S. 731.102(1) defines "insurance" as "a contract whereby one undertakes to indemnify another or pay or allow a specified or ascertainable amount or benefit upon determinable risk contingencies." Thus, Oregon law does not define "insurance" with reference to paid premiums. The jury should not be instructed regarding the premiums paid for Schnitzer's insurance policies given that such premiums are not relevant to any issue in this case. Additionally, this reference is unfairly prejudicial to Continental in suggesting that Schnitzer's payment for a policy should be weighed in deciding this case.

The instruction also inaccurately and misleadingly indicates that the only relevant breach of an insurance policy is one by the insurer. To the contrary, the insured may also breach the policy by, as Continental alleges concerning Schnitzer, failing to cooperate with the insurer and by voluntarily assuming liability obligations (among other potential breaches by the policyholder). Similarly, Schnitzer suggests that the only issue is whether Continental breached the contract ("You are being asked in this case to determine if Continental breached the insurance policies that it issued to Schnitzer."). As discussed above with regard to Schnitzer's Proposed Instruction No. 1, there are many issues in this case that the jury will be called upon to decide. This instruction is, therefore, misleading and distracts the jury from the appropriate line of analysis.

Continental believes that its proposed instructions carefully, and neutrally outline the issues that the jury must decide without introducing the danger that the jury will place undue emphasis on the alleged breach of contract. Of significance here, an insurer's disagreement with its insured over the decision of whom to retain as defense counsel should not constitute a breach of contract by the insurer absent an actual conflict of interest. *See Driggs Corp. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 3 F.Supp.2d 657, 660 (D.Md. 1998).

Similarly, other issues in this case such as (1) timing of reimbursements, (2) decisions not to pay certain expenses because, based on the information provided, they did not appear to be defense expenses, and (3) the clarity of communications by Continental concerning disputed costs do not rise to the level of a breach of contract.  These are simply issues concerning whether Schnitzer has been adequately reimbursed for its defense expenses, not a breach of the duty to defend.  By contrast, a breach of the duty to defend takes place where an insurer refuses to defend, rather than attempting to pay the reasonable and necessary expenses of defense.  *Am. Motorists Ins. Co. v. Trane Co.*, 544 F. Supp. 669, 673 (W.D. Wis. 1982) *aff'd* 718 F.2d 842 (7th Cir. 1983).

If the Court decides that contractual instructions are warranted, Continental suggests that the following slightly modified versions of the Oregon Uniform Civil Jury Instructions ("UCJI") are more appropriate in presenting a neutral version of the contractual issues.  Continental has only modified the uniform instructions to reflect the fact that either party may breach the contract.

### CONTRACT DEFINED

A contract is a legally enforceable promise or set of promises.  The relevant contracts in this case are the insurance policies issued by Continental to Schnitzer.  UCJI No. 65.01 (modified).

### BREACH OF CONTRACT DEFINED

A breach of contract occurs when a party fails to perform as required by the terms of the contract.  UCJI No. 65.15 (modified).

### DAMAGES—BREACH OF CONTRACT

If a party breached the contracts at issue in this case, then you must decide if the breach caused a loss and, if so, how much money should be paid.

Page 6 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM

The mere fact that I am talking about money does not mean that you should or should not award any money.

You can award money for those damages that arise naturally and necessarily from the breach of contract and would place the non-breaching party in the same position as if the contract had not been breached.  UCJI No. 65.18 (modified).

### 3.    Schnitzer's Proposed Jury Instruction No. 4 (The Duty to Defend)

Schnitzer proposes a jury instruction allegedly concerning Continental's duty to defend that is not relevant to the issues that jury needs to decide.  Schnitzer begins by asserting that there is "no monetary limit on the defense obligation."  However, this point has absolutely no bearing on the issues before the jury[1] and is, in fact, unfairly prejudicial to Continental in suggesting that it has a limitless defense obligation.

Schnitzer's further statement that Continental is "obligated to defend against claims that are potentially covered" introduces the irrelevant concept that the insurer has a duty to defend when the underlying claims are potentially covered.  Continental has already acknowledged a duty to defend the underlying claims – leaving only the issue of the reasonableness of the amount of defenses costs that it has paid and will continue to pay until its duty to defend terminates.   Further, like the references to a defense duty based on "potentially covered claims" in the prior instructions, this reference encourages the jury to ignore the issues in the case that are relevant and material to deciding whether Continental's defense cost reimbursements are reasonable – confusing the jury regarding the actual standards that should be applied in making this determination.

---

[1] The limits of the Continental policies are not at issue.  Thus, the jury has no reason to know that the defense obligation is not confined to those limits.  This issue has no conceivable relevance to the reasonableness of Continental's defense costs reimbursements or to any other issue in the case.

Schnitzer next seeks to instruct the jury that Continental must act "like a reasonable insurer with no policy limits" and as if its "liability is unlimited." These instructions are improper for two primary reasons. First, they are misleading and prejudicial in suggesting that Continental has failed to act as a reasonable insurer – and further implying that not paying the full amount of Schnitzer's claimed defense costs is proof that Continental acted unreasonably. Suggesting that the insurer must pay whatever the insured demands as defense expenses also ignores Magistrate Judge Papak's admonition that "an insured opting to insist upon retaining counsel reasonably likely to provide competent representation" does not enjoy unfettered discretion to select such counsel without regard to expense." *See* March 2012 F&R, at 32. Second, and more importantly, these instructions ignore the fact that Papak crafted a ***standard*** for judging the reasonableness of the insurer's selection of defense counsel and/or the reasonableness of the defense counsel rates paid ***that depends upon the application of objective criteria*** (*e.g.* whether competent local counsel were available to undertake the defense). Papak relied upon the general principles applicable to an insurer's duty to defend in crafting his standard, but that fact does not suggest that the jury needs to consider those general principles in making its reasonableness determination. Rather, the jury need only consider the objective criteria adopted by the Court.

Schnitzer similarly seeks to instruct the jury that "[a] failure by an insurer to adequately discharge its defense obligation is a breach of contract." However, Schnitzer is merely reciting a general principle upon which Papak based his standard. Specifically, in discussing the general duty to defend principles underlying his objective standard, Papak cited a case holding that "a failure to defend adequately is actionable at law." *Id.* Again, there is no reason for the jury to be instructed concerning such underlying principles when they have Papak's objective criteria to apply instead. Additionally, the jury has no basis upon which to decide whether Continental has "adequately" discharged its defense duty. Schnitzer's instruction offers no criteria upon which to determine what actions satisfy that vague standard, thus leading to a

Page 8 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM

danger of jury confusion and likely prejudice to Continental.  However, given that the Court has already adopted objective criteria upon which to judge the reasonableness of Continental's defense, there is simply no reason to permit Schnitzer's confusing and misleading instruction.

Finally, Schnitzer's proffered instruction purports to describe the standards applicable to the duty to defend but neglects to inform the jury that that duty only encompasses "reasonable and necessary" defense costs, which Schnitzer has the burden to prove. Accordingly, the instruction leaves the jury with the wrong impression that there are no limits on the duty to defend, further prejudicing Continental.

Continental submits that there is no need for a "duty to defend" instruction.  Instead, the Court should adopt Continental's Proposed Instructions Nos. 2, and 8-13.  These instructions neutrally describe the objective standards that the jury must apply in assessing the reasonableness of Continental's defense cost reimbursements, which is the primary issue in this case.

        **4.**    **Schnitzer's Proposed Jury Instructions No. 5 (Effect of a Defense Under a Reservation of Rights to Recoupment) and No. 6 (Effect of a Defense Under a Reservation of Rights to Deny Coverage)**

Schnitzer's Proposed Instructions Nos. 5 and 6 are substantively the same and, thus, may be addressed together.  Schnitzer has egregiously drafted both instructions based entirely upon a rule of law that it knows has not been adopted by Oregon courts.  In particular, Schnitzer asserts that an insurer's defense under a reservation of rights that includes the right to later seek recoupment or deny coverage permits the insured to "protect its interests by acting as though it might be uninsured for defense costs" or "totally uninsured."  Although Schnitzer's cited authorities do not actually support this broad proposition, there are courts in some jurisdictions that allow the insured to assume control of the defense and hire independent counsel at the insurer's (reasonable) expense.  Nevertheless, those courts are in jurisdictions where an insurer's reservation of rights has been found to create a conflict of interest between

Page 9 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM

insurer and insured. As Continental pointed out in numerous briefs filed in this case, Oregon has not adopted (even with the passage of SB 814) this conflict of interest rule.[2] Rather, the Oregon Supreme Court has found that there is minimal danger of even a potential conflict of interest between the insurer and the insured in the insurance defense context. *See Ferguson v, Birmingham Fire Ins. Co.,* 254 Or. 496, 490 P.2d 342 (1969).

Given that Oregon is not a conflict of interest state, there is no legal basis for Schnizer's Proposed Instructions Nos. 5 and 6. For this reason alone, the Court should decline to adopt these instructions. Additionally, the Court should reject them for the further reason that they effectively instruct the jury that it must decide in favor of Schnitzer if Continental defended under a reservation of rights – thus, essentially seeking a directed verdict on extremely narrow factual grounds. In doing so, they remove all of the disputed issues from the jury's consideration and distract the jury from its appropriate line of analysis.

Continental does not propose an alternative instruction, or compare Schnitzer's instructions with any of its own, because there are no reasons for allowing such instructions. They depend upon out-of-state principles and concern issues that have no relevance to this case.

///

///

///

---

[2] Other jurisdictions have also rejected the theory that an insurer's reservation of rights entitles the insured to hire independent counsel and force the insurer to pay for that counsel. *See, e,g,,Travelers Indem. Co. of Illinois v. Royal Oak Enterprises, Inc.,* 344 F.Supp.2d 1358, 1369-1371 (M.D.Fla. 2004) ("Royal Oak is not entitled to reimbursement for the fees and costs of independently retained counsel simply because Travelers offered to defend only under a reservation of its right to contest coverage.").

     5.      **Schnitzer's Proposed Jury Instruction No. 7 (The Amount of Defense Cost Reimbursement) Compared with Continental's Proposed Jury Instruction No. 8 (Reasonable and Necessary Costs), No. 9 (Types of Costs), and No. 10 (Environmental Investigation Costs)**

Schnitzer's Proposed Instruction No. 7 purports to describe the standards for paying reasonable and necessary defense costs but then sets forth a standard without foundation in its cited authorities or under Oregon law. Before describing this new standard, Schnitzer claims that it is entitled to the "full amount" of its reasonable defense costs. Schnitzer cites Magistrate Judge Papak's August 3, 2011 Findings and Recommendations on Schnitzer's Motion of for Judgment on the Pleadings ("August 2012 F&Rs") as support for this entitlement. However, Schnitzer misrepresents Papak's precise ruling, which included an express caveat to the "full amount" language:

> [I]t appears that the parties have agreed to an arrangement whereby defendants, who are not Schnitzer's only insurers and are not the only insurers contributing to the reimbursement of Schnitzer's defense costs, rather than being obliged to pay the actual full amount of Schnitzer's defense costs and then seek contribution from Schnitzer's other insurers, are obliged only to pay that proportion of Schnitzer's defense costs that the parties have agreed is the proportion for which defendants are ultimately responsible. In the event the parties permit that arrangement to remain in place, the phrase "full amount of Schnitzer's reasonable and necessary defense costs" in the declarations set forth above should be construed to mean "that proportion of Schnitzer's reasonable and necessary defense costs for which the parties have agreed that defendants are responsible."

*See* August 2012 F&R, at 14. Thus, in issuing its unqualified instruction, Schnitzer removes the disputed facts surrounding the arrangement permitting Continental to pay less than the "full amount" of Schnitzer's defense costs from the jury's consideration – effectively imposing the presumption that Schnitzer has already prevailed on the factual issues pertaining to the defense cost reimbursement arrangement.

Schnitzer then instructs the jury regarding its novel standard for judging the reasonableness of its defense costs – allowing the jury to consider reasonableness in light of the monetary size, complexity, and pendency length of the underlying claims being defended

Page 11 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM

against. From this legally unsupported position, Schnitzer makes the illogical leap that (1) a large monetary claim pending for an extended time period justifies the payment of more defense expenses and (2) a complex legal claim justifies "a more expensive defense team." Schnitzer, thereby, establishes a heretofore never heard of reasonableness standard for defense expenses.

Aside from the absolute lack of any supporting authority for this standard, it also ignores the fact that Schnitzer has the burden to prove that its defense expenses were reasonable and necessary. *See* ORS 465.480(2)(c) (insurance coverage available for "*reasonable and necessary fees, costs and expenses*, including remedial investigations, feasibility study costs and expenses, incurred by the insured pursuant to a written voluntary agreement, consent decree or consent order between the insured and either the Department of Environmental Quality or the United States Environmental Protection Agency) (emphasis added); *Runyan v. Continental Cas. Co.,* 233 F.Supp. 214 (D. Or. 1964) (awarding "reasonable and necessary" legal defense costs).

In connection with this burden, Schnitzer must also prove that the expenses are related to remediation of the property damage at issue in the underlying litigation and not, for example, "ordinary business" expenses that are not covered by insurance. *See, e.g., Weyerhaeuser Co. v. Aetna Cas. & Surety Co,* 123 Wn. 2d 891, 905-06, 874 P.2d 142 (1994). Further, Schnitzer must establish the "reasonableness" and "necessity" of its defense expenses on the basis of expert testimony. *See, e.g., Northwest Pump & Equipment Co. v. Stach,* 167 Or.App. 64, 68 (2000) ("reasonableness" of attorney fees shown through expert testimony); *Stumpf v. Continental Cas. Co.,*102 Or.App. 302, 313-314 (1989) ("An attorney who has worked with the Oregon State Bar on attorney fees issues gave expert testimony that the time estimates of plaintiffs' counsel were reasonable and "their estimates of reasonable fees are reasonable estimates.").

Page 12 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM

The instruction invites the jury to ignore Schnitzer's burden of proof and the many factual issues that factor into deciding reasonableness and necessity in favor of the limited (and legally unsupported) three criteria (monetary size, complexity, and pendency duration) described in the instruction. The instruction improperly suggests that the jury should elevate these criteria over all other considerations in judging reasonableness and necessity. The result will be jury confusion leading to unfair prejudice to Continental – especially from the fact that Schnitzer links its amorphous and subjective standard to a finding that Continental breached the policies.

Continental, instead, offers three instructions, Nos. 8-10, that provide legally supported, neutral, and concrete standards from which the jury can decide the numerous factual issues relevant to determining whether Schnitzer's alleged defense costs are reasonable and necessary. Continental includes a general instruction (No. 8) describing the legal standard and burden of proof concerning reasonable and necessary defense costs. Continental then provides an instruction (No. 9) regarding the general categories of costs the jury is expected to encounter and an instruction (No. 10) that more specifically describes the nature of potentially recoverable "Environmental Investigation Costs." Continental's instructions give the jury a road map from which to navigate through the evidence that the parties intend to introduce at trial – one based on well-accepted authorities, not novel standards designed to bias the outcome of the jury's deliberations.

6. **Schnitzer's Proposed Jury Instructions Nos. 8A, 8B, and 8C (Attorney Hour Rates Reimbursement) Compared with Continental's Proposed Jury Instruction No. 11**

Schnitzer offers no less than three alternative instructions concerning defense attorney fee rates. This tactic is surprising given the Court's adoption of Magistrate Judge Papak's standard, which sets forth clear, objective standards that will assist the jury's determination of a reasonable rate if that issue is not decided on the basis of the parties' agreement, estoppel, or waiver.

Page 13 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM

The first alternative standard (No. 8A) can be easily dismissed as it is based on Schnitzer's previously submitted, and rejected, arguments during the summary judgment and SB 814 motion in limine stages. Schnitzer admits this fact but incredulously asks the Court to once again reconsider its adoption of the Papak standard.

As the Court will recall, Schnitzer belatedly argued that the Court should reconsider Papak's forum rule-based attorney fee standard despite the Court's express adoption of that standard in November 2012. *See* Schnitzer's Pre-Argument Memorandum For An *In Limine* Ruling On The Legal Standard For Determining Recoverable Defense Costs (Docket # 244-1), at 7-15. Continental responded by reminding the Court that Schnitzer had already had an opportunity to contend that the forum rule does not apply in its summary judgment briefing but did not prevail on this issue and failed to seek reconsideration. *See* Continental's Pre-Argument Memorandum In Support of Motion *In Limine* Re: Effect of SB 814 Independent Counsel Rules (Docket # 249), at 16. The Court agreed with Continental and reaffirmed that the Papak standard will apply at trial.

Here, in the context of proposed jury instructions, Schnitzer makes yet one more attempt to secure untimely reconsideration – one made even more egregious by its close proximity to trial. Continental requests that the Court, again, reject Schnitzer's out-of-time request for reconsideration. Given that the only way for the Court to accept Schnitzer's Proposed Jury Instruction No. 8A would be to also reverse Papak's standard, Continental requests that the Court disregard the proposed instruction.

Schnitzer next presents proposed instruction No. 8B in an apparent attempt to comply with the Papak standard. Nevertheless, there are three principal flaws in this instruction. First, it incorrectly formulates the Papak standard by first allowing Schnitzer to prove that it conducted a "reasonable search for non-local counsel" and then, if Schnitzer meets that burden, shifting the burden to Continental to show that there were competent and available local

Page 14 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM

counsel or non-local counsel at local rates.  Contrary to this convoluted reformulation, what Papak actually ruled was that "an insured may recover fees from its insurer based on rates other than those prevailing within the market wherein the litigation against the insured is taking place 'if the party can show why it was necessary to go outside the district and obtain counsel at higher rates.'"  *See* March 2012 F&R, at 32.  He then set forth the ***objective criteria that the party seeking non-local rates must satisfy*** to meet this burden of proof (*e.g.* showing that competent and available local or non-local counsel at local rates could not be found).  This interpretation is the only one that comports with the plain meaning of Papak's ruling.

The second, and closely-related flaw in the proposed instruction is that it improperly places the burden on Continental of proving that the exception to the forum rule does not apply.  The proposed burden allocation is, as shown above, not in keeping with the plain meaning of Papak's ruling and, moreover, is contrary to courts' application of the forum rule upon which he based his standard.  As the party seeking to recover attorney fees, Schnitzer bears the burden of producing "substantial evidence" that the "narrow exception" to the forum rule applies.  *See, e.g., Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 907 (9th Cir. 1995).  Furthermore, it makes perfect sense to impose the burden of proof on the party asserting that an exception to a legal presumption (local rates) should apply.

The third flaw, which also concerns the burden of proof, is the claimed requirement that Continental prove that the particular competent and available counsel were "known to Schnitzer or made known to Schnitzer by Continental at that time."  This statement directly contradicts Papak's ruling that "defendants are under no restriction requiring them to limit their proof on [the availability of local counsel who might

reasonably be expected, as of approximately March 10, 2004, to provide Schnitzer with

competent representation] to those attorneys discussed contemporaneously with their retention of counsel."  Accordingly, Continental is permitted to introduce evidence, even if obtained after

March 2004, of counsel that would have reasonably been expected to provide competent representation at that time if Schnitzer can, in fact, produce evidence to create a fact issue on this alternative exception to the rule. Schnitzer's instruction establishes a rule not supported by Papak's rulings.

Schnitzer's final proposed attorney fee instruction (No. 8C) represents an apparent attempt to combine the prior three instructions (Nos. 7 & 8A-8B). In the first paragraph, Schnitzer grafts its novel standard for assessing the reasonableness of defense costs (No. 7) upon the "circumstances" (No. 8A) that must be considered in deciding the reasonableness of attorney fees. It then sets forth an abbreviated version of Papak's objective criteria that omits any reference to the burden of proof. Finally, Schnitzer applies its legally unsupported standard of "reasonable under the circumstances" (No. 7) to the jury's alternate consideration of local and non-local rates.

The Court should decline to accept this cobbled together instruction for the same reasons given for disregarding the proposed instructions upon which it is based. The proposed instruction not only fails to include all of the elements of the Papak standard, but also relies upon a standard for assessing the reasonableness of fees that has not been adopted in Oregon. Schnitzer itself fails to cite any authority supporting acceptance of its proposed instruction.

In the alternative to Schnitzer's proposed attorney fee rate instructions, Continental's straightforward Proposed Jury Instruction No. 11 presents a clear summary of the Papak rule for the jury to apply. The instruction is taken directly from the March 2012 F&R, as clarified by the Court's December 17, 2013 order. It carefully sets forth the objective criteria to be applied to the facts and describes the burden of proof in accord with settled law. The Court should adopt Continental's proposed instruction rather than Schnitzer's proposals, which require untimely reconsideration of prior rulings, acceptance of unsupported standards, and a total disregard of the proper burden of proof.

Page 16 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM

7.    **Schnitzer's Proposed Jury Instruction No. 9 (Competence) and Continental's Proposed Alterative Instruction**

Similar to Schnitzer's Proposed Jury Instruction No. 4 (Duty to Defend), its proposed instruction No. 9 invites the jury to consider Papak's reasoning behind his adoption of specific objective criteria in his attorney rate standard. In this regard, the first paragraph summarizes his rationale for requiring that proposed defense counsel be able to provide "competent representation."[3] It is, however, unnecessary for the jury to consider and apply this reasoning in deciding if defense counsel was capable of competently representing Schnitzer. The Court has already adopted an objective standard based upon Oregon Rule of Professional Conduct ("RPC") 1.1.

The Oregon Supreme Court has long affirmed the principle that competency should be judged according to the criteria actually specified in RPC 1.1:

> A lawyer must provide "competent representation to a client," which requires "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." DR 6–101(A)[4]. This court has held that determining whether a lawyer acted incompetently, in violation of that rule, is a fact-specific inquiry: "The question whether a lawyer has competently represented a client is, of course, a fact-specific inquiry. A review of this court's cases shows that incompetence often is found where there is a lack of basic knowledge or preparation, or a combination of those factors. In contrast, lawyers have been found not guilty of providing incompetent representation where the lawyers showed experience and professional ability to perform work, or where the Bar failed to prove that a position taken by the lawyer was 'advanced in pretense or bad faith, or in culpable ignorance.' *In sum, competence or incompetence can best be measured on a case-by-case basis using the standard stated in DR 6–101(A) itself.*"

---

[3] The proposed instruction also includes the unnecessary statement that "Schnitzer is entitled to be represented by competent defense counsel." This comment is not required because the attorney fee rate standard already mandates that counsel be able to provide "competent representation. Additionally, this statement improperly suggests that Continental did not attempt to provide Schnitzer with competent defense counsel.

[4] DR 6–101(A) is the identical predecessor rule to RPC 1.1.

Page 17 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM
679324.1/030514 1913/80360002

*In re Conduct of Eadie*, 333 Or. 42, 60, 36 P.3d 468, 480 (2001)(emphasis added).  Thus, the factors listed in RPC 1.1 (legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation) are the only criteria that the jury should consider.  Schnitzer, nevertheless, inappropriately invites the jury to consider other factors in the first paragraph of the instruction, thus distracting the jury from their duty to apply the simple and unambiguous criteria listed in RPC 1.7.

Schnitzer compounds this problem in the second paragraph, wherein it transposes its novel standard for judging the reasonableness of fees (No. 7).  For the same reasons expressed regarding the first paragraph and for those listed in Continental's objection to proposed instruction No. 7, the Court should decline to adopt the standard described in this paragraph.

To the extent the Court prefers to include an instruction concerning "competence," Continental proposes the following regarding "competent representation."  Continental bases its proposal upon the March 2012 F&R and the express language contained in RPC 1.0 and 1.1.

**Competent Representation**

For purposes of deciding the appropriate attorney fee rate, you are required to decide whether a lawyer could have reasonably been expected to provide Schnitzer with competent representation.  For purposes of this decision, "competent representation" has the following meaning:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

In the above definition, the term "reasonably," when used in relation to conduct by a lawyer, denotes the conduct of a reasonably prudent and competent lawyer.

Page 18 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM

You are to judge whether a particular lawyer would reasonably have been expected to provide competent representation as of the time that Schnitzer would have selected the lawyer. (RPC 1.0&1.1; March 2012 F&R, at 31)

### 8.    Schnitzer's Proposed Jury Instruction No. 10 (Availability)

Schnitzer's Proposed Jury Instruction No. 10 is defective on several grounds. First, the instruction asks the jury to consider "whether the lawyer or firm had adequate staffing, whether they had adequate time available given their other professional commitments." As an initial matter, this language appears to be directed more toward competence than availability. Further, such factors do not have any relevance to a determination of either competence or availability. As described by one court when presented with a similar claim:

> Despite the perception held by Driggs' counsel that only a megafirm was competent to have been selected by PMA to serve as counsel for Driggs in the underlying litigation, the fact is that an insurer is free to select counsel of its choice to represent its insured. Any counsel it selects, must, of course, be admitted to the bar and competent to try a case. Certainly, the attorneys at Gavett & Datt, although not megafirm attorneys, were admitted to the bar and were competent to try a case.

> Indeed, despite the views of plaintiffs' counsel, solo and small-practice attorneys have consistently won in David and Goliath contests far too numerous to cite; they have won major victories for their clients, despite being outnumbered, outpapered and outspent by megafirms.

*Driggs*, 3 F.Supp.2d at 660.

Of note, questions regarding size or capacity are not relevant under RPC 1.1. Rather, the question presented therein is limited to whether counsel had adequate knowledge, skill, thoroughness and preparation to provide competent representation. Competent attorneys frequently adjust professional commitments and staffing to fit their practices, which often can include hiring additional attorneys or staff, or shifting work to others within a firm, when necessary, based on the case or client needs. Under a literal reading of instruction No.10, a jury would be required to find that the Bingham firm was technically "unavailable" at the time of retention because Bingham added lawyers to assist Mr. Dragna and needed to later hire contract

Page 19 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM

attorneys to assist in the representation. Any other smaller firm in Portland could have followed the same course of action.

Schnitzer's proposed instruction No. 10 also incorrectly states that a firm should be automatically deemed to be unavailable if there were a conflict of interest. This *per se* rule of disqualification is improper because, as Schnitzer acknowledges, conflicts can be waived. Other courts addressing this issue have concluded that evidence of a conflict does not disqualify a firm from consideration as defense counsel. An attorney is available to engage in a representation if the attorney is willing and able to do so, even if the representation might require another client's informed consent. *See Arco Industries Corp. v. American Motorists Ins. Co.*, 232 Mich.App. 146, 168-169, 594 N.W.2d 61, 72 (Mich. App. 1998).

As seen in prior instructions, a third flaw in the proffered instruction is Schnitzer's failure to specify the burden of proof. As discussed above, the burden of proving that it is entitled to the exception from the presumption in favor of local rates falls squarely on Schnitzer.

9. **Schnitzer's Proposed Jury Instruction No. 11 (Consultant Reimbursement) Compared with Continental's Proposed Instructions No. 8 (Reasonable and Necessary Costs), No. 9 (Types of Costs), and No. 10 (Environmental Investigation Costs).**

In its proposed instruction regarding consultant reimbursement, Schnitzer instructs the jury that "using the same factors of complexity and size of claim against Schnitzer as you will use for attorneys' fees, you should consider the reasonableness of Schnitzer's non-lawyer consultant fees." The reference to the factors of "size and complexity" points to Schnitzer's proposed instruction No. 8C, wherein it included the same novel standard used in instruction No. 7 (The Amount of Defense Cost Reimbursement). Thus, Continental reincorporates herein its previous objections to the instructions upon which Schnitzer bases proposed instruction No. 11. The standards described in this instruction are equally inappropriate as when applied to non-legal consultants. Additionally, for the reasons described in connection with Continental's

Page 20 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM

679324.1/030514 1913/80360002

proposed alternatives to Schnitzer's instruction No. 7, Continental recommends that the Court

instead adopt Continental's proposed instructions No. 8 (Reasonable and Necessary Costs), No.

9 (Types of Costs), and No. 10 (Environmental Investigation Costs).  These instructions

appropriately instruct the jury with respect to environmental consultant expenses.

> **10.    Schnitzer's Proposed Jury Instruction No. 12 (Timeliness of Reimbursement) Compared With Continental's Proposed Jury Instruction No. 12 (Reasonably Prompt Payment)**

Schnitzer begins its Timeliness of Reimbursement Instruction with the irrelevant and

potentially misleading and unfairly prejudicial statement that it has "paid its defense costs out

of its own pockets so that its lawyers and consultants will continue to work for Schnitzer and

defend it."  This statement leaves the distinct impression that Schnitzer has been forced to pay

its own reasonable defense costs to avoid having its defense compromised – further suggesting

that Continental's unreasonable conduct has placed Schnitzer in this difficult position.  In

addition, whether Continental is paying the lawyers/consultants directly or reimbursing

Schnitzer has no relevance to any material issue in the case.  Furthermore, it is an improper

comment on the evidence because it invites the jury to consider certain irrelevant facts in

deciding the reasonableness of Continental's timing of payments.  *See State v. Hayward*, 327

Or. 397, 410, 963 P.2d 667 (1998).  Schnitzer also solidifies its unfairly prejudicial portrayal of

the timeliness issue by requiring the jury to consider whether Continental has made "untimely"

reimbursements or has "unreasonably delayed" payments.  As characterized by Magistrate

Judge Papak, the issues are not untimeliness or unreasonable delay, but rather whether

Continental made "reasonably prompt" determinations and payments.  August 3, 2011 Findings

and Recommendations (Docket # 54), at 13.

///

///

Page 21 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM
679324.1/030514 1913/80360002

In keeping with its general theme, Schnitzer also includes references to "overall patterns" of conduct and potential "benefit" to Continental from late reimbursements.[5]  These references are not the neutral statements that are appropriate  for jury instructions.  There is also no admissible evidence in this case of such a pattern or improper motivation.  Thus, there is not any relevant, non-prejudicial reason to include these statements in a jury instruction.

Schnitzer finishes with the directive that if the jury finds Continental was not "reasonably prompt" in making payments, then they must find that Continental breached the policies.  As discussed above, mere delay in payment is not a breach of the duty to defend.  *See Am. Motorists Ins. Co. v. Trane Co.*, 544 F. Supp. at 673.  Additionally, this directive glosses over the fact that Schnitzer must provide evidence for each and every individual invoice for which it alleges that Continental did not make a reasonably prompt payment.

By contrast to Schnitzer's proposed "timeliness" instruction, Continental's alternative instruction No. 12 furnishes the jury with neutral, objective standards upon which to judge whether a particular reimbursement was reasonably prompt.  Continental's instruction avoids the many problems exhibited by Schnitzer's instruction, and, therefore, should be adopted by the Court.

### 11.    Schnitzer's Proposed Jury Instruction No. 13 (Clarity of Communications Regarding Reimbursement)

Schnitzer continues its practice of attempting to convert every conceivable alleged action or inaction into a breach of contract with its instruction concerning "clarity of communications."  Even assuming a jury could properly apply the vague "reasonably clear" standard (and Schnitzer offers no criteria for applying it), this one-sided instruction only

---

[5] Schnitzer's most likely motivation is its intent to attempt introduce irrelevant and highly prejudicial "evidence" concerning alleged delays in claims handling by Continental's corporate parent in unrelated matters.  This issue will be the subject of one of Continental's motions *in limine*

focuses on Continental's alleged failure to identify the amounts not paid and the reasons for not paying. However, there is considerable evidence in this case that Schnitzer repeatedly failed to effectively communicate with Continental regarding its reasonable billing questions and requests for additional/missing information and documents. These issues aside, there is no authority (and, again, Schnitzer offers none) for predicating a breach of contract upon an insurer's alleged failure to not be reasonably clear. *See Am. Motorists Ins. Co. v. Trane Co.*, 544 F. Supp. at 673. There is no reason for permitting an instruction such as this one. Accordingly, Continental does not propose an alternative.

### 12.    Schnitzer's Proposed Jury Instruction No. 14 (Damages)

As first discussed above with regard to Schnitzer's proposed instruction No. 3 (The Insurance Policy Is a Contract) and in objecting to other instructions, Continental does not consider this case to be about a breach of contract. Continental did not breach its duty to defend in disputing payment of Bingham's full, exorbitant rates, questioning the reasonableness and necessity of certain submitted alleged "defense expenses," not paying claims within some arbitrary time frame, or allegedly not being "reasonably clear" in communicating with Schnitzer. Continental undertook its duty to defend. The issue, as Continental has repeated since the beginning of this litigation, is the extent of that duty. Under these circumstances, Continental does not believe any instructions concerning breach of contract or damages are appropriate or necessary.

If the Court would prefer to include contractual instructions, it should accept the more neutrally stated ones suggested above in connection with instruction No.3. If there is, indeed, a breach of contract issue in the case, then it encompasses both parties because Schnitzer also owed Continental contractual duties under the policies (*e.g.* the duty to cooperate). Schnitzer's "damages" instruction only focuses on Continental's alleged breach of contract. Also, in requesting the jury to "consider" how much has been paid, reimbursed, and not yet reimbursed, it improperly suggests that it is entitled to an award of damages (by suggesting that there is a

Page 23 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM

shortfall that must be paid) without also considering the reasons behind Continental's payment/nonpayment of alleged defense expenses. For these reasons, Schnitzer's damages instruction should be rejected.

### 13.    Schnitzer's Proposed Jury Instruction No. 15 (Affirmative Defenses)

Schnitzer's "affirmative defenses" instruction can be dealt with in short order on two grounds. First, the Schnitzer's recitation of the alleged standards for estoppel and waiver fall woefully short of that required to properly inform the jury as to how these defenses are applied. The Court should, instead, look to Continental's separate instructions on these two defenses (Nos. 14 [Estoppel]&15 [Waiver]), which fully flesh out the standards based upon well-recognized legal authorities. Second, Continental does not intend to rely upon the defense of accord and satisfaction at trial. That defense can, therefore, be disregarded.

### 14.    Schnitzer's Proposed Jury Instruction No. 16 (Reservation of Rights)

In its "reservation of rights" instruction, Schnitzer translates the same arguments for the jury that it asserted in its summary judgment briefing. In arguing for a broad interpretation of its alleged reservation concerning billing rates, Schnitzer only cites cases concerning reservation of rights letters submitted by insurers under very distinguishable circumstances.[6] Accordingly, Schnitzer does not offer any authority supporting its broad and self-serving pronouncements concerning the nature and purpose of a reservation of rights.

---

[6] *Crawford v. Ranger Ins. Co.*, 653 F.2d 1248, 1252 (9th Cir. 1981) (not discussing the sufficiency of the insurer's reservation of rights, but holding, instead, that the "issue is, therefore, whether an insured's consent is necessary for a reservation of rights notice to be effective"); *Nutmeg Ins. Co. v. Clear Lake City Water Authority*, 229 F.Supp.2d 668, 688 (S.D.Tex. 2002) (rejecting insured's attempt to impose laundry-list of requirements for an effective reservation of rights letter); *Allstate Ins. Co. v. Hudler*, 2011 WL 1498367 (D. Or. Apr. 18, 2011) (noting the specific legal function of an insurer's reservation of rights letter; rejecting insured's argument that typographical errors in the letter rendered it deficient).

Of greater importance than the legal deficiency of Schnitzer's instruction is the fact that it concerns an issue that will not be decided by the jury. The nature and extent of Schnitzer's alleged reservation will be a legal issue for the Court to decide in pre-trial briefing. Notably, Magistrate Judge Papak may have decided that Schnitzer asserted a reservation for purposes of summary judgment, but he left the door open for Court to decide if that reservation was actually effective. *See* March 2012 F&R, at 20 (noting that "defendants could be expected ultimately to prevail as to the question of Schnitzer's right to avoid the imposed rate caps"). There is no reason for a jury instruction concerning an issue that will be decided by the Court as a matter of law.

### 15. Schnitzer's Proposed Jury Instruction No. 17 (Ascertainability of Amounts Due)

Schnitzer's final jury instruction is clearly intended to require the jury to assist Schnitzer in recovering interest on "ascertainable" amounts. However, this standard demands more than a mere finding that there was "sufficient" information in the invoices for Continental to determine the amount owed to Schnitzer. In particular, a court may award prejudgment interest only when the exact amount, and the time from which interest should run, is "ascertained" or "easily ascertainable." Here, there are a number of issues of disputed fact that the jury must resolve (*e.g.* the attorney rates appropriate for certain time periods, whether a particular payment was reasonably prompt under the circumstances). Accordingly, Schnitzer's simplistic focus on the "sufficiency" of a cost invoice is unsupported by the law applicable to prejudgment interest and is unduly misleading. A jury instruction is not necessary concerning "ascertainability" because the jury will decide (through a special verdict form) the disputed issues of fact and the Court will award interest, if any.

///

///

Page 25 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM
679324.1/030514 1919/80360002

## III.    VERDICT FORM

Schnitzer's proposed four-question verdict form starts by treating all of the seminal claim issues as if they can be answered by two general verdict-type questions asking the jury to decide whether there was a breach of contract and, if so, what are the damages.  It then adds two special verdict-type questions, but only asks the jury to decide issues that are tangential to a determination by the Court of whether the plaintiffs may be entitled to an award on their interest claim.  While it appears that Schnitzer is conceding that a special verdict under Fed. R. Civ. P. 49(a) is appropriate (which Continental agrees is the case), its approach simply misses the mark. Continental objects to Schnitzer's proposed jury verdict form on three primary grounds.

First, as demonstrated by the recitation of Claims and Defenses in the Joint Pretrial Order, this is not a simple case where the jury can merely apply the law to the facts and then find for one side on the plaintiffs' breach of contract-related claims.   Instead, this is a complex claim that will require resolving numerous factual issues that have competing legal consequences.  Oversimplifying the role of the jury on this issue will greatly increase the probability that inappropriate factors, such as sympathy and prejudice, will influence the outcome of the case. *See Skidmore v. Baltimore & O.R. Co.*, 167 F.2d 54, 61 (2d Cir. 1948) ("The general verdict enhances, to the maximum, the power of appeals to the biases and prejudices of the jurors, and usually converts into futile ritual the use of stock phrases about dispassionateness almost always included in judges' charges"); *compare Black v. United States*, 561 U.S. 465, 130 S.Ct. 2963, 2967 n.8 (2010) (quoting Skidmore for the proposition that special verdicts in civil cases allow courts to "subject a verdict, as narrowly as [is] practical, to

a review which should make it in fact what we very elaborately pretend that it should be: a decision based on law.").

Second, even if using general verdict-type questions are appropriate on such complex breach of contract claims, Schnitzer's proposed form is slanted to give it an unfair advantage. The numerous issues of fact and law are conflated into an opaque verdict form that fails to include any room for consideration of this Court's prior rulings, Continental's defenses, and the various burdens borne by the parties. The questions are also framed in a manner that unfairly suggests the verdict can only be decided in Schnitzer's favor. Schnitzer's proposed approach, therefore, greatly increases the chances of jury confusion and error. *See Chlopek v. Federal Ins. Co.*, 499 F.3d 692, 701(7th Cir. 2007) (Verdicts must "'accurately, adequately, and clearly state the relevant issues,' and '[a]mbiguous, biased, misleading, or confusing questions may warrant reversal.'"); *U.S. v. Real Property Located at 20832 Big Rock Drive, Malibu Cal.*, 90265, 51 F.3d 1402, 1409 (9th Cir. 1995) (Providing the jury with a verdict form that does not "fully and fairly present [] to the jury the issues it was called upon to decide" is reversible error.).

Third, because the breach of contract claims may also require a determination on each element of this Court's adopted forum rule, using a more transparent special verdict form for the breach of contract issues, as proposed by Continental, is in the interests of both parties. Using Continental's proposed special verdict should protect against a retrial because the Court can correct any legal error and apply the appropriate legal analysis to the factual findings enumerated by the jury. *Zhang v. American Gem Seafoods, Inc.,* 339 F.3d 1020, 1031 (2003) (the "distinction between general and special verdicts is that general verdicts require the jury to

apply the law to the facts, and therefore require legal instruction, whereas special verdicts compel the jury to focus exclusively on its fact-finding role.").

In summary, it is difficult to conclude from the face of this curious, self-serving document that Schnitzer has made a good faith attempt to prepare a verdict form that comports with the spirit and substance of the law, while Continental's proposed special verdict form contains all of the determinations needed from the jury for the Court to render a fair judgment for either side.

### Question Number 1

Continental objects to this instruction because it suggests the jury can resolve all of the claims Schnitzer is asserting that involve attorney and paralegal rates, defense cost deductions, and the timing of payments from three insurers over a ten year period, with the numerous contractual (cooperation, voluntary payments) and equitable defenses (estopple, waiver, laches) and this Court's specific two-prong forum rule, with just a single general question of whether Continental has breached certain insurance policies.  It doesn't explain who has the burden of proof or how to distinguish the shifting burdens between the claims and defenses necessary for any principled resolution to this dispute.  For these and all of the additional reasons discussed above, this approach should be rejected.

Instead, the jury should be asked to return a special verdict with various specific findings of fact on each of the various claims over the appropriate time frame, and each of the defenses that may work to either reduce or bar these claims.  Using a special verdict form on these issues is the best way to understand whether the result is based on the evidence and law, or mere conjecture.  Federal Rule of  Civil Procedure 49(a) states "[t]he court may require a

jury to return only a special verdict in the form of a special written finding on each issue of fact." Using an appropriate special verdict allows reviewing courts to understand and defer to a jury's factual findings. *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 449 n.2 (2001)("An appellate court might be at a loss to accord such deference to jury findings absent trial court employment of either a special verdict or a general verdict accompanied by written interrogatories. ). However, when a verdict form fails to direct the jury to consider all of the key factual issues in a complex case, the appellate court has little chance but to order a new trial. *See California v. Altus Finance S.A.*, 540 F.3d 992, 1009 (9th Cir. 2008)( "To do other than send the case back for a new trial when decision on a vital issue by the jury is missing would deprive the parties of the jury trial to which they are entitled constitutionally.").

Thus, after there are written findings on each issue of fact, the issue of whether Continental is in breach of its insurance policies becomes a legal question to be resolved by the Court.

### Question Number 2

Continental objects to this question because it makes it impossible to know what calculations the jury may have applied to arrive at a damages award, if any. To the extent we need the jury to provide an amount for any potential recovery, it is incumbent that the results of its deliberations reflect a fair process that allows the jury to fairly decide (1) what rate differentials, if any, to apply, (2) the applicable time frame for such calculations, (3) the percentages owed, (4) the hours being reinstated, if any, along with any applicable deductions. Leaving these calculations to the jury, without further structure, means that crucial findings supported by competent evidence could be ignored in reaching whatever number, including zero, is potentially found.

**Question Number 3**

Continental objects to this question, which appears to address a possible determination of whether there is an ascertainable time for payment as an element of establishing a potential interest claim award, because it is unfairly slanted in Schnitzer's favor. It oversimplifies whether the payments of hundreds of separate invoices involving attorneys, paralegals, and numerous defense consultants and vendors, over a ten-year period, by three insurance companies, can be conflated into the single response. This approach would be especially unreasonable if any payment that may fall outside such a rigid time structure is used to establish that a particular payment was not paid in a reasonably prompt manner.

The question suggests, however, there is a "one size fits all" answer. However, because there is no time frame specified in the insurance contracts for payment, whether the performance was unreasonable must be answered on an invoice-by-invoice basis. This requires an analysis of many factors, including whether payment delays were caused by Schnitzer. Merely asking "how many days" implies the consequences are to be borne by Continental, even if the payment delays are attributable to Schnitzer. Rather, the jury should be asked to determine, for each invoice, the amount of time that was unreasonably incurred in the reimbursement process, if any.

**Question Number 4**

Continental objects to question number four, which appears intended to address a possible determination of whether there is an ascertainable amount due for payment as an element of establishing a potential interest claim award. Nevertheless, it parses out only one potential factor in determining whether the damages were ascertainable, and puts all of the focus on that potentially applicable factor to the exclusion of all others. The question,

Page 30 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM

therefore, fails to properly identify all of the factors necessary for determining whether Continental did not pay an ascertainable amount, as it suggests that merely finding that information is "sufficient" makes the entire amount due ascertainable. It also fails to distinguish the over eight million dollars of invoices that were reimbursed from the unpaid amounts that are at issue. Finally, the question is grossly oversimplified and, thus unfairly slanted to favor Schnitzer – effectively requiring the jury to disregard all of the information contained in hundreds of separate invoices involving numerous attorneys, defense consultants, vendors (over a ten year period), and three insurance companies.

DATED this 5th day of March, 2014.

BETTS, PATTERSON & MINES, P.S.

By ___/s/Lawrence Gottlieb_____
Lawrence Gottlieb, OSB #070869
lgottlieb@bpmlaw.com
Brett Sommermeyer, OSB #964326
bsommermeyer@bpmlaw.com
Lisa C. Neal, WSB #25686, Admitted *pro hac vice*
lneal@bpmlaw.com
Betts, Patterson & Mines
701 Pike St., Suite 1400
Seattle, WA  98101
206-292-9988
Attorneys for Defendants

CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2014, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system and the document is available for

viewing and downloading from the CM/ECF system.  I also certify that the foregoing document

is being served electronically via the Court's CM/ECF notice system upon the following

counsel of record:

**Counsel for Plaintiffs**

Scott J. Kaplan
STOEL RIVES, LLP
900 SW Fifth Ave., Ste. 2600
Portland, OR  97204

Joseph W. Montgomery, III
John E. Iole
Rebekah Byers Kcehowski
JONES DAY
500 Grant St., Ste. 4500
Pittsburgh, PA  15219-2514

Louis A. Ferreira
Stoel Rives LLP
900 SW 5th Ave., Ste. 2600
Portland, OR  97204-1268

Crystal S. Chase
STOEL RIVES, LLP
900 SW Fifth Ave., Ste. 2600
Portland, OR  97204

DATED March 5, 2014.

By___/s/Lawrence Gottlieb_____
    Lawrence Gottlieb, OSB #070869
    lgottlieb@bpmlaw.com
    Betts, Patterson & Mines
    701 Pike St., Suite 1400
    Seattle, WA  98101
    206-292-9988
    Attorneys for Defendants

Page 32 – DEFENDANTS' OBJECTIONS
TO PLAINTIFFS' PROPOSED JURY
INSTRUCTIONS AND VERDICT FORM
679324.1/030514 1921/80360002