Scott J. Kaplan, OSB No. 913350
Email: sjkaplan@stoel.com
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR  97204
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

John E. Iole
Email: jeiole@jonesday.com
Rebekah B. Kcehowski
Email: rbkcehowski@jonesday.com
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA  15219-2514
Telephone: (412) 391-3939
Facsimile: (412) 394-7959
Associate Counsel (admitted *pro hac vice*)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SCHNITZER STEEL INDUSTRIES, INC., an Oregon corporation; and MMGL CORP., a Washington corporation, | Case No.: 3:10-CV-01174-MO |
| Plaintiffs, | PLAINTIFFS' TRIAL MEMORANDUM |
| v. | |
| CONTINENTAL CASUALTY COMPANY, an Illinois corporation; and TRANSPORTATION INSURANCE COMPANY, an Illinois corporation, | |
| Defendants. | |

Page 1   -   PLAINTIFFS' TRIAL MEMORANDUM

## TABLE OF CONTENTS

PAGE

I.   INTRODUCTION ................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................. 2

    A.   Schnitzer's Historical Operations and Involvement in Portland Harbor Superfund Site................................................................. 2

    B.   Continental's Duties Under the Applicable Policies. ........................... 5

    C.   Schnitzer's Retention of Counsel in Connection with Defense of PHSS Claims and Negotiations with Continental Regarding Replacement Counsel for Stoel Rives. .............................................................. 5

    D.   Continental's Late Partial Payment of Schnitzer's Defense Costs ....................... 9

    E.   Schnitzer's Decision to File Suit and Damages ................................. 10

III.   DISCUSSION ..................................................................................... 11

    A.   First Claim for Relief:  Continental's Breach of the Duty to Defend. ................ 11

        1.   Continental's Contractual Obligations Under the Policies. ................... 11

        2.   Continental's Breach of Its Obligations Under the Policies. ................. 15

        3.   Damages Caused by Continental's Breach of Its Duty to Defend........... 17

    B.   Second Claim for Relief:  Declaratory Judgment. ............................. 18

    C.   Schnitzer's Right to Attorneys' Fees. ........................................... 20

    D.   Continental's Affirmative Defenses – Waiver and Estoppel. .............. 20

        1.   Waiver. ............................................................................. 20

        2.   Estoppel. ........................................................................... 22

    E.   Continental's Other "Defenses" – Laches, Lack of Cooperation, and Voluntary Payment. ................................................................. 25

IV.   CONCLUSION ................................................................................... 27

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Allstate Ins. Co. v. O'Connell*,
No. 10-6036-AA, 2010 U.S. Dist. LEXIS 117142 (D. Or. Nov. 2, 2010) ............................19

*Assurance Co. of Am. v. MDF Framing, Inc.*,
No. CV 06-169-MO, 2008 WL 361289 (D. Or. Feb. 7, 2008)................................26

*Bailey v. Universal Underwriters Ins. Co.*,
258 Or. 201, 474 P.2d 746 (1970)................................................26

*Bourrie v. U.S. Fid. & Guar. Ins. Co.*,
75 Or. App. 241, 707 P.2d 60 (1985)..............................................14

*Cascade Corp. v. Am. Home Assurance Co.*,
206 Or. App. 1, 135 P.3d 450 (2006)..............................................12

*Charter Oak Fire Ins. Co. v. Interstate Mech., Inc.*,
No. 3:10-cv-01505-PK, 2013 U.S. Dist. LEXIS 102725 (D. Or. July 23, 2013) ...................27

*Conway v. Pac. Univ.*,
324 Or. 231, 924 P.2d 818 (1996) ...............................................13

*Coos County v. State*,
303 Or. 173, 734 P.2d 1348 (1987) ..............................................23

*Crain v. Siegel*,
151 Or. App. 567, 950 P.2d 382 (1997)............................................26

*Cusick v. Meyer*,
124 Or. App. 515, 863 P.2d 486 (1993)............................................21

*Duncan v. Office Depot*,
973 F. Supp. 1171 (D. Or. 1997) ................................................23

*Emp'rs Ins. of Wassau v. Tektronix, Inc.*,
211 Or. App. 485, 156 P.3d 105 (2007)............................................11

*Frasier v. Nolan*,
195 Or. App. 211, 98 P.3d 392 (2004).............................................25

*GAKK, Inc. v. Acceptance Cas. Ins. Co.*,
No. CV 09-6282-MO, 2010 U.S. Dist. LEXIS 84971 (D. Or. Aug. 16, 2010) .......................19

# TABLE OF AUTHORITIES

**PAGE**

*Galicia-Orozco v. Country Mut. Ins. Co.*,
No. 09-1401-AC, 2010 U.S. Dist. LEXIS 59423 (D. Or. June 15, 2010) ...............................14

*Goddard v. Farmers Ins. Co.*,
173 Or. App. 633, 22 P.3d 1224 (2001)..................................................................................14

*Gov't Emps. Ins. Co. v. Dizol*,
133 F.3d 1220 (9th Cir. 1998) ...............................................................................................19

*Harley-Davidson Credit Corp. v. Turudic*,
No. 3:11-cv-1317-HZ, 2012 U.S. Dist. LEXIS 114477 (D. Or. Aug. 10, 2012)....................25

*Hazelwood Water Dist. v. First Union Mgmt.*,
78 Or. App. 226, 715 P.2d 498 (1986)...................................................................................18

*Herman v. Valley Ins. Co.*,
145 Or. App. 124, 928 P.2d 985 (1996)..................................................................................23

*Hyundai Motor Am. v. Nat'l Union Fire Ins. Co.*,
600 F.3d 1099 (9th Cir. 2010) ...............................................................................................19

*Interstate Fire & Cas. Co. v. Underwriters at Lloyd's*,
899 F. Supp. 498 (D. Or. 1995) .....................................................................................21, 22, 24

*Kahl v. Pool*,
47 Or. App. 43, 613 P.2d 1078 (1980)...............................................................................21, 23

*Me. Bonding & Cas. Co. v. Centennial Ins. Co.*,
298 Or. 514, 693 P.2d 1296 (1985) .......................................................................................13

*Miner v. City of Vernonia*,
47 Or. App. 393, 614 P.2d 1206 (1980)..................................................................................23

*Mittleman Props. v. Bank of Cal.*,
131 Or. App. 666, 886 P.2d 1061 (1994)................................................................................24

*Mut. of Enumclaw Ins. Co. v. Gass*,
100 Or. App. 424, 786 P.2d 749 (1990)..................................................................................12

*Nw. Pump & Equip. Co. v. Am. States Ins. Co.*,
144 Or. App. 222, 925 P.2d 1241 (1996)................................................................................11

## TABLE OF AUTHORITIES

PAGE

*Pac. First Bank v. New Morgan Park Corp.*,
    122 Or. App. 401, 857 P.2d 895 (1993)................................................................24

*Principal Life Ins. Co. v. Robinson*,
    No. 00-CV-1345-BR, 2006 U.S. Dist. LEXIS 11576 (D. Or. Feb. 27, 2006)........................25

*Rick Franklin Corp. v. State*,
    207 Or. App. 183, 140 P.3d 1136 (2006)................................................................23

*Safeco Ins. Co. of Am. v. Barnes*,
    133 Or. App. 390, 891 P.2d 682 (1995)................................................................13

*Schmeck v. Bogatay*,
    259 Or. 188, 485 P.2d 1095 (1971) ..............................................................21, 23, 24

*Seagate Tech. LLC v. Nat'l Union Fire Ins. Co.*,
    737 F. Supp. 2d 1013 (N.D. Cal. 2010) ................................................................14

*Stephan v. Equitable Sav. & Loan Ass'n*,
    268 Or. 544, 522 P.2d 478 (1974) ......................................................................25

*Strader v. Grange Mut. Ins. Co.*,
    179 Or. App. 329, 39 P.3d 903 (2002)................................................................17

*Taylor v. Wells*,
    188 Or. 648, 217 P.2d 236 (1950) ......................................................................14

*W. World Ins. Co. v. Delta Prop. Mgmt.*,
    No. 10-cv-0279, 2010 U.S. Dist. LEXIS 125296 (W.D. Pa. Nov. 29, 2010)........................22

*Wilcher v. Amerititle, Inc.*,
    212 Or. App. 498, 157 P.3d 790 (2007)................................................................17

*Wilson v. Smurfit Newsprint Corp.*,
    197 Or. App. 648, 107 P.3d 61 (2005)................................................................17

*ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*,
    No. 9708-06226, 1999 WL 34001829 (Or. Cir. Oct. 15, 1999) (unpublished) .................2, 15

# TABLE OF AUTHORITIES

**PAGE**

**Statutes**

28 U.S.C. § 2201(a) ...................................................................................................19

ORS 465.480 (2012) .................................................................................................19

ORS 465.480(2)(b) ...................................................................................................12

ORS 465.480(2)(c) ...................................................................................................27

ORS 465.480(3)(a) .......................................................................................12, 15, 25

ORS 465.484 .............................................................................................................18

ORS 742.061 .......................................................................................11, 12, 20, 27

ORS 746.230 .............................................................................................................14

ORS 746.230(1)(b) ...................................................................................................14

ORS 746.230(1)(c) ...................................................................................................14

ORS 746.230(1)(d) ...................................................................................................14

**Rules**

Fed. F. Civ. P. 30(b)(6) ...............................................................................................9

Fed. R. Civ. P. 50(a) .................................................................................................22

Or. R.P.C. 1.1 ...........................................................................................................13

**Other Authorities**

3 John N. Pomeroy, *A Treatise on Equity Jurisprudence* 219, § 810 (5th ed. 1941) ...................23

S.B. 814 § 6 (2013) ...................................................................................................18

UCJI No. 65.01 ..........................................................................................................11

UCJI No. 65.15 ..........................................................................................................11

UCJI No. 65.18 ..........................................................................................................17

## I.    INTRODUCTION

This case is about three things: (1) the rates at which Plaintiffs Schnitzer Steel Industries, Inc. ("SSI") and MMGL Corp. ("MMGL") (collectively, "Schnitzer") should be reimbursed for amounts spent (and yet to be spent) on defense counsel at the Portland Harbor Superfund Site; (2) defense costs that Defendants Continental Casualty Company and Transportation Insurance Company (collectively, "Continental") have refused to pay, unreasonably cut and have unreasonably delayed paying; and (3) a declaration that provides clear responsibilities going forward, and that will help eliminate the need for future litigation.

Schnitzer has incurred approximately $8.6 million in short-paid, late-paid and no-paid defense costs.  Under Oregon's "all sums" law and the duty to defend under Continental's comprehensive general liability policies, Schnitzer is entitled to seek all unpaid defense costs from Continental.

Uncontroverted evidence will show that some of Schnitzer's defense costs remained unpaid for up to several years as of the date Schnitzer filed suit, and that Continental arbitrarily cut other defense costs based on subjective views of its team of invoice reviewers.  Schnitzer repeatedly pleaded with Defendants to put into place a "reasonable system for the submission, review and payment of defense cost invoices" citing the decision of the late Judge William Keys of the Multnomah County Circuit Court in the *ZRZ Realty* case.[1]  Schnitzer renewed this request

---

[1]  Confronting a similar problem to Schnitzer's, Judge Keys held as follows:

> With respect to ongoing defense costs, I am hereby ordering that the parties work together to put in place [1] a reasonable system for submission, review and payment of these costs. The system will include, [2] within a 30-day cycle, [3] a reasonable time to analyze the claimed defense costs, [4] written identification of costs which are questionable, [5] a reasonable time to respond in writing about any questionable costs and [6] payment of the remainder.

in its early motion for judgment on the pleadings filed in this very case on April 15, 2011, *see*

Dkt. No. 15.  Continental always has refused to agree to any set of objective standards for the

discharge of its defense duty.[2]

## II.   FACTUAL BACKGROUND

### A.   Schnitzer's Historical Operations and Involvement in Portland Harbor Superfund Site.

Founded in 1906, by immigrant entrepreneur Sam Schnitzer with nothing more than the

pack on his back and a strong work ethic, plaintiff Schnitzer Steel Industries, Inc. ("SSI"),

headquartered in Portland, Oregon, is one of the United States' largest recyclers of scrap metal,

as well as a leading recycler of used and salvaged vehicles.  The business later passed to Sam

Schnitzer's sons, who began to purchase real estate both associated with SSI's operations and as

investment properties, forming plaintiff MMGL Corp. (named after the initials of Sam's four

sons involved in the business), formerly Schnitzer Investment Corp.  SSI remained family-owned

until the mid-1990s, and members of the family still own MMGL.

In November 1999 and December 2000, Schnitzer received notice from the Oregon

Department of Environmental Quality ("DEQ") and the United States Environmental Protection

Agency ("EPA"), respectively, that Schnitzer had been identified as a potentially responsible

party ("PRP") for the Portland Harbor Superfund Site ("PHSS") based on its current or historical

---

*ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.,* No. 9708-06226, 1999 WL 34001829, at *1
(Or. Cir. Oct. 15, 1999) (unpublished) (numerical annotations added).  This decision by the late
Multnomah County Circuit Court Judge William Keys, who was perhaps the most experienced
trial court jurist in Oregon on environmental insurance issues, reflects an appropriate balancing
of interests.

[2]  In 2010, National Indemnity Company (a Berkshire Hathaway Company) received a
payment from Continental in order to take over the defense and indemnity obligations in the
policies by way of reinsurance.  NICO has installed Resolute Management, Inc. to handle all
defense cost payment functions in the name of Continental.

Page 2   -   PLAINTIFFS' TRIAL MEMORANDUM

ownership or operation of properties along the Willamette River, including the Burgard Industrial Park (the location of World War II shipbuilding operations). The bases for Schnitzer's designation as a PRP include multiple locations currently or formerly owned or operated by Schnitzer, some not for many decades.

The PHSS currently comprises approximately 11 miles along the Willamette River north of downtown Portland, areas that have been used for industrial and commercial purposes for more than a century. There are more than a hundred PRPs that have been identified to date at the PHSS, and include a variety of large private businesses (e.g., Exxon, General Electric, Union Pacific Railroad), public entities (e.g., the Port of Portland, the City of Portland, the State of Oregon, and the federal government), public utilities (e.g. Northwest Natural, Portland General Electric) as well as numerous smaller businesses. Schnitzer's operations and ownership within the PHSS, both current and historically, relate to the many tracts of land  and date back to the first part of the twentieth century.

Since 1999, Schnitzer has been actively involved in the investigation, assessment, and other defense activity surrounding the planned cleanup of the PHSS, incurring (and paying in full) in excess of $16 million in defense costs, including attorney fees and consultant fees. The amount of the unreimbursed defense costs is approximately $8.6 million through December 2013. Importantly, costs could have been much higher had plaintiffs SSI and MMGL not agreed to waive conflicts to allow a joint defense. That is, Continental is getting the defense of two PRPs at PHSS for the price of one.

Nonetheless, the defense effort has been, and is, daunting but fully appropriate to the size of potential liability and the scale of the legal, scientific and regulatory challenge at the PHSS. Even though it is not a direct comparison, some sense of the scale of the work is shown by the

Page 3    -    PLAINTIFFS' TRIAL MEMORANDUM

fact that the Lower Willamette Group (a PRP group) spent well in excess of $100 million to prepare a *draft and unapproved* Remedial Investigation and Feasibility Study. Schnitzer's PHSS defense counsel and environmental consultants assisting in the defense have had to master historical and scientific facts regarding potential spills and releases at multiple locations over many decades. The range of alleged contaminants, and the pathways of contamination, are extensive.

Not only must Schnitzer's defense team understand the history of its own properties, they must master the evidence on other PRPs for purposes of allocation. Again, in excess of 100 entities received "General Notice Letters" from the EPA advising them of potential liability at the PHSS. Current estimates of cleanup costs at PHSS range as high as $2 billion. Because Superfund liability is joint and several, each PRP is potentially responsible for the entire amount. An allocation process is underway to provide a process for more equitable allocation. Nevertheless, allocation is a zero sum process, and any share not borne by one PRP must be taken up by the others, and each PRP (or coalition of PRPs) has a strong incentive to lay off liability to others. When, as here, each one percent share potentially could equate to approximately $20 million in liability, the incentives to shift and protect against liability are exceedingly strong.

Knowing that it may be a high-profile PRP, and realizing that Continental has reserved a right to totally deny coverage and withdraw from the defense at any time, the quality and scope of Schnitzer's defense has been critically important for the Company. Schnitzer has taken the prudent course of choosing a defense team with qualifications that match the magnitude of its potential risk, and of making sure that its team takes all reasonable and necessary steps to defend the PHSS claim.

Page 4    -    PLAINTIFFS' TRIAL MEMORANDUM

**B.    Continental's Duties Under the Applicable Policies.**

Between 1977 and 1983, Continental issued a series of general liability policies to Schnitzer ("Policies"). *See* Dkt. 198 (Joint Pretrial Order), at 4-5 (listing policies).  Each has a limited indemnity obligation and an unlimited defense obligation—*i.e.*, defense costs are outside of, and do not erode, the Policy indemnity.

Promptly after receiving PRP notices from DEQ and EPA, Schnitzer notified Continental.  Plaintiffs' Trial Exhibits ("Pls. Tr. Exs.") 0032-33, 0041.  In April 2001, Continental agreed to participate in Schnitzer's defense under a "full reservation of rights," including the (alleged) right to recoup defense costs[3] and to deny indemnity.  Pls. Tr. Ex. 0043.  Since then, Continental has intermittently paid some defense costs, but has been chronically late to pay.  For example, the evidence will show invoices approved for payment by Continental's reviewer, but still unpaid for many months.  Moreover, Continental has routinely cut legal and consultant invoices, often without explaining the basis for its reduction.  As of 2010 when Schnitzer filed suit, the total amount due was in excess of $3 million, a sums that has grown to approximately $8.6 million during the last several years.

**C.    Schnitzer's Retention of Counsel in Connection with Defense of PHSS Claims and Negotiations with Continental Regarding Replacement Counsel for Stoel Rives.**

Initially, Schnitzer's regular environmental counsel, Joan Snyder of Stoel Rives LLP ("Stoel Rives"), represented Schnitzer at the PHSS.  Stoel Rives also represented other members of the Lower Willamette Group ("LWG"), a group of businesses, municipal entities, and PRPs who were working together with the EPA on PHSS investigation and clean-up issues.

Continental's payment history with Stoel Rives was poor.  For example, Continental often failed to pay within 30 days (per Stoel Rives' standard payment policy) or even within 90

---

[3] The Continental policies contain no recoupment provision.

days.  Continental paid Schnitzer's environmental consultants on no better timetable.  Moreover, after paying Stoel Rives' regular hourly rates for nearly a year, in July and August 2002 Continental announced an intention to unilaterally reduce its reimbursements to $155 per hour. At this point, Ms. Snyder's regular rate was $325, and Stoel Rives declined to accept Continental's reduction.  *See* Pls. Tr. Ex. 0070.  Continental continued to pay Stoel Rives' guideline rates.

Then, in January 2003, shortly after raising the issue of rates with Stoel Rives again, Continental suddenly claimed that Stoel Rives had a conflict of interest because Stoel Rives represented Schnitzer in a separate coverage lawsuit adverse to Continental.  This lawsuit had been pending since 1999, *see* Pls. Tr. Ex. 0074, and Schnitzer believes that this newly-asserted "conflict" was a pretext to try to switch to cheaper defense counsel.  Coincidentally, however, Schnitzer had already been searching for new counsel because Schnitzer had withdrawn from the LWG at the end of 2001 and Stoel Rives continued to represented other PRPs who remained in the LWG.  *See* Pls. Tr. Ex. 0058.

Due to Schnitzer's potential liability at the PHSS, Schnitzer needed counsel with a strong background in sites with the size and complexity of the PHSS matter, and who had working relationships with and an understanding of the EPA personnel and  PRPs involved in the PHSS. However, by the time of the Stoel Rives LWG conflict, all qualified Portland law firms had other clients at PHSS, so Schnitzer had to look outside Portland.  Schnitzer unsuccessfully searched in Seattle and elsewhere in the Northwest.  Schnitzer then looked for counsel in California, where it interviewed Jim Dragna and the Bingham McCutchen firm ("Bingham").  Dragna is a founding member of the EPA Hazardous Waste Task force, which led to the passage of the Superfund law, and a former Department of Justice attorney who represented EPA in enforcement actions, is

familiar with EPA personnel and processes, and routinely represents PRPs at some of the most complex Superfund sites nationwide.  Consequently, Schnitzer began working with Bingham even before learning that Continental had independently discovered a Stoel Rives "conflict."

In early 2003, Continental announced that it intended to unilaterally appoint William G. Earle then of Abbott, Davis, Rothwell, Mullin & Earle, to represent Schnitzer.  Alternatively, Continental suggested George W. McKallip, Jr. of Sussman Shank.  Pls. Tr. Ex. 007. Continental added that Mr. Earle and Mr. McKallip were willing to work at approximately half the Stoel Rives rates.  Schnitzer then interviewed both Mr. Earle and Mr. McKallip and reviewed materials that they provided.  Schnitzer determined that neither they or their law firms could adequately represent Schnitzer at the PHSS matter because neither possessed the experience, qualifications, or depth of resources.  Earle was not an environmental regulatory attorney.

Moreover, both Mr. Earle and Mr. McKallip had significant conflicts of interest that they failed to disclose to Schnitzer during the interviews.  Mr. McKallip's firm represented other parties at PHSS, including a former tenant at one of Schnitzer's properties, creating a directly adversarial relationship.  As for Mr. Earle, he and his firm were acting as coverage counsel for Employers Insurance of Wausau ("Wausau"), which was and is adverse to Schnitzer at PHSS and on other claims.  Continental never explained why it believed that a lawyer who made his living defending insurance companies who deny environmental claims was an appropriate defense counsel for Schnitzer.   The evidence at trial will be that Schnitzer would not have waived Mr. Earle's or Mr. McKallip's conflicts, had the conflicts been disclosed.

In July 2003, Schnitzer advised Continental that Schnitzer had selected Jim Dragna of Bingham to represent it in connection with PHSS and explained in detail why Mr. Dragna possessed relevant qualifications and experience that were lacking in Continental's proposed

counsel. Pls. Tr. Ex. 0080.   In response, in a November 2003 letter, Continental agreed that Bingham was competent and to "fund the defense of Schnitzer by Bingham McCutchen" subject to a series of enumerated conditions, including that CNA would not pay rates in excess of $175 per hour for partners and $150 per hour for associates.  Pls. Tr. Ex. 0087.  Continental asked Schnitzer to agree.  *Id.*

In February 2004, Schnitzer responded by letter, explaining that rates for a "*general practitioner in the Portland area*" are not comparable to "rates charged by an experienced environmental litigator . . . for representation in a matter as significant as Portland Harbor," and explained that Continental had provided no basis for the proposed rate adjustment.  *See* Pls. Tr. Ex. 0093.  Second, Schnitzer challenged Continental's assessment that "competent environmental counsel in Portland [were] available to Schnitzer[.]"  *Id.*  Accordingly, Schnitzer requested that Continental reconsider the limitations proposed in its November 2003 letter.  *Id.* After subsequent discussion, Schnitzer agreed to disagree, and moved forward with Bingham and a reduced rate reimbursement, "subject to [Schnitzer's] reservation of all rights available under applicable law to challenge your clients' decision, as the counsel proposed by your clients do not meet the standards of standards of competent counsel."  Pls. Tr. Ex. 0094.

Schnitzer never agreed to Continental's arbitrarily capped attorney billing rates and never agreed that Continental's liability was anything less than its "all sums" liability under Oregon law to pay 100 percent of defense costs.  Although Schnitzer sent invoices showing the percentages by which its insurers had agreed to split Schnitzer's defense costs (with Wausau and another insurer having smaller shares), Schnitzer never agreed that Continental would be relieved from its "all sums" obligation.  Schnitzer quite clearly informed the insurers that their

Page 8    -    PLAINTIFFS' TRIAL MEMORANDUM

separate allocation and deal was for the insurers' convenience, and did not bind Schnitzer.  *E.g.,*
Pls. Tr. Exs. 0083-84, 0094, 0143, 0158, 0232.

### D.    Continental's Late Partial Payment of Schnitzer's Defense Costs

During the next several years, defense cost reimbursements became increasingly late and
short paid or were not paid at all.  Problems were exacerbated when Continental began to funnel
communications though its coverage counsel, Larry Gottlieb, and his associates at the Betts
Patterson firm, such that Schnitzer had no way to efficiently provide information to Continental.
Explanations made to Betts Patterson never seemed to be communicated to Continental
personnel because the same mistakes and problems reoccurred.  For example, Continental ceased
payment of Bingham invoices for well over a year because, for administrative reasons, Bingham
simply changed the name of the PHSS defense matter.  Schnitzer's repeated explanations that
this administrative change did not affect the substance of the work went unheeded until one year
after Schnitzer filed this action.

Similarly, Betts Patterson retained an environmental consultant to review defense
invoices paid by Schnitzer to its own environmental consultants but refused to disclose his
identity.  After extremely long delays Betts Patterson's consultant would make apparently
arbitrary reductions in reimbursements to the Schnitzer's environmental consultants.   Because
Schnitzer was unable to talk directly to the unnamed consultant, it was unable to address his
concerns and point out his mistakes.  The consultant was only identified in connection with
Continental's Rule 30(b)(6) deposition in this case, when he was disclosed as Chip Goodhue of
Aspect Consulting.  It was also disclosed in deposition that the  Betts Patterson firm apparently
"sat on" invoices for months even after Goodhue had approved them for payment.

Page 9    -   PLAINTIFFS' TRIAL MEMORANDUM

In 2010, Continental's parent company, a CNA entity, entered into a transaction with National Indemnity Company ("NICO") in which NICO agreed to take on certain Continental liabilities, including those related to long-tail (long duration before discovery) historical environmental and asbestos claim in exchange for payment by NICO to CNA of several billion dollars. Those claims, including Schnitzer's, are administered by Resolute Management, Inc., ("Resolute"), an affiliate of NICO. The transaction is profitable for NICO and Resolute only if they spend less running off the historical Continental liabilities such as Schnitzer's than they are making in principle and interest on CNA's advance payment. .

**E.     Schnitzer's Decision to File Suit and Damages**

Although unpaid defense costs were steadily accruing over the years, Schnitzer resisted filing suit in order to avoid being involved in a "two-front war," *i.e.,* litigating with Continental while simultaneously defending the PHSS matter itself. However, in the fall of 2010, with Continental not paying the bills due, supposedly, to the Bingham name change , Schnitzer finally had no choice but to file this action. The evidence will be that more than a year after Schnitzer filed its original complaint, Continental finally conceded that the Bingham matter name change was only that and resumed processing the Bingham invoices, albeit only after long delays. Continental continued to pay the bills only in part at arbitrarily capped rates.

Schnitzer's damages for unpaid defense costs will be testified to both by Schnitzer's employees and by its damages expert, Charles Wilhoite. As explained below, Schnitzer's actual unpaid defense costs are approximately $8.6 million. If the jury determines under the legal standard adopted by the Court that local billing rates for the handful of qualified Superfund defense lawyers must apply instead of actual amounts paid by Schnitzer for its defense, then unpaid defense costs are approximately $3.4 million. Schnitzer seeks prejudgment interest on

these sums and declaratory judgments as to billing rates and timeliness of payment going forward.  Schnitzer also seeks its attorneys fees in this action under ORS 742.061.

## III. DISCUSSION

**A.      First Claim for Relief:  Continental's Breach of the Duty to Defend.**

Schnitzer's First Claim is for breach of contract based on Continental's breach of its duty under its insurance policies to defend Schnitzer at the PHSS.  At trial, the primary issues for the jury will be whether Continental breached its duty to defend and, if so, the damages caused by those breaches.

1.      <u>Continental's Contractual Obligations Under the Policies.</u>

A liability insurance policy is a contract and a legally enforceable set of promises.  *See, e.g.*, UCJI No. 65.01; *Emp'rs Ins. of Wausau v. Tektronix, Inc.*, 211 Or. App. 485, 502, 156 P.3d 105 (2007) ("Insurance policies are contractual in nature . . . .").  An insurer breaches its contract with its insured if it fails to fulfill its promises under the insurance policy.  UCJI No. 65.15; *see Nw. Pump & Equip. Co. v. Am. States Ins. Co.*, 144 Or. App. 222, 226-27, 925 P.2d 1241 (1996) ("[T]he duty to defend is a contractual duty, and, under general principles of contract law, the breach of that duty gives rise to a claim for damages.").

A liability insurer such as Continental has a contractual duty to defend its insured under Oregon law in actions such as the DEQ and EPA investigation and cleanup demands at issue in this case.  *See* Joint Pretrial Order (Dkt. No. 198) at 4, ¶ 1 ("Schnitzer purchased liability insurance policies from Continental . . . that provide, among other things, general liability insurance coverage for defense costs incurred in defending against claims by third parties, including for property damage."); *id.* at 6, ¶ 5 ("The Policies provide that Continental 'shall have the right and duty to defend any suit against [Schnitzer] seeking damages on account of . . .

Page 11   -   PLAINTIFFS' TRIAL MEMORANDUM

property damage . . . ."); *see also* ORS 465.480(2)(b) ("Any action or agreement by the [DEQ] or [EPA] against or with an insured . . . is equivalent to a suit or lawsuit as those terms are used in any general liability insurance policy.").

That contractual duty to defend includes a duty to pay all reasonable and necessary defense costs. *See Mut. of Enumclaw Ins. Co. v. Gass*, 100 Or. App. 424, 428, 786 P.2d 749 (1990) (insurer must pay reasonable and necessary defense costs); *see also* ORS 465.480(3)(a) ("[A] general liability insurance policy [] provides that the insurer has a duty to pay all sums arising out of a risk covered by th[e] policy . . . ."); *Cascade Corp. v. Am. Home Assurance Co.*, 206 Or. App. 1, 135 P.3d 450 (2006) (adopting the "all sums" rule as a common law rule of contract interpretation).   In fact, the Court has already determined that, under the Policies, Continental has a duty to pay Schnitzer's reasonable and necessary PHSS defense costs. *See* Aug. 3, 2011 Findings and Recommendations (Dkt. No. 54) at 13 (holding that Continental must "pay the full amount of Schnitzer's reasonable and necessary defense costs").   Continental itself recognized as much in both the Joint Pretrial Order and other filings. *See, e.g.*, Joint Pretrial Order (Dkt. No. 198) at 9, ¶ 7 ("Continental acknowledges a duty to pay 'reasonable and necessary' defense costs.").   Its own corporate representative testified to this obligation. *See* Pls. Tr. Ex. 2012 (Continental Rule 30(b)(6) Dep. Tr. (T. Barriball)) at 48-49 (duty to defend includes duty to pay reasonable and necessary defense costs associated with the defense of a covered claim).

Moreover, the Court has already determined that Continental's contractual duty to defend Schnitzer includes a duty to exercise reasonable care to protect Schnitzer's interests. *See* Mar. 9, 2012 Findings and Recommendations (Dkt. No. 124) at 10, 30-31 ("It is well settled in Oregon that 'a liability insurer who undertakes a duty to defend owes its insured a [heightened] duty of

Page 12   -   PLAINTIFFS' TRIAL MEMORANDUM

care that exists independent of the insurance contract . . . .'") (quoting *Conway v. Pac. Univ.*, 324 Or. 231, 240, 924 P.2d 818 (1996)).  The Court so held because, under Oregon law, "[i]n conducting the defense of a claim against an insured, . . . the insurer must use such care as would have been used by an ordinary prudent insurer with no policy limit applicable to the claim." *Me. Bonding & Cas. Co. v. Centennial Ins. Co.*, 298 Or. 514, 518-19, 693 P.2d 1296 (1985).  The duty to defend thus "requires that the insurer exercise reasonable care to protect its insured's interests, in addition to its own." *Id.* at 519; *see also Safeco Ins. Co. of Am. v. Barnes*, 133 Or. App. 390, 395, 891 P.2d 682 (1995) ("[O]nce [insurer] assumed th[e] duty to defend [its insured], it was obligated to defend in a manner that protected [the insured]'s interests as well as its own.").  This means that the insurer must provide or pay for counsel that is free of conflicts, competent and available to defend the insured.  *See* Mar. 9, 2012 Findings and Recommendation (Dkt. No. 124) at 31-32 (citing, *inter alia*, Or. R.P.C. 1.1 ("Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.")); Pls. Tr. Ex. 2012 (Continental Rule 30(b)(6) Dep. Tr. (T. Barriball) at 49 (duty to defend includes the duty to pay for competent defense counsel).  And, to that end, "a failure to defend adequately is actionable at law." *Goddard v. Farmers Ins. Co.*, 173 Or. App. 633, 637, 22 P.3d 1224 (2001).

The Court has also already determined that Continental has a contractual duty to pay Schnitzer's defense costs in a reasonably prompt manner.  Aug. 3, 2011 Findings and Recommendation (Dkt. No. 54) at 12-13 (holding Continental "must make a reasonably prompt determination and payment of the reasonable and necessary fees, costs, and expenses incurred by Schnitzer"); Nov. 29, 2011 Order (Dkt. No. 87) (same); *Seagate Tech. LLC v. Nat'l Union Fire Ins. Co.*, 737 F. Supp. 2d 1013, 1017 (N.D. Cal. 2010) (stating that duty to defend includes duty

Page 13   -   PLAINTIFFS' TRIAL MEMORANDUM

"timely to pay" defense costs); *Bourrie v. U.S. Fid. & Guar. Ins. Co.*, 75 Or. App. 241, 246, 707 P.2d 60 (1985) ("When a contract is silent as to the time within which replacement must be completed, the law will imply a requirement that it be done within a reasonable time."); *Taylor v. Wells*, 188 Or. 648, 655, 217 P.2d 236 (1950) ("As the contract fixed no time for the exercise of the option, the law implies that the election must be made in a reasonable time."). An insurer breaches its duty to defend by failing to act reasonably and promptly on claims. *See, e.g.*, ORS 746.230(1)(b) ("No insurer or other person shall . . . fail[] to acknowledge and act promptly upon communications relating to claims."); ORS 746.230(1)(c) ("No insurer or other person shall . . . fail[] to adopt and implement reasonable standards for the prompt investigation of claims."); ORS 746.230(1)(d) ("No insurer or other person shall . . . refuse[] to pay claims without conducting a reasonable investigation based on all available information."); *Galicia-Orozco v. Country Mut. Ins. Co.*, No. 09-1401-AC, 2010 U.S. Dist. LEXIS 59423, at *7-9 (D. Or. June 15, 2010) (holding that violation of ORS 746.230 can form the basis for a breach of insurance contract claim).

An insurer also breaches its duty to defend by failing to provide reasonably clear communications regarding reimbursement and the amounts that it is paying or not paying. Aug. 3, 2011 Findings and Recommendation (Dkt. No. 54) at 12-13; Mar. 9, 2012 Findings and Recommendation (Dkt. No. 124) at 30. Policyholders such Schnitzer are entitled to a reasonable system for the submission, review, and payment of defense costs, and it is a breach of the duty to defend for an insurance company to fail to implement such a system. *See, e.g.*, *ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*, No. 9708-06226, 1999 WL 34001829, at *1 (Or. Cir. Oct. 15, 1999) (unpublished).

Page 14  -  PLAINTIFFS' TRIAL MEMORANDUM

2.      Continental's Breach of Its Obligations Under the Policies.

At trial, Schnitzer will show that Continental breached its contractual duty to defend Schnitzer in multiple ways.  First, Schnitzer will show that Continental breached its duty to defend by refusing to pay the reasonable and necessary fees of the lawyers retained to defend Schnitzer.  Continental has refused (and continues to refuse to this day) to pay attorney billing rates that are reasonable and necessary for the retention of competent and skilled counsel, insisting instead that it only has to pay artificially low insurance defense rates at one of the largest and most complex Superfund sites in the United States.  As a consequence of Continental's wrongful actions, and in order to continue to receive the advice and representation of qualified counsel, Schnitzer has been compelled to pay, with its own funds, the differential between what Continental has been willing to pay and what Schnitzer must pay to defend the claims against it.  Continental has also refused, contrary to its "all sums" obligation under Oregon law, *see* ORS 465.480(3)(a), to pay the full amount of Schnitzer's defense costs, instead forcing Schnitzer to try to seek reimbursement from multiple insurers.  *See, e.g.*, Pls. Witness Testimony Disclosures (Dkt. No. 284) at Exhibits A-M.

Second, Schnitzer will show that Continental breached its duty to defend Schnitzer in the PHSS matter by failing to make reasonably prompt determinations about and payments for the reasonable and necessary fees, costs, and expenses incurred by Schnitzer and submitted to Continental for payments.  Pursuant to both Oregon law and the Policies, Continental has a duty of prompt review and payment of invoices submitted by Schnitzer to Continental.  But rather than doing so, Continental has arbitrarily refused to pay any attorneys' fees for long periods of time and has delayed payment of some defense costs from three to almost five years. Continental has continued to unreasonably delay and impede payment of amounts that even

Page 15   -   PLAINTIFFS' TRIAL MEMORANDUM

Continental and its consultants acknowledge are reasonable.  *See, e.g.*, Pls. Witness Testimony Disclosures (Dkt. No. 284) at Exhibits A-M.

Third, Schnitzer will show that Continental has wrongfully, without explanation, and arbitrarily reduced Schnitzer's reasonable and necessary defense costs.  Continental is obligated under the law to pay all reasonable and necessary defense costs, and if Continental refuses to pay such costs, it is required to identify a valid, legally sufficient basis for why any such costs allegedly are not covered.  Yet, Continental has failed to do so.  When invoices are paid, they have been paid in less than the full amount of the invoice, frequently without any explanation as to why less than the full amount of the invoice was paid.  Continental has also, for example, instituted an arbitrary and unilateral procedure by which it reduces, by two-fifths of the total, the amounts paid for consultants who are necessary to Schnitzer's defense.  These acts breach the Policies.  *See, e.g.*, Pls. Witness Testimony Disclosures (Dkt. No. 284) at Exhibits A-M.

Fourth, Schnitzer will show that Continental has wrongfully taken other arbitrary and unilateral actions to delay or avoid paying reasonable and necessary fees, costs, and expenses.  In addition to the conduct described above, Continental has breached its contractual duty to defend by:  (a) demanding that Schnitzer make payments or refunds, even though a large outstanding balance was owed to Schnitzer by Continental; (b) declining to explain what amounts Continental deems to be acceptable and reimbursable pursuant to the Policies; (c) asserting, without basis, that it has a right to recoupment or reimbursement of all defense costs already paid to Schnitzer, while at the same time acknowledging that the pending claims against Schnitzer are covered or potentially covered by the Policies; (d) taking other steps to reduce, without explanation, the amounts paid to Schnitzer; (e) contending that it can continually modify its reservation of rights to limit or deny the defense obligation that it has already assumed; and (f)

Page 16   -   PLAINTIFFS' TRIAL MEMORANDUM

refusing and opposing both outside this litigation and in this case to agree to implement a reasonable system for submission, review, and payment of defense costs. *See, e.g.,* Pls. Witness Testimony Disclosures (Dkt. No. 284) at Exhibits A-M.

      3.    <u>Damages Caused by Continental's Breach of Its Duty to Defend.</u>

      Schnitzer is entitled to recover damages caused by Continental's breach of contract. *See* Dkt. No. 279 at 14 (Pls. Proposed Jury Instruction No. 14); *see also Wilcher v. Amerititle, Inc.*, 212 Or. App. 498, 506, 157 P.3d 790 (2007) (harm suffered must be the "factual and the foreseeable consequence" of the defendant's conduct). The damages award must fairly compensate Schnitzer for Continental's breach of contract. *See* UCJI No. 65.18 (Damages-Breach of Contract).

      Schnitzer is also entitled to recover prejudgment interest at a statutory rate of nine percent per annum on "all moneys after they become due." Where "the amount of the damages and starting date of interest are ascertainable," an award of prejudgment interest is mandatory. *Wilson v. Smurfit Newsprint Corp.*, 197 Or. App. 648, 673, 107 P.3d 61 (2005); *see also Strader v. Grange Mut. Ins. Co.*, 179 Or. App. 329, 339, 39 P.3d 903 (2002) ("[I]t is well settled that, 'even though damages are not ascertainable until issues of fact have been decided [by the jury], prejudgment interest is proper.'" (citation omitted; second brackets in original)); *Hazelwood Water Dist. v. First Union Mgmt.*, 78 Or. App. 226, 230-31, 715 P.2d 498 (1986) (prejudgment interest available for *quantum meruit* recovery even though principal sum not determined until trial).[4]

---

    [4] Schnitzer anticipates providing further analysis of the appropriate procedure for addressing prejudgment interest in a forthcoming motion *in limine*.

75796046.2 0068163-00092

At trial, Schnitzer will present evidence of damages through both its damages expert, Charles Wilhoite, and Schnitzer witnesses familiar with the unpaid amounts of Schnitzer's defense costs.  Specifically, Mr. Wilhoite will testify that, as of January 10, 2014, Continental has failed to pay Schnitzer $8.6 million in outstanding defense costs.  Schnitzer's Vice President of Environmental and Public Affairs, Tom Zelenka, and if necessary, Schnitzer's Senior Technical Analyst, Harvest Schwenter, will likewise testify to the more than $8.6 million in outstanding and unpaid defense costs.  Mr. Wilhoite will also explain that, should the jury determine that local billing rates apply, then the amount of outstanding defense costs would be $4,610,000, including interest.

Schnitzer will also show, through evidence submitted by Mr. Wilhoite and relevant fact witnesses, that allowing a reasonable reimbursement period of 90 days after issuance of an invoice (60 days more than is now required by Oregon statute),[5] and based on Oregon's statutory interest rate of nine percent per annum, Schnitzer is owed hundreds of thousands of dollars in interest for reimbursements paid by Continental or other insurers in an untimely matter.  *See* Dkt. No. 280-5 (Supplemental Expert Report of Charles Wilhoite) at 4.  In addition, the amount of interest on the outstanding  unpaid defense cost obligations is in excess of $1 million.  *Id.* at 5.

**B.    Second Claim for Relief:  Declaratory Judgment.**

As its Second Claim for Relief in this action, Schnitzer requests that the Court issue a declaratory judgment declaring the rights and duties of Schnitzer under the Policies.  The Declaratory Judgment Act permits the Court to declare "the rights and other legal relations" of parties to "a case of actual controversy" within its jurisdiction.  28 U.S.C. § 2201(a).  "Any such declaration shall have the force and effect of a final judgment or decree . . . ."  *Id.*; *see also Gov't*

---

[5] *See* ORS 465.484 (codifying S.B. 814 § 6 (2013)).

*Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225-26 (9th Cir. 1998).  Here, given the ongoing nature of the parties' contractual relationship and the continuation of the underlying PHSS matter, declaratory judgment regarding the rights and obligations of the parties going forward is necessary and appropriate.  *See, e.g.*, *Hyundai Motor Am. v. Nat'l Union Fire Ins. Co.*, 600 F.3d 1099, 1104 (9th Cir. 2010) (directing district court to grant insured summary judgment in the form of a declaration that insurer owed duty to defend); *Allstate Ins. Co. v. O'Connell*, No. 10-6036-AA, 2010 U.S. Dist. LEXIS 117142, at *11 (D. Or. Nov. 2, 2010) (declaring that insurer owed insured duty to defend); *GAKK, Inc. v. Acceptance Cas. Ins. Co.*, No. CV 09-6282-MO, 2010 U.S. Dist. LEXIS 84971, at *10 (D. Or. Aug. 16, 2010) (declaring that insurer owed duty to defend).

Specifically, after entry of the jury's verdict, Schnitzer will request that the Court enter a declaratory judgment (consistent with the Court's prior rulings and the evidence described above) as follows:

> (1) Under ORS 465.480 (2012) and the Policies, Continental is jointly and severally liable to pay the full amount of Schnitzer's reasonable and necessary defense costs;

> (2) Continental is obligated to pay the fair and reasonable rates of lawyers, consultants, and others hired to defend Schnitzer. As proved by Schnitzer in this action, Bingham's actual rates are fair and reasonable rates for work performed for Schnitzer in connection with PHSS.

> (3)  Continental must pay all reasonable and necessary defense costs within a reasonable time.

> (4) Continental must make a reasonably prompt determination and payment of reasonable and necessary defense costs.  Absent unusual circumstances, reasonably prompt payment requires payment within 90 days of submission of an invoice to Continental.  Schnitzer is entitled to interest at a rate of nine percent per annum on late payments and nonpayments.

Page 19  -   PLAINTIFFS' TRIAL MEMORANDUM

The evidence at trial will show that Schnitzer is entitled to the requested declarations, substantial portions of which have already been adopted by the Court. *See* Aug. 3, 2011 Findings and Recommendations (Dkt. No. 54) at 13, *as adopted by* Opinion & Order (Dkt. No. 87).

**C.      Schnitzer's Right to Attorneys' Fees.**

Under ORS 742.061, Oregon's insurance fee shifting statute, because Continental failed to pay Schnitzer's claim for unpaid defense costs within six months of notice from Schnitzer (or ever), Schnitzer will be entitled to recover its attorneys' fees in this action if it obtains any relief at trial.

**D.      Continental's Affirmative Defenses – Waiver and Estoppel.**

At trial, Schnitzer anticipates that Continental will argue that Schnitzer either waived its right to seek payment from Continental for legal services provided by Bingham at Bingham's full rates, or is estopped from now seeking recovery of such costs.  Continental, however, will not be able to satisfy its burden of proof on these affirmative defenses because Schnitzer at all times fully reserved its rights, including the right to recover full reimbursement from Continental of all of Schnitzer's defense costs.

1.      <u>Waiver.</u>

Under Oregon law, a party raising the affirmative defense of waiver must prove an intentional relinquishment of a known right by the other party.  *E.g.*, *Schmeck v. Bogatay*, 259 Or. 188, 196, 485 P.2d 1095 (1971).  The equitable doctrines of waiver and estoppel both require some manifestation of intent or other conduct showing that a party has unequivocally relinquished its legal rights.  *Id*.  Waiver by conduct, in particular, requires that "the acts showing an intention of the party to waive are clear, unequivocal, and decisive."  *Cusick v. Meyer*, 124 Or. App. 515, 522, 863 P.2d 486 (1993).  A party does not unequivocally relinquish its right to

full payment merely by accepting payment in a sum less than the full amount owed.  *Schmeck*, 259 Or. at 196; *Kahl v. Pool*, 47 Or. App. 43, 48-49, 613 P.2d 1078 (1980) (holding that the fact that plaintiffs accepted rent payments of less than the full amount owed did not establish waiver or estoppel where there was "no evidence … that plaintiffs intended to relinquish their right to receive the full amount of the rent").  "[S]ilence or passive acquiescence is not alone sufficient to constitute an estoppel by conduct from asserting a right."  *Schmeck*, 259 Or. at 198.

Based upon these principles, when a party to an insurance contract has received defective performance under an explicit reservation of rights, there is no relinquishment of its rights.  *See, e.g.*, *Interstate Fire & Cas. Co. v. Underwriters at Lloyd's*, 899 F. Supp. 498, 500-01 (D. Or. 1995).  In *Interstate Fire & Casualty*, for example, an insurer explicitly reserved its rights to dispute coverage under an indemnity policy.  *Id*.  Subsequent negotiation of settlement on the insured's behalf and payment of a $300,000 settlement and $40,000 in defense costs did not impliedly withdraw the insurer's reservation of rights.  *Id*.  The court reasoned:  "To hold otherwise would effectively nullify the usefulness of a reservation of rights," which allows parties to move forward with partial contractual performance when they have agreed to disagree about their obligations.  *Id*. at 501; *see also W. World Ins. Co. v. Delta Prop. Mgmt*., No. 10-cv-0279, 2010 U.S. Dist. LEXIS 125296, at *11-12 (W.D. Pa. Nov. 29, 2010) ("[A]lthough [an insurer's subsequent communications] did not repeat the plain, unambiguous, and explicit reservations of rights set out in the [original letter reserving rights] … there is nothing expressed or implied in [subsequent communications] that could reasonably be construed as a rejection, repudiation, waiver, or distancing from the explicit [initial] reservation of rights.").

Here, Continental cannot prevail on its defense of waiver because, just as Continental agreed to participate in Schnitzer's defense subject to a reservation of rights to recoup defense

Page 21   -   PLAINTIFFS' TRIAL MEMORANDUM

costs and deny indemnity, Schnitzer expressly reserved its rights to challenge the conditions proposed by Continental as to payment of Bingham's invoices. *See* Pls. Tr. Ex. 0094. Schnitzer, in fact, repeatedly reserved its rights, and Continental's corporate designee conceded as much. *See* Pls. Tr. Ex. 0094 (March 10, 2004 Letter); Pls. Tr. Ex. 158 (June 6, 2008 Letter); Pls. Tr. Ex. 0232 (February 5, 2010 Letter); *see also* Pls. Tr. Ex. 2012 (Continental 30(b)(6) Dep. Tr. (T. Barriball) at 73-81). There is likewise no evidence that Schnitzer ever withdrew its express reservations of rights or otherwise waived its reserved rights. *See* Pls. Tr. Ex. 2012 (Continental 30(b)(6) Dep. Tr. (T. Barriball) at 73-81). Accordingly, Continental's affirmative defense of waiver should not be submitted to the jury. *See* Fed. R. Civ. P. 50(a).

2. Estoppel.

Schnitzer expects that Continental will also assert the duplicative defense that Schnitzer is estopped from pursuing the outstanding defense costs at issue here. To prevail on an affirmative defense of estoppel, Continental must prove that (1) Schnitzer made a false representation of fact, (2) as to which Continental did not know the truth, (3) with the intent that Continental would act upon Schnitzer's representation, and (4) that Continental reasonably acted upon that representation. *Coos County v. State*, 303 Or. 173, 181, 734 P.2d 1348 (1987). Under this doctrine, "the party seeking estoppel must demonstrate not only reliance, but a right to rely upon the representation of the estopped party. . . . Reliance is not justified where a party has knowledge . . . of the fact or representation allegedly relied upon." *Id.*; *see Rick Franklin Corp. v. State*, 207 Or. App. 183, 191-92, 140 P.3d 1136 (2006).

Accordingly, there can be no estoppel when the parties have "equal knowledge of the facts." *Coos County*, 303 Or. at 190; *Miner v. City of Vernonia*, 47 Or. App. 393, 399, 614 P.2d 1206 (1980). "'If, at the time when he acted, [a] party had knowledge of the truth, or had the

Page 22  -  PLAINTIFFS' TRIAL MEMORANDUM

means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment.'" *Coos County*, 303 Or. at 189 (quoting 3 John N. Pomeroy, *A Treatise on Equity Jurisprudence* 219, § 810 (5th ed. 1941)).

Indeed, courts refuse to find estoppel when one party notifies the other that it intends to reserve its rights. *Schmeck*, 259 Or. at 199 (no estoppel where party gave notice of intent to assert rights under lease); *Herman v. Valley Ins. Co*., 145 Or. App. 124, 134, 928 P.2d 985 (1996) (finding no estoppel where "[t]he letters that [insurer] sent to plaintiff in the months before the limitations period passed warned her that [insurer] would not waive any of its rights under the policy and that no waiver or estoppel was intended or should be implied"); *see also Kahl*, 47 Or. App. at 48-49 (holding that the fact that plaintiffs accepted rent payments less than the full amount owed did not establish estoppel where there was "no evidence . . . that plaintiffs intended to relinquish their right to receive the full amount of the rent"). Reliance is simply not reasonable when it is contrary to a statement that was made in writing. *Duncan v. Office Depot*, 973 F. Supp. 1171, 1176 (D. Or. 1997); *Rick Franklin Corp*., 207 Or. App. at 191-92. Based upon these principles, when a party to an insurance contract has received defective performance under an explicit reservation of rights, there is no estoppel. *See, e.g*., *Interstate Fire & Cas.*, 899 F. Supp. at 500-01.

Thus, in light of Schnitzer's reservation of rights, Continental's estoppel defense fails for the same reasons as its waiver defense and should not be submitted to the jury. *See* discussion *supra* at Section III.D.1. In addition, Continental's estoppel defense fails because Continental has no evidence that it changed its position or otherwise reasonably relied on any representation by Schnitzer. Continental was legally obligated to pay for Schnitzer's defense and paid in part.

Page 23   -   PLAINTIFFS' TRIAL MEMORANDUM

*See Schmeck*, 259 Or. at 198 (no estoppel where no proof that party was "misled into doing or refraining from doing something that he would not otherwise have done or refrained from doing"); *Mittleman Props. v. Bank of Cal*., 131 Or. App. 666, 674 n.3, 886 P.2d 1061 (1994) (stating that "equitable estoppel protects only those who materially change their position in reliance upon another's acts or representations" and holding that there was no estoppel where plaintiff merely did that "which it was legally obligated to do under the terms of the lease"); *Pac. First Bank v. New Morgan Park Corp*., 122 Or. App. 401, 408, 857 P.2d 895 (1993) (no estoppel where plaintiff "did not change its position in reliance on defendant's statements, and had no right to do so").

Finally, the private cost-sharing agreement entered into between Schnitzer's insurers cannot avoid the contractual obligations Continental has to Schnitzer under the Policies. The Policies that Continental issued to Schnitzer—the actual two-party agreements binding Schnitzer and Continental—provide expressly that their terms cannot "be waived or changed, except by endorsement issued to form part of this policy." Pls. Tr. Ex. 0343 (Policy at Conditions ¶ 8 ("Changes")). The cost-sharing agreement between Schnitzer's insurers—to which Schnitzer is not a party—is not an "endorsement issued to form a part of" the Policies. Nor did Schnitzer ever accept or ratify the cost-sharing agreement, through words or conduct. Instead, Schnitzer reserved rights. The insurers' cost-sharing agreement (which provides that there are no third-party beneficiaries) cannot alter the "all sums" obligation Continental has under the Policies, which obligates Continental to pay all—not some proportional share—of Schnitzer's defense obligations. *See* ORS 465.480(3)(a).

Page 24   -   PLAINTIFFS' TRIAL MEMORANDUM

**E.      Continental's Other "Defenses" – Laches, Lack of Cooperation, and Voluntary Payment.**

Based on Continental's proposed jury instructions, Schnitzer also anticipates that Continental will raise three additional "defenses": (1) laches, (2) breach of the duty of cooperation, and (3) voluntary payments by Schnitzer. For the reasons explained below, each of these "defenses" fails.

First, laches is an equitable defense to an equitable claim. *See Frasier v. Nolan*, 195 Or. App. 211, 215-16, 98 P.3d 392 (2004) ("A claim *in equity* is subject to the doctrine of laches." (emphasis added)); *Principal Life Ins. Co. v. Robinson*, No. 00-CV-1345-BR, 2006 U.S. Dist. LEXIS 11576, at *21 (D. Or. Feb. 27, 2006) ("Under Oregon law, laches will bar a party from asserting an *equitable* claim" when the required elements are present (emphasis added; citation omitted)). Therefore, it may not be presented to the jury as a defense to Schnitzer's *legal* claim for breach of contract. *Harley-Davidson Credit Corp. v. Turudic*, No. 3:11-cv-1317-HZ, 2012 U.S. Dist. LEXIS 114477, at *29 (D. Or. Aug. 10, 2012) (affirmative defense of laches fails because "[p]laintiff's breach of contract action sounds in law, not equity").[6]

Second, in its proposed jury instructions, Continental also asserted, for the first time, that Schnitzer is barred from recovering damages because it has failed to cooperate with Continental. Because that affirmative defense was not raised in the pleadings, the jury should not consider it. *See Bailey v. Universal Underwriters Ins. Co.*, 258 Or. 201, 225, 474 P.2d 746 (1970) ("Since the insurer is the party who is seeking to avoid the burdens of the insurance contract by alleging

---

[6] Because laches is not an applicable defense, its elements are irrelevant. Nonetheless, the elements of laches are that (1) a party delays asserting a claim for an unreasonable length of time, (2) with full knowledge of all relevant facts (laches starts to run when that knowledge exists, (3) resulting in substantial prejudice such that it would be inequitable for the court to grant relief. *See Stephan v. Equitable Sav. & Loan Ass'n*, 268 Or. 544, 569, 522 P.2d 478 (1974). It is unclear how Continental intends to assert that laches applied to this action, and Continental has no evidence of conduct by Schnitzer to support a finding of laches.

Page 25   -   PLAINTIFFS' TRIAL MEMORANDUM

the defense of non-cooperation, it follows that the insurer has the burden to establish all of the elements of that defense[.]").  In any event, to prevail on that affirmative defense, Continental would need to prove that (1) Continental fulfilled its duty to "exercise reasonable diligence and good faith," (2) Schnitzer willfully failed to cooperate, and (3) Schnitzer's willful failure to cooperate prejudiced Continental, *i.e.*, caused a substantial detriment to Continental's ability to fulfill its defense obligations.  *Id.*; *Assurance Co. of Am. v. MDF Framing, Inc.*, No. CV 06-169-MO, 2008 WL 361289, at *5 (D. Or. Feb. 7, 2008).  The evidence at trial will not show any failures to cooperate by Schnitzer.  In fact, the evidence will show precisely the opposite: Schnitzer submitted invoices timely, provided full information to Continental, and made other affirmative efforts to streamline the payment process.  In response, Continental failed to act in good faith or to exercise reasonable diligence by stonewalling Schnitzer's attempts at communications, failing to promptly process and pay invoices, and making unilateral and unexplained reductions to invoices for reasonable and necessary defense costs submitted by Schnitzer.  Continental's own policy breaches negate this defense.  *See Crain v. Siegel*, 151 Or. App. 567, 573, 950 P.2d 382 (1997) (material breach discharges other party's duty of performance).

Lastly, Schnitzer anticipates that Continental will assert that Schnitzer's payments to its lawyers and consultants may not be recovered because Schnitzer "willfully breached" its obligation not to make voluntary payments to the prejudice of Schnitzer.  But that "defense" is inconsistent with Oregon law, which expressly provides that "[i]nsurance coverage for any reasonable and necessary fees, costs and expenses" incurred as the result of a written request of ODEQ or EPA "shall not be denied the insured on the ground that such expenses constitute voluntary payments by the insured."  ORS 465.480(2)(c).  Moreover, no Oregon law supports

that the "voluntary payment" defense (to the extent it exists under Oregon law) would apply in the context of the duty to defend and pay defense costs, as opposed to the duty to pay a judgment or a settlement. *See Charter Oak Fire Ins. Co. v. Interstate Mech., Inc.*, No. 3:10-cv-01505-PK, 2013 U.S. Dist. LEXIS 102725, at *10 (D. Or. July 23, 2013) (applying principle in context of settlement with third party).  Accordingly, it would be improper for the jury to consider this "defense."

## IV.  CONCLUSION

Schnitzer will show at trial that Continental has breached its duty under the Policies to defend Schnitzer, and that as a result of that breach, Continental is liable to Schnitzer for its damages, including prejudgment interest.  Schnitzer will also demonstrate that it is entitled to entry of a declaratory judgment in its favor as well as its attorneys' fees herein under ORS 742.061.

DATED:  March 14, 2014.

STOEL RIVES LLP


*/s/  Scott J. Kaplan*
SCOTT J. KAPLAN
OSB No. 913350
Telephone:  (503) 224-3380

Attorneys for Plaintiffs

Page 27   -   PLAINTIFFS' TRIAL MEMORANDUM