Lawrence Gottlieb, OSB #070869
lgottlieb@bpmlaw.com
Brett Sommermeyer, OSB #964326
bsommermeyer@bpmlaw.com
Lisa C. Neal, *pro hac vice*
lneal@bpmlaw.com
Betts, Patterson & Mines, P.S.
701 Pike Street, Suite 1400
Seattle, WA  98101-3927
Telephone:  206-292-9988
Facsimile:  206-343-7053

Attorneys for Defendants
Continental Casualty Company and
Transportation Insurance Company

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| SCHNITZER STEEL INDUSTRIES, INC., an Oregon corporation; and MMGL CORP., a Washington corporation,<br><br>          Plaintiffs,<br><br>vs.<br><br>CONTINENTAL CASUALTY COMPANY, an Illinois corporation; and TRANSPORTATION INSURANCE COMPANY, an Illinois corporation,<br><br>          Defendants. | NO. 3:10-cv-01174-MO<br><br>DEFENDANTS' TRIAL MEMORANDUM |

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | STATEMENT OF FACTS | 3 |
| | A. Underlying Action and Tender to Insurers | 3 |
| | B. Coverage Action | 7 |
| |    1. Motion for Partial Judgment on the Pleadings | 7 |
| |    2. Cross Motions for Summary Judgment | 8 |
| |    3. SB 814 and Motions *In Limine* | 10 |
| III. | CLAIMS AND DEFENSES | 10 |
| | A. Schnitzer Does Not Have the Right to Unilaterally Select Defense Counsel and Demand Full, Retroactive Attorney Fee Reimbursement | 10 |
| | B. Schnitzer's Attorney Fee Claim is Subject to the Rate Cap Agreement | 13 |
| |    1. Schnitzer Did Not Have the Right it Purported to Reserve in its March 2004 Letter | 13 |
| |    2. At Best, Schnitzer Reserved a Limited Right to Negotiate Rate Increases as Required to Retain Competent Defense Counsel | 15 |
| | C. Schnitzer is Estopped from Asserting a Claim for Full, Retroactive Reimbursement of its Defense Expenses | 17 |
| |    1. Estoppel Regarding Attorney Fee Reimbursement | 18 |
| |    2. Estoppel Regarding 70% Arrangement | 21 |
| | D. Schnitzer Waived Any Claim for Full, Retroactive Reimbursement of its Defense Expenses | 21 |
| |    1. Waiver Regarding Attorney Fee Reimbursement | 22 |
| |    2. Waiver Regarding 70% Arrangement | 23 |
| | E. Schnitzer's Attorney Fee Claim is Limited to Local, Portland Rates | 23 |

F.   Schnitzer Failed to Mitigate a Portion of Its Claimed Defense Expenses      27

G.   For Payments to be Reasonably Prompt, They Must Only be
     Reasonably Timely Under the Circumstances                                   28

H.   Schnitzer Breached Its Obligations Under the Policies                        29

     1.   Duty to Cooperate                                                        29

     2.   Duty Not to Make Voluntary Payments                                      31

I.   Laches                                                                        31

J.   Continental Must Only Pay Reasonable and Necessary Defense
     Expenses                                                                      32

K.   Many Legal and Factual Issues Must be Resolved Before the Jury
     Can Determine Whether Schnitzer is Entitled to Prejudgment Interest           34

# I.    INTRODUCTION

Continental Casualty Company and Transportation Insurance Company (collectively "Continental") have paid more than $6,350,000 of the over $8,500,000 Plaintiffs Schnitzer Steel Industries, Inc. and Schnitzer Investment Corp. (collectively "Schnitzer")concede have been paid by its insurers for its ongoing defense in the underlying Portland Harbor matter.  In accordance with their longstanding agreement, Continental has reimbursed Schnitzer for attorney fees and costs consistent with rates charged by qualified Portland-area attorneys, but Schnitzer seeks more than $8,000,000 in additional fees if it can collect on its claim for out-of-forum rates, or up to approximately $3,500,000 for in-forum rates.  Schnitzer rejected representation by qualified Portland counsel in favor of Bingham McCutchen, an out-of-state law firm now charging more than $900 an hour for some partners, including Schnitzer's counsel James Dragna.  Although Bingham's rates exceed those of qualified Portland attorneys as much as four-fold, Schnitzer insists it is entitled to the difference between Bingham's rates and prevailing Portland rates.

There is simply no legal or factual basis for Schnitzer's demand.  Schnitzer certainly has the option to retain and pay a law firm that charges $375 an hour for paralegal work. However, under Continental's insurance policies and Oregon law, Schnitzer is not entitled to reimbursement at those rates.

Other demands built around allegations of delayed payments or unwieldy billing guidelines are peripheral in terms of their impact, if any, on Schnitzer's economic claims in the dispute.  They should not shift the focus away from the fact that Schnitzer has accepted payment at the agreed upon rates and is not entitled to reimbursement for attorney fees far in excess of those earned by lawyers in the Portland community.

Finally, Schnitzer claims that Oregon law entitles it to retroactively seek 100% of its alleged defense expenses from Continental instead of the 70% share Continental has

contributed for more than ten years. Nevertheless, this claim is contrary to Schnitzer's course of dealing with all of the insurers who have contributed to Schnitzer's defense since at least 2002, and prejudicial to Continental given the manner in which Schnitzer has billed its insurers for alleged defense expenses for so many years.

In the following trial memorandum, Continental describes the relevant facts and maps out its claims and defenses. Continental has attempted to not only describe its version of the case for trial, but also to highlight certain significant legal issues that it intends to submit to the Court for decision and which should not be determined by the jury.

## II.    STATEMENT OF FACTS

### A.    Underlying Action and Tender to Insurers

Schnitzer's claims arise from alleged contamination at certain upland sites in the vicinity of the Portland Harbor with which Schnitzer is or has been associated as an owner and/or operator and also from its potential liability in connection with the Portland Harbor. In 2001, Continental agreed to defend Schnitzer with respect to the Portland Harbor matter, subject to a full reservation of rights. Insurance Company of North America ("INA") and Wausau Insurance Company ("Wausau") also agreed to provide Schnitzer with a defense under a reservation of rights and entered into a cost sharing agreement with Continental allocating defense costs among the carriers as follows: Continental (70%); INA (10%): and Wausau (20%).

When Continental accepted the defense, Schnitzer was employing Stoel Rives as defense counsel. In 2003, Continental and Schnitzer came to an agreement that certain conflicts of interest prevented Stoel Rives from continuing to represent Schnitzer in the Portland Harbor matter. In January 2003, Continental proposed two highly qualified Portland attorneys, Bill Earle and Skip McKallip, as alternative, potential candidates to take over

Schnitzer's defense.

Schnitzer responded to Continental's request for replacement defense counsel by undertaking a very superficial review of local, Portland environmental attorneys. This review included a cursory consideration of Messrs. Earle and McKallip, which consisted of interviews each lasting about 45 minutes to an hour. Schnitzer did not interview any other Portland counsel, but claims that its former in-house counsel and Vice President conducted a "summary" review of potential candidate firms. They limited their review to looking up firms already representing Potentially Responsible Parties ("PRPs") in the Portland Harbor matter and perusing the bar directory to identify firms with the appropriate "size and depth." Following its limited "review" process, Schnitzer concluded that there were no competent or available local counsel. Schnitzer next turned its attention to a few select firms in Seattle and San Francisco before allegedly deciding to retain a multi-national firm in Los Angeles, Bingham McCutchen.

On July 24, 2003, Schnitzer informed Continental that it was rejecting Continental's selected local defense counsel in favor of Bingham. At that time, the particular Bingham attorney selected to represent Schnitzer, Jim Dragna, charged $475/hour for his services. Although Schnitzer claims that it investigated other potential counsel prior to retaining Bingham, billing records provided during expert discovery reveal that Schnitzer had actually retained Bingham in or about 2002 – before it even began its limited defense counsel "review" process. Thus, Bingham's selection was a forgone conclusion before the pretextual "review" process even began.

In correspondence dated November 10, 2003, Continental responded to Schnitzer's request to retain the Bingham firm. Continental indicated that it would agree to the request only if Schnitzer complied with "certain conditions." Continental, however, cautioned that if Schnitzer was unwilling or unable to comply with those conditions, then it would assign the

defense to a qualified Portland law firm of Continental's choosing, consistent with Continental's rights under the policies. Among the conditions was an hourly rate restriction:

> [T]he rates paid by CNA for attorneys' fees **will be limited to rates that would be charged by competent local counsel**. These rates are $175 per hour for partners and $150 per hour for associates. In addition, fees for other firm employees, such as legal assistants, will be reimbursed at the Portland, Oregon market rate.

In its November 10, 2003, letter, Continental also referred Schnitzer to policy language delegating control over the defense to Continental and requiring Schnitzer to cooperate in that defense and not to, except at its own expense, make any voluntary payments, assume any obligations, or incur any expense. Without waiving its right to select competent local defense counsel, Continental agreed to the Bingham firm, subject to a full reservation of rights.

On March 10, 2004, Schnitzer wrote to Continental agreeing to the conditions set forth in the November 10, 2003, letter. Specifically, Schnitzer advised Continental:

> Of paramount importance to us is that Schnitzer be represented by competent counsel who will enable us to achieve the most favorable results in what we anticipate will be an arduous process. Therefore, in order to move forward, Schnitzer agrees to the conditions set forth in your letter of November 10, 2003, with regard to the engagement of Bingham McCutchen, subject to their reservation of all rights available under applicable law to challenge your clients' decision, as the counsel proposed by your clients do not meet the standards of competent counsel.

Accordingly, the plain language of the March 10, 2004 letter expressly states Schnitzer's agreement to Continental' conditions, subject only to Schnitzer's purported reservation of rights to challenge Continental's decision to pay less than Bingham's full rate because that decision was allegedly predicated upon the selection of incompetent counsel in the local forum.

The parties' performance over the next few years only served to confirm, and reaffirm, the existence of an agreement between Continental and Schnitzer on rates. For example,

Page 5 - DEFENDANTS' TRIAL
MEMORANDUM
681249.1/031414 1844/80360002

Schnitzer established an internal process to ensure that the amounts billed to Continental would be limited to the specified rates, rather than the rates appearing on Bingham invoices. Bingham directed invoices to Schnitzer based on the full rates charged for each timekeeper, which ranged from $275 to $475/hour for attorneys. Schnitzer, in turn, forwarded those invoices to Continental for payment with correspondence stating that the agreed rates, which were also corrected in handwriting on the invoices by Schnitzer to $175/hour were to be substituted for those otherwise appearing on Bingham invoices. Schnitzer's internal processes institutionalized the rate agreement between the parties and ensured that Continental did not fund Schnitzer's defense at Bingham's full, invoiced rates.

Schnitzer operated within the parameters of the parties' agreement without protest until January 2007, when it requested a rate increase. After a series of negotiations, on February 29, 2008, Continental informed Schnitzer that, beginning with the November 2007 invoices, Continental would be reimbursing defense counsel fees for their 70% share of the appropriate attorney fees under the following rate structure: $260/partner; $240/associate; $100/paralegal. As before, Schnitzer forwarded Bingham's invoices to the insurers with a cover sheet indicating that the newly agreed rates were to be substituted for hourly rates appearing on Bingham invoices[1]

---

[1] Continental rejected Schnitzer's request to increase the fees to $300/hour for partners and $275/hour for associates. Continental did not agree that the current rates paid to Schnitzer were below market for experienced environmental litigation counsel in the Portland market – and Schnitzer did not respond with any evidence to the contrary. Continental further noted that an increase was unacceptable given the "current economic climate."

**B.      Coverage Action**

Schnitzer filed the present action on September 28, 2010.  The Complaint seeks damages for breach of contract in the amount of approximately $8,000,000.  A large percentage of Schnitzer's requested relief concerns attorney fees for its independently retained defense counsel.  The attorney fee claim primarily consists of three components: (1) the unpaid differential between defense counsel's excessive, out-of-forum rates and the reduced rates that Continental (as well as other non-defendant insurers, INA and Wausau) conditionally agreed to pay[2]; (2) amounts withheld by Continental (as well as other non-defendant insurers, INA and Wausau) for questionable billing entries; and (3) prejudgment interest on allegedly unpaid attorney fees.

**1.      Motion for Partial Judgment on the Pleadings**

On April 15, 2011, Schnitzer filed a Motion for Partial Judgment on the Pleadings. Among the relief requested in that motion, Schnitzer sought declarations that Continental (1) was responsible for the "full amount" of Schnitzer's reasonable and necessary defense costs and (2) must "make a reasonably prompt determination and payment of the reasonable and necessary fees, costs and expenses incurred by Schnitzer.  In connection with the second request, Schnitzer asked the Court to impose a "reasonable system for the prompt submission review and payment of invoices submitted by Schnitzer [to Continental]."  While deciding to

---

[2] Continental considers Bingham's retention of contract attorneys to perform a large percentage of the work, including responding to the Environmental Protection Agency's 104(e) requests, to be included within the fee differential issue.  Under the parties' agreement, Schnitzer is only entitled to recover the lower rates that would have been paid for contract attorneys retained in the Portland market.  The retention of contract attorneys is also relevant to Continental' alternative argument that the forum rule applies because the use of contract lawyers undercuts Schnitzer's claim that it was necessary to employ sophisticated attorneys only available in Los Angeles to perform the work.

make the requested declarations, Magistrate Judge Papak issued two important caveats to these declarations. First, he found the existence of an "arrangement" under which Continental was not required to pay the "full amount" of Schnitzer's defense costs, but was rather only obliged to contribute a percentage with Schnitzer's other insurers. *See* August 3, 2011 Findings, Recommendations, Opinion, and Order ("August 2011 F&R") (Docket # 54), at 13. Second, the magistrate declined to impose a system for payment and further found that there was no particular rule governing whether a payment was "reasonably prompt." *Id.* at 15.

## 2. Cross Motions for Summary Judgment

In late 2011, the parties filed cross motions for partial summary judgment on various claims. In its briefing, Continental requested that the court dismiss Schnitzer's claim for full, retroactive reimbursement of defense attorney fees, find that (based upon a long-standing insurer cost sharing arrangement and Schnitzer's course of conduct in billing each insurer by the agreed to shares) Schnitzer could not seek more than a 70% share of defense expenses from Continental, and rule that Schnitzer was not entitled to prejudgment interest on its claims. With respect to Schnitzer's attorney fee claim, Continental asserted that it was entitled to dismissal on three primary, alternative grounds: (1) the parties entered into an enforceable agreement concerning attorney fee rates;[3] (2) in the absence of such an agreement, Schnitzer waived any right to now collect, or should be estopped from seeking, retroactive reimbursement of attorney fees at full rates; or (3) the "forum rule" barred Schnitzer's claim for collection of attorney fees

_____

[3] Continental argued that it agreed to forgo its absolute right to select defense counsel, as bestowed by the express language of the insurance policies, in return for Schnitzer's promise to accept reimbursement for its defense attorney fees at the rates selected by Continental. In response, Schnitzer contended that the parties never reached an agreement regarding defense attorney fee rates. That contention rests solely on Schnitzer's claim that it had an unfettered right to independent counsel.

at the exorbitant rates charged by its independently selected, Los Angeles defense counsel at Bingham. In its briefing, Schnitzer sought the dismissal of Continental's affirmative defenses of waiver and estoppel.

In March 2012, Magistrate Judge Papak issued his extensive rulings making four principal findings. First, the magistrate dismissed Continental's waiver and estoppel defenses as to Schnitzer's attorney fee rate claim. *See* March 9, 2012 Findings and Recommendations ("March 2012 F&R"),at 4. Second, he found the existence of an agreement concerning rates but ruled that Schnitzer effectively reserved a right to later disregard the agreement and seek retroactive reimbursement of the attorney fees at full rates. *Id.* at 28. In fact, the magistrate specifically found that the reservation was part of the agreement. *Id.* Although upholding Schnitzer's claimed reservation, he declined to rule whether Schnitzer actually had the purported right to reserve. *Id.* at 26. Third, he recognized the applicability of the forum rule but concluded that questions of fact precluded a ruling as to whether Schnitzer was entitled to invoke the narrow exception to that rule –permitting the retention of counsel outside the forum. *Id.* at 32-34.[4] Fourth, the magistrate found that it was premature to decide whether Schnitzer's damages, and the dates from which to calculate any such damages, were "ascertainable" for purposes of prejudgment interest. *Id.* at 36.

Continental filed objections to several of Magistrate Judge Papak's findings, including (1) his determination that an enforceable agreement could exist despite Schnitzer's purported reservation, which effectively provided it with the opportunity to unilaterally cancel the

---

[4] The magistrate actually crafted a variation of the traditional "forum rule." As discussed more particularly below, he adopted a presumption for local rates, but permitted Schnitzer to overcome that presumption by proving that (1) there were no available, competent local counsel and (2) there were no available, competent non-local counsel willing to work at local rates. *See* March 2012 F&R, at 33.

Page 9 - DEFENDANTS' TRIAL
MEMORANDUM
681249.1/031414 1844/80360002

agreement and retroactively seek Bingham's full rates and (2) his dismissal of Continental's waiver and estoppel defenses. In September 2012, the Court issued its ruling reinstating Continental's waiver and estoppel defenses but otherwise adopting the magistrate's remaining findings, including his forum rule standards. *See* September 5, 2012 Opinion and Order (Docket # 181), at 2.

### 3.    SB 814 and Motions *In Limine*

In June 2013, the Oregon legislature passed Senate Bill 814 ("SB 814"), which establishes rules and rates regarding independent counsel and, among other things, imposes short deadlines regarding the payment of defense costs. Schnitzer's counsel proposed that the parties file motions *in limine* concerning the effect, if any, of SB 814 on the defense counsel rate issue. On December 17, 2013, the Court ruled that SB 814 did not apply retroactively to defense counsel fees. *See* December 17, 2013 Opinion and Order ("December 2013 Order") (Docket # 254), at 5.[5] The Court further ruled that Bingham is not Schnitzer's independent counsel, thus making SB 814 inapplicable to fees incurred after passage of the bill. Finally, the Court reiterated that it had previously adopted Magistrate Judge Papak's "forum rule," thereby affirming the existence of a strong presumption that reasonable attorney fee rates should be determined according to local forum rates.

## III.    CLAIMS AND DEFENSES

### A.    Schnitzer Does Not Have the Right To Unilaterally Select Defense Counsel and Demand Full, Retroactive Attorney Fee Reimbursement

A key issue that remains partially unresolved in this case is the purely legal question of whether Schnitzer has a right to unilaterally select defense counsel, agree to pay the high hourly

---

[5] Even if SB 814 had been found to apply, Section 7 of the act incorporates the forum rule, thus the standards articulated in Section 7 as to out-of-forum counsel would be, in any case, interpreted in accord with "forum rule" case law.

rates of that counsel without its insurer's consent, and then many years later seek full reimbursement of those fees from its insurer. Magistrate Judge Papak declined to reach this legal issue on summary judgment – finding that it was unnecessary to his decision. However, at several points in his rulings, he did signal the importance of this issue to the ultimate resolution of the case:

- *[O]n the arguendo assumption that Schnitzer never had the right* to seek compensation for legal services in connection with its defense in the Portland Harbor matter at an hourly rate in excess of the imposed rate caps) while *defendants could be expected ultimately to prevail as to the question of Schnitzer's right to avoid the imposed rate caps*, they could not do so on grounds of waiver. March 2012 F&R, at 20.

- *If defendants' theory that Schnitzer has never had a reservable right* to challenge the imposed rate caps is correct, *defendants might ultimately prevail as to the applicable components of Schnitzer's claims for money damages*, but would not do so on grounds of estoppel. *Id.* at 23.

- *While the court may have occasion to determine whether Schnitzer had any ... right [to hire defense counsel of its own choosing] in determining the merits of Schnitzer's breach of contract claim*, in the absence of any claim for declaratory judgment as to the "asserted" right, Schnitzer's position regarding that right is not a "claim" potentially subject to dismissal by this court. *Id.* at 26.

Magistrate Judge Papak's observations clearly indicate that, while he found this right to be unnecessary to his rulings on the narrow issues before him on summary judgment, he was leaving this legal issue for Continental to bring up again in the future. This "right to counsel" issue is, notably, a legal one that must not be decided by the jury.

Prior to passage of SB 814, an insured did not have a right to retain independent counsel. More specifically, unlike some jurisdictions, no Oregon court has found that an insurer's reservation of rights defense creates a conflict of interest with the insured such that the insured is entitled to appoint independent counsel at the insurer's expense. Rather, the Oregon Supreme Court has held, in fact, that no such conflict of interest exists in the insurance defense context. *See Ferguson v. Birmingham Fire Ins. Co.*, 254 Or. 496, 490 P.2d 342 (1969).

With the passage of SB 814, an insured now has the right to independent counsel, but only under specified circumstances – including a defense under a reservation of rights. However, even this limited, new right is not predicated upon a conflict of interest. Moreover, the Court has already ruled that SB 814's independent counsel provisions are wholly inapplicable to this case. This ruling is critical here because, absent a retroactive right to independent counsel under SB 814, Schnitzer does not have any conceivable basis upon which to recover Bingham's fees at the full rates charged since Schnitzer first unilaterally retained that firm as defense counsel. Furthermore, the Court's additional finding that Bingham is not Schnitzer's independent counsel deprives Schnitzer of any potential right to demand that Continental pay Bingham's full rates going forward.

The Court's recent SB 814 rulings in combination with the absence of a right to independent counsel under Oregon common law, leave the parties squarely within the hypothetical situations contemplated by Magistrate Judge Papak in the above-quoted portions of his summary judgment findings. Stated more particularly, Schnitzer does not have a right to "defense counsel of its own choosing" or, therefore, the derivative right to recover fees for defense counsel over the rate caps imposed by Continental. As a consequence, ***Schnitzer does not have a claim for breach of contract*** based on Continental's refusal to reimburse Schnitzer for Bingham's full, exorbitant rates – rates that Schnitzer has voluntarily allowed to steadily escalate over the years in apparent anticipation that its insurers would foot the bill. Additionally, even assuming *arguendo* that Schnitzer had its asserted right to independent counsel, Continental's disagreement over the precise amount of fees it must pay (or over selection of defense counsel) is not a breach of the duty to defend. *See Am. Motorists Ins. Co. v. Trane Co.*, 544 F. Supp. 669, 673 (W.D. Wis. 1982) aff'd 718 F.2d 842 (7th Cir. 1983) (holding that a breach of the duty to defend takes place where an insurer refuses to defend, rather than attempting to pay the reasonable and necessary expenses of defense).

**B.    Schnitzer's Attorney Fee Claim Is Subject To the Rate Cap Agreement**

In light of this Court's ruling concerning SB 814, Continental anticipates requesting that the Court now revisit the issue of whether the 2004 rate cap agreement applies to Schnitzer's claims for retroactive reimbursement of Bingham's full rates. As noted above, that ruling should permit the Court to find as a matter of law that Schnitzer never had a right to dictate the selection and payment of defense counsel. While this finding alone should defeat Schnitzer's breach of contract claim premised on Continental's decision to limit rates, the rate cap agreement provides a further basis for deciding that Schnitzer cannot recover for this alleged breach of contract.

**1.    Schnitzer did not have the right it purported to reserve in its March 2004 letter**

In his summary judgment rulings, Magistrate Judge Papak derived much of his reasoning for dismissing Continental's waiver and estoppel claims from the rationale for his separate finding that the fee cap agreement required dismissal of Schnitzer's attorney fee-based breach of contract claim. *See* March 2012 F&R, at 27. However, this Court reversed the magistrate's waiver and estoppel rulings, thus calling into question the applicability of his similar reasoning regarding the fee cap agreement. His findings concerning the scope of Schnitzer's alleged reservation are of particular importance to his rate cap agreement ruling because the magistrate found that Continental "proceeded as though in acquiescence to Schnitzer's reservation" of "all rights under applicable law." *Id.* at 29. However, if Schnitzer did not possess the asserted legal right upon which its reservation was allegedly based, then it cannot rely upon this purported reservation in defeating Continental's rate caps. *See National Sur. Corp. v. Immunex Corp.*, 162 Wash.App. 762, 776-777, 256 P.3d 439, 446 - 447 (2011) (holding that insurer could not reserve a right that it did not have under the policy).

The Court can reach this conclusion as a matter law, without consideration of any issues of fact, based on the simple proposition that a party cannot reserve a right that it does not actually possess.  Without that right, Schnitzer has no potential basis upon which to seek recoupment of the differential between the full and discounted fees.  The claimed right was never a term of the fee cap agreement because Schnitzer did not have the right "under applicable law" to unilaterally hire Bingham and require its insurer to pay Bingham's full rates.  In any case, the reservation of such a right, which gives Schnitzer the exclusive ability to undo the entire agreement at a later date, deprives the agreement of any consideration and, thereby, invalidates the agreement.  *See, e.g., Local 3-7, Intern. Woodworkers of America v. DAW Forest Products Co.*, 833 F.2d 789, 795-796 (9th Cir. 1987) (Or. law).  Schnitzer is, thus, left with the remaining terms of the agreement, which includes Continental's rate cap.

Magistrate Judge Papak also predicated his breach of contract ruling upon the finding that "Schnitzer does not assert its right to select its own counsel among its claims against [Continental]." *See* March 2012 F&R, at 26.  Nevertheless, even to the extent there was any question that Schnitzer based its breach of contract claim upon that alleged right, Schnitzer has since removed all doubt in its proposed jury instructions.  Specifically, Schnitzer requests an instruction that an insurer's reservation of rights to recoupment or to deny coverage permits the insured to "protect its interests by acting as though it might be uninsured for defense costs" or "totally uninsured."  Aside from the fact that this principal has only been applied in conflict of interest states (which Oregon is not), the proposed instruction demonstrates Schnitzer's primary reliance upon the continued assertion that it has the right to unilaterally select defense counsel and force its insurer to reimburse it at whatever rate defense counsel requires Schnitzer to accept.  Thus, absent that right, Schnitzer does not have even a potential breach of contract claim related to attorney fee rates.

**2.      At best, Schnitzer reserved a limited right to negotiate rate increases as required to retain competent defense counsel**

In his now overruled findings supporting dismissal of Continental's estoppel and waiver defenses, Magistrate Judge Papak broadly interpreted Schnitzer's March 2004 reservation as concerning an alleged right to "seek compensation for legal services" for its defense "in excess of the applicable imposed rate caps." *Id.* at 21.  He then relied on his finding of this "express reservation" in his breach of contract ruling. *Id.* at 28.  In addition to (as discussed above) considering the implications of the fact that Schnitzer lacked the asserted right to reserve, the plain language of reservation itself, as viewed in the context of the agreement as a whole, should be construed more narrowly.

The scope of the reservation can be best understood by examining the language of the letters that form the basis of the rate agreement.  Looking first at the terms of the offer, Continental stated in its November 10, 2003, letter that the attorney fee rates would " be limited to rates that would be charged by competent local counsel."  Continental also stated that such rates were "$175 per hour for partners and $150 per hour for associates."  Thus, Continental expressly linked rates with "competency" – stating that competent counsel were available in the current market at the rate of $175/hour, and, in fact, recommending specific, competent counsel.  In its March 10, 2004, acceptance letter, Schnitzer responded directly to Continental's assertion that competent counsel were available at the proposed rates.  Schnitzer did so by emphasizing the importance of retaining competent counsel and attempting to reserve a right to challenge Defendants' decision to pay $175/hour on the basis that this rate was insufficient to hire competent counsel.

Schnitzer's purported reservation can, thus, be harmonized with the language of the contract as a whole by interpreting it as Schnitzer's attempt *to reserve a right to seek higher rates in the future upon proof that a rate increase was required to retain competent counsel*.

Interpreting the reservation in this manner also avoids placing Continental at the "mercy" of Schnitzer's claimed (but unexpressed) reserved right to unilaterally rescind the agreement. Unlike Schnitzer's unreasonable interpretation of its reservation, Continental's construction is consistent with the plain meaning of the 2003 and 2004 correspondence and preserves consideration for the agreement.

      The reasonableness of Continental's position is further highlighted by the fact that it would not have been rational for Continental to give up its right to appoint counsel if it had understood Schnitzer to be reserving a broad right to retroactive reimbursement of the fee differential. There would have been no degree of reciprocity in such an arrangement because Continental could not reserve a right to retroactively appoint defense counsel. Thus, to accept Schnitzer's claim that it was reserving a retroactive reimbursement right would also presume that Schnitzer expected Continental to act irrationally in permanently giving up the right to appoint defense counsel.

      Continental's interpretation of the reservation is consistent with the plain meaning of the specific language employed in the rate agreement and should be upheld as a matter of law. Notably in this regard, the Court must initially determine if the language of the reservation is ambiguous. *Williams v. RJ Reynolds Tobacco Co.*, 351 Or. 368, 379, 271 P.3d 103, 109 (2011). The reservation only becomes a jury issue if the Court finds the reservation to be ambiguous. *Alpine Mountain Homes, Inc. v. Bear Creek Homes, Inc.*, 202 Or.App. 390, 397, 122 P.3d 111, 114 (2005). Additionally, if found to be ambiguous, the jury must interpret the reservation against the drafter, which in this case is Schnitzer. *Quality Contractors, Inc. v. Jacobsen*, 139 Or.App. 366, 371, 911 P.2d 1268, 1271 (1996).

///

///

**C.**    **Schnitzer Is Estopped From Asserting a Claim for Full, Retroactive Reimbursement of Its Defense Expenses**

Continental asserts the defense of estoppel against two of Schnitzer's defense cost claims.   The first concerns, as discussed above, Schnitzer's claim for retroactive reimbursement of Bingham's fees calculated at full rates.   The second is Schnitzer's contention that Continental must pay the "full amount" of Schnitzer's defense costs without regard to the "arrangement" under which Continental paid 70% of those costs for many years without protest by Schnitzer.   With respect to the first claim, Continental asserts this defense (as well as waiver) in the event the rate cap agreement is found not to control the defense counsel fees Schnitzer is entitled to recover from Continental.

The elements of equitable estoppel under Oregon law are as follows:

> (1) A false representation (***albeit an innocent one***) was made (2) by someone having knowledge of the facts to (3) one who was ignorant of the truth, (4) that the statement was made with the intention that it be acted upon by the [ignorant party] and (5) that [the ignorant party] acted upon it." *Paulson v. Western Life Insurance Co.*, 292 Or. 38, 52, 636 P.2d 935 (1981) (citation omitted).

*In re Marriage of Menard*, 180 Or.App. 181, 186-187, 42 P.3d 359, 363 (2002) (emphasis added).

Proof of the first element does not require that the aggrieved party demonstrate fraudulent conduct. *See, e.g., Great American Ins. Co. of New York v. Jackson County School Dist. No. 9*, 478 F.Supp.2d 1227, 1231 (D.Or. 2007).   The standard is, instead applied in a fashion that upholds the overriding goal of the doctrine of equitable estoppel, which is to prevent the injustice that flows from detrimental reliance:

> It is not necessary to the existence of an equitable estoppel that there should exist a design to deceive or defraud, but it is sufficient if the person against whom estoppel is asserted by his silence or representation has created a belief of the existence of a state of facts which it would be unconscionable to deny. The doctrine of equitable estoppel thereby prevents a person from taking an

inequitable advantage of a predicament in which his own conduct has placed his adversary.

*Id.* (citations omitted).  Oregon courts apply the doctrine of estoppel "'to protect those who materially change their position in reliance upon another's acts or representations.'" *Meier & Frank Co. v. Smith-Sanders,* 115 Or.App. 159, 163, 836 P.2d 1359, rev. den. 316 Or. 142 (1993) (*quoting Stovall v. Sally Salmon Seafood*, 306 Or. 25, 34 (1988)) (internal citations omitted).

### 1.      Estoppel regarding attorney fee reimbursement

Even if the Court declines to find that Schnitzer's attorney fee claim is subject to the rate cap agreement, Schnitzer should be estopped from recovering Bingham's full rates. Continental bases its estoppel claim on a reasonable interpretation of Schnitzer's purported reservation.  As discussed above, Continental construes the reservation as limited to a right to seek rate increases in the future as necessary to ensure the continued retention of defense counsel who could provide Schnitzer with competent representation.  The reasonableness of Continental's understanding that Schnitzer had not reserved a unilateral right to retroactive reimbursement in the future is further confirmed by the parties' performance under the rate agreement for many years.

Following execution of the rate agreement, the parties adhered to an institutionalized billing arrangement (established by Schnitzer), whereby Schnitzer forwarded Bingham invoices to Continental for payment with correspondence stating that the agreed rates were to be substituted for those appearing on invoices.  Additionally, Schnitzer did not communicate any intent to seek retroactive collection of Bingham's full fees.  For example, when it negotiated a rate increase with Continental during the 2007 and 2008 time frame, Schnitzer did not assert a right to collect Bingham's full rates, or the differential in the prior payments, from Continental. Furthermore, Schnitzer did not claim, as it does now, that it was "temporarily accept[ing] a less

Page 18 - DEFENDANTS' TRIAL
MEMORANDUM
681249.1/031414 1844/80360002

than complete reimbursement of Bingham McCutchen fees" and "intended to accrue a claim" against Continental "for the shortfall in payments for the Bingham McCutchen fees."

Thus, the relevant "misrepresentation" is Schnitzer's long-standing performance consistent with the agreement while apparently harboring the unilateral, subjective intent to seek full, retroactive reimbursement of the Bingham fees. Such an undisclosed intent was not apparent on the face of Schnitzer's reservation. Further, Schnitzer's general reservations asserted in connection with attorney fee negotiations after January 2007 (*e.g.* reserving the right to claim the insurers had "breached their duty to defend by "failing to fully reimburse" Schnitzer's "defense costs; asserting no "waiver of any claims for additional reimbursement") were not sufficiently specific to apprise Continental of the now expressed claim for full, retroactive reimbursement.[6] Schnitzer, therefore, by silence "created a belief of the existence of a state of facts which it would be unconscionable to deny."

In its summary judgment briefing, Schnitzer has, itself, highlighted the importance of a clear and unambiguous reservation to the issue of reasonable reliance. For example, in arguing that Continental's reliance was not reasonable because Schnitzer reserved its right to full reimbursement, Schnitzer cites cases that, without exception, involve a clear reservation of the actual right being asserted.[7] However, there is simply nothing in the plain language of

---

[6] Schnitzer unreasonably relies on its general reservations of rights asserted in two letters, one in 2008 and a second in 2010, as "evidence" of "multiple reservations" of the right to receive full, retroactive reimbursement of the Bingham fees.

[7] *See Schmeck v. Bogotay*, 259 Or. 188, 485 P.2d 1095 (1971) (case involved strong evidence of lessor's repeated written and oral communications with lessee *concerning specific lease provision*); *Herman v. Valley Ins. Co.*, 145 Or. App. 124, 928 P.2d 985 (1996) (insured's belief that insurer was actively considering her claim and that her rights were protected was not reasonable considering insurer *expressly reminded (and warned) insured of suit limitation provision* on several occasions before expiration of time period under that specific provision); *Duncan v. Office Depot*, 973 F.Supp. 1171 (D. Or. 1997) (no reasonable reliance in retaining overpayment of salary because employer specifically notified employee of intent to recover

Schnitzer's March 2004 reservation indicating that it was reserving a specific right to later seek full, retroactive reimbursement of the rate differential. Further, even assuming such a failure to reserve a specific right in a contract could be cured by more specific reservations in later communications, Schnitzer's later general reservations also failed to apprise Continental of the particular right that Schnitzer now asserts.[8]

Given this backdrop, it is clear that Continental reasonably relied to its detriment upon the belief that it had entered into an enforceable rate agreement with Schnitzer, subject only to a requirement that the parties negotiate future rate increases as necessary to retain counsel that could provide Schnitzer with competent representation. In reliance on this agreement, Continental did not exercise its absolute right to select defense counsel and set rates, as provided by the insurance policies (granting Continental the "right and duty to defend"). *See Carolina Cas. Ins.Co. v. Bolling, Walter & Gawthrop*, 2005 WL 1367096 (E.D.Cal. May 31, 2005) (citing cases); *Rx.com Inc. v. Hartford Fire Ins. Co.*, 426 F. Supp. 2d 546, 559 (S.D. Tex. 2006). Accordingly, Schnitzer's apparent accession to the conditions in the rate agreement resulted in Continental's substantial change of position from where it would have been had it appointed local counsel back in 2004.

---

(continued . . .)
overpayment); *Duncan v. Office Depot*, 973 F.Supp. 1171 (D. Or. 1997) (no reasonable reliance in retaining overpayment of salary because employer *specifically notified employee of intent to recover overpayment*).

[8] In an attempt to read a broader meaning into its March 2004 reservation, Schnitzer relies upon the proposition that a reservation can take any form. However, in making this argument, Schnitzer relies exclusively upon authority concerning an insurer's ability to reserve its rights and then undertake the defense without waiving or being estopped (based on its provision of a defense) from later asserting its reserved rights. This line of authority is not helpful to Schnitzer because it is based on the rationale of encouraging an insurer to defend its insured without fear of being later barred from raising defenses to coverage.

### 2.    Estoppel regarding 70% arrangement

Since accepting the defense of the Portland Harbor claim in 2001, Schnitzer's insurers have been sharing the defense costs in accord with an agreement allocating 70% to Defendants, 10% to INA, and 20% to Wausau.  Schnitzer has been aware of the insurer arrangement since its inception.  Yet, despite this long history, Schnitzer now claims that it never agreed to accept only 70% from Continental and requests that Continental reimburse it for 100% of any unpaid "defense" expenses incurred since Continental first accepted the defense.

Schnitzer is estopped from seeking 100% of the defense costs from Continental.  By acting in accord with the terms of the arrangement (*e.g.* separately billing its insurers for their respective shares) and asserting its rights under the arrangement (*e.g.* sending letters requesting timely payments of each insurer's share of defense costs), Schnitzer "has created a belief of the existence of a state of facts which it would be unconscionable to deny."  *Great American Ins. Co. of New York*, 478 F.Supp.2d at 1231.  Continental has relied upon Schnitzer's objective manifestation of its agreement to accept 70% of the defense costs from Continental.  This reliance will have been to Continental's detriment if it is now required to somehow account for payments that were made directly to Schnitzer, be made responsible for any shortfall or alleged delays, and to retroactively reimburse Schnitzer for amounts the other insurers failed to pay.  Finding Schnitzer to be estopped from now acting contrary to a practice followed since 2001 upholds the purpose of equitable estoppel to prevent one party "from taking an inequitable advantage of a predicament in which his own conduct has placed his adversary." *Id.*

### D.    Schnitzer Waived Any Claim for Full, Retroactive Reimbursement of Its Defense Expenses

In the alternative to estoppel, Continental also asserts the defense of waiver to the same claims – attorney fee rates and 70% arrangement.  While it is true that waiver requires

intentional relinquishment of a known right, "'waiver may be implied from the conduct of the party.'" *Bank of Eastern Oregon v. Griffith*, 101 Or.App. 528, 534, 792 P.2d 1210 (1990). More specifically, a party waives a contractual right by performing in a manner that is inconsistent with that right. *See, e.g., Spiess v. White*, 172 Or.App. 36, 43, 17 P.3d 568 (2001) ("Waiver of a time-essence provision occurs when late payments are accepted or tolerated.").[9]

### 1. Waiver regarding attorney fee reimbursement

The same conduct supporting estoppel here also establishes Schnitzer's waiver of its now asserted right to seek retroactive reimbursement of the attorney fee differential. Even assuming *arguendo* that Schnitzer had a right to collect Bingham's full rates from Continental, Schnitzer's performance was clearly inconsistent with any such right. As discussed above, Schnitzer established an institutionalized process for requesting reimbursement from Continental for its share of the reduced Bingham fees. In conformance with Continental's conditions, Schnitzer repeatedly invoiced Continental s for the reduced fees without reserving a right to the full amount in those invoices. Schnitzer has repeated, without interruption, this performance to the present day. Thus, at the very least, these facts establish waiver by conduct of any purported right to retroactively collect the full amount of Bingham's fees.

---

[9] Referencing non-goods cases involving acceptance of late payments (*e.g.* for rent), a New Mexico court found that waiver by inconsistent performance with an asserted right was also supported by analogous principles under the Uniform Commercial Code. *See J.R. Hale Contracting Co., Inc. v. United New Mexico Bank at Albuquerque*, 110 N.M. 712, 718-720, 799 P.2d 581 (1990) (observing "the UCC recognizes that the conduct of the parties in performing an agreement may be relevant to show a modification or waiver of a provision inconsistent with their conduct in the performance of that agreement") (emphasis in original); *compare, Walker v. Feiring*, 53 Or.App. 433, 437-438, 632 P.2d 1270 (1981) (noting Oregon case law where "seller's toleration of late performance in a land sales contract operates as a waiver of the timely performance requirement for subsequent performances.").

### 2.    Waiver regarding 70% arrangement

Similarly, Continental contends that Schnitzer intentionally relinquished its alleged right to collect 100% of the defense costs from Continental. The same conduct (spanning almost a decade) supporting estoppel also suggests that Schnitzer has always intended (or appeared to have intended) to only collect each insurer's respective share of defense costs. Schnitzer's conduct was certainly inconsistent with any claimed right to collect 100% of the defense costs from Continental.

### E.    Schnitzer's Attorney Fee Claim Is Limited To Local, Portland Rates

In the event it is necessary to look beyond the parties' agreement concerning defense counsel rates and Continental's alternative defenses of estoppel and waiver are found to be inapplicable, the jury will need to assess whether Schnitzer's requested attorney fees are reasonable under Magistrate Judge Papak's formulation of the "forum rule." As explained by the magistrate:

> [A]n insurer is compliant with the duty of care it owes to its insured when, in the duty to defend context, it selects counsel to defend its insured that, under all of the circumstances, can reasonably be expected to provide competent representation as of the time the selection is made.

March 2012 F&R, at 31.

Continental has been compliant with this duty. Contrary to Schnitzer's accusation that Continental adheres to a "bargain basement approach," - only agreeing to retain unqualified "general practitioners" - Continental offered two well-respected environmental counsel to replace Stoel Rives in 2003, who subsequently took similar positions with other high profile PRPs in need of defense counsel for similar Portland Harbor claims. One of the suggested counsel, Skip McKallip, was even honored in 2005 by the Portland Business Journal as one of the "best of the bar" for environmental law and in 2007 as an Oregon Super Lawyer in the environmental law and environmental litigation category. Schnitzer rejected Continental's

Page 23 - DEFENDANTS' TRIAL
MEMORANDUM
681249.1/031414 1844/80360002

proffered counsel after only conducting very cursory interviews of each candidate. Schnitzer also engaged in a very limited search for alternative counsel because it had already secretly selected Bingham in 2002.

Schnitzer unilaterally (and covertly) hired Bingham because it believes that an insurer (or at least *Schnitzer's* insurers) must pay for the best counsel available in the country - the "A-Team, the "brain surgeon" - when the insured (or at least when *Schnitzer*) faces an allegedly complex environmental claim. Schnitzer also directly equates the rate demanded by counsel in the marketplace ("supply and demand") with the competency of representation, but does not offer any actual basis for this alleged correlation. Yet, the McKallip example illustrates the lack of any such correlation - showing that a well-respected environmental litigator (highly qualified by all reasonable measures) was willing to work at rates considerably less than those demanded by Bingham.

Despite Schnitzer's pleas for a standard, not followed anywhere in the nation, that would allow it to unilaterally retain the most expensive counsel at the insurer's expense, the Court has elected to follow a more reasonable path. In this regard, the Court has ruled that the insurer fulfills its defense obligation if it proffers defense counsel in the forum (or the cheapest counsel available outside the forum willing to travel to the forum to represent the insured) that "can reasonably be expected to provide competent representation as of the time the selection is made." *See* March 2012 F&R, at 32. In accord with the "forum rule," the Court also found that Schnitzer did not "enjoy unfettered discretion to select [defense] counsel [outside the forum] without regard to expense." *Id.*

Although Schnitzer has repeatedly asserted untimely requests for reconsideration, the Court has set forth a version of the forum rule designed to balance the insured's entitlement to competent representation with the fact that the insurer is paying the bills and need only pay

reasonable rates. Accordingly, the rule begins with the important presumption that local forum rates represent the applicable reasonable rates. As the party seeking to recover its fees, Schnitzer bears the burden of overcoming this presumption. *See, e.g., Schwarz v. Secretary oJ'JJeaiih & Human Sen's.*, 73 F.3d 895, 907 (9th Cir. 1995).[10] To satisfy this burden, Schnitzer must prove:

1.    there was no available, local counsel who could have reasonably been expected to provide Schnitzer with competent representation; and

2.    there was no available, non-local counsel who could have reasonably been expected to provide Schnitzer with competent representation at or below Portland attorney fee rates.

*See* December 2013 Order, at 5. If it satisfies this burden, Schnitzer must still prove that the rates of its selected counsel are reasonable. The reasonableness of those rates must be decided with reference to the rates for counsel in Portland who could have reasonably been expected to provide Schnitzer with competent representation.[11]

In judging the "competence" of local counsel or non-local counsel willing to work at forum rates, the jury should judge "competency" according to the criteria actually specified in

---

[10] *See also Gates v, Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (holding that, under the forum rule, the insured must prove by, substantial evidence, that qualified, in-forum counsel were unavailable; meeting this burden with "numerous" declarations from in-town and out-of-town lawyers attesting to both the complexity of the litigation at issue and the unavailability of in-town lawyers with the necessary experience to handle the representation).

[11] Forum rates are still relevant even if the insured successfully overcomes the presumption. Given the preference for local rates, the non-local rates should not be entirely untethered from local rates. Some external restriction of rates is also required to avoid the moral hazard problem faced by insurers. *See* Kenneth S. Abraham, Environmental Liability and the Limits of Insurance, 88 Colum. L. Rev. 942, 949-54 (1988) (discussing insurers' methods of minimizing moral hazard). Thus, the jury should take in account the fee differential between local and non-local rates in deciding upon a reasonable discount factor to apply to non-local rates.

Page 25 - DEFENDANTS' TRIAL MEMORANDUM
681249.1/031414 1844/80360002

Oregon Rule of Professional Conduct ("RPC") 1.1:

> A lawyer must provide "competent representation to a client," which requires **"the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."** DR 6-101(A) 4. This court has held that determining whether a lawyer acted incompetently, in violation of that rule, is a fact-specific inquiry: "The question whether a lawyer has competently represented a client is, of course, a fact-specific inquiry. A review of this court's cases shows that incompetence often is found where there is a lack of basic knowledge or preparation, or a combination of those factors. In contrast, lawyers have been found not guilty of providing incompetent representation where the lawyers showed experience and professional ability to perform work, or where the Bar failed to prove that a position taken by the lawyer was 'advanced in pretense or bad faith, or in culpable ignorance.' **In sum, competence or incompetence can best be measured on a case-by-case basis using the standard stated in DR 6-101(A) itself."**

*In re Conduct of Eadie*, 333 Or. 42,60,36 P.3d 468,480 (2001)(emphasis added). Thus, the factors listed in RPC 1.1 (legal knowledge, skill, thoroughness and-preparation reasonably necessary for the representation) are the only criteria that the jury should consider. Notably, questions regarding size or capacity are not relevant under RPC 1.1. Rather, the question presented therein is limited to whether counsel had adequate knowledge, skill, thoroughness and preparation to provide competent representation. The size of a firm should not be a relevant criterion because competent attorneys frequently adjust professional commitments and staffing to fit their practices, which often can include hiring additional attorneys or staff, or shifting work to others within a firm, when necessary, based on the case or client needs.

With regard to "availability," Schnitzer has asserted that all local, competent counsel were unavailable to represent it in the Portland Harbor matter because of conflicts. However, any such per se rule of disqualification is improper because conflicts can be waived. Other courts addressing this issue have concluded that evidence of a conflict does not automatically disqualify a firm from consideration as defense counsel. An attorney is available to engage in a representation if the attorney is willing and able to do so, even if the representation might

require another client's informed consent.  *See Arco Industries Corp. v. American Motorists Ins. Co.*, 232 Mich.App. 146, 168-169, 594 N.W.2d 61, 72 (Mich. App. 1998).  Furthermore, even before the issue of possible waivers becomes relevant, Schnitzer must still provide evidence of an alleged conflict that meets the requirements of RPC 1.7 (current client conflicts) (*e.g.* "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client) and RPC 1.9 (former client conflicts) (*e.g.* "the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client").  Schnitzer must meet this burden on the basis of non-speculative evidence.

**F.      Schnitzer Failed to Mitigate a Portion of Its Claimed Defense Expenses**

Continental contends that Schnitzer failed to mitigate a substantial portion of the defense expenses that it seeks to recover in this action.  A party seeking to recover costs has a duty under the law to use reasonable diligence to mitigate, avoid or minimize those costs. *Schafer v. Sunset Packing*, 256 Or 539, 542–543, 474 P2d 529 (1970).

Here, Schnitzer unilaterally retained Bingham and agreed, without Continental's input or consent, to pay the attorney fee rates demanded by that firm.  Over the last decade, Bingham's rates have steadily increased from $475/hour to over $900/hour in 2013 – and will likely continue this unrestrained escalation into the future.  In deposing Schnitzer's corporate representatives, Continental discovered that Schnitzer has not made any attempt to negotiate over rates with Bingham or to otherwise limit the rate increases it was willing to pay. Accordingly, Continental will ask the jury to reduce any additional recoverable, reasonable and necessary attorney fees by the amount that Schnitzer, by exercising reasonable diligence, could have avoided.

///

**G.    For Payments To Be Reasonably Prompt, They Must Only Be Reasonably Timely Under the Circumstances**

Schnitzer seeks to impose a draconian "one-size-fits-all" standard upon the timing of Continental's defense costs payments – arguing, for example, that Continental must make all payments within a certain number of days.  In fact, in its Motion for Partial Judgment on the Pleadings, Schnitzer contended that Continental was obligated to institute a "reasonable system" for payment.  Rejecting this contention, Magistrate Judge Papak recommended, instead, that Defendants "make a reasonably prompt determination and payment of the reasonable and necessary fees, costs and expenses incurred by Schnitzer."  *See* August 2011 F&R, at 13.  In his caveat to this finding, the magistrate stated that he was not adopting a general legal standard governing whether Defendants' defense payments are "reasonably prompt."  *Id.* at 15.  Thus, this standard contemplates that the timing of payments will vary under the circumstances surrounding each invoice or set of invoices.

In considering the circumstances surrounding each payment, the jury must also acknowledge the fact that the timing of payments is not solely dependent upon Continental. Schnitzer has an obligation to timely and sufficiently respond to Continental's questions regarding invoices and to timely provide any requested documents or information to assist in answering those questions.  The evidence will show that Schnitzer often failed to fulfill these duties.

The jury must also recognize that, as asserted by Schnitzer, the underlying action is a complex matter and the invoiced activities, therefore, often reflect this complexity.  For example, Schnitzer retained numerous and often shifting and overlapping environmental consulting firms over the years.  As a consequence the jury must account for a number of factors in assessing the timeliness of payment processing, including (1) the administrative time required for Continental to receive and process the invoices and issue a check for reasonable

and necessary defense expenses; (2) the time required for Continental's environmental consultant to receive, review and provide Continental with payment recommendations as to which expenses were reasonable and necessary defense expenses; and (3) whether there were deficiencies (*i.e.* missing pages, information, or back-up materials) in the invoices that delayed the payment process.

Given the fact-specific nature of any inquiry into whether Continental's payments were reasonably prompt, the jury will likely have to consider the circumstances surrounding each invoice or a set of invoices sent on a particular date. The jury cannot broadly apply a single rule of thumb in assessing the timeliness of Continental's payments over the last decade since it undertook Schnitzer's defense.

**H.     Schnitzer Breached Its Obligations Under the Policies**

Continental asserts that it has been prejudiced by Schnitzer's failure to comply with two of its obligations under the policies. First, Schnitzer has a duty to cooperate with Continental. If Schnitzer breached its duty to cooperate then it cannot recover anything under the policies. *Charter Oak Fire Ins. Co. v. Interstate Mechanical, Inc.*, No. 3:10–cv–01505-PK, 2013 WL 3809466, at \*\*4 & 10 (D. Or. July 23, 2013). Second, by the express terms of the policies, Schnitzer is prohibited, except at its own cost, from voluntarily making a payment, assuming any obligation, or incurring any expense. Schnitzer may not seek recovery from Continental for any voluntarily made payment, assumption of an obligation, or incurrence of expense.

**1.     Duty to cooperate**

To prove that Schnitzer breached its duty to cooperate, Continental must demonstrate (1) it diligently sought Schnitzer's cooperation; (2) Schnitzer willfully failed to cooperate; and

(3) Schnitzer's failure to cooperate prejudiced Continental.   In showing "diligence,"
Continental must establish that it made the same effort to secure Schnitzer's cooperation as
Continental would have made to protect its own interests.  *Id.* at **10.  Additionally, the word
"willful" does not necessarily cast blame or implicate malice.  *Young v. State,* 340 Or. 401, 133
P.3d 915, 919 (Or. 2006).  It merely indicates that the act or omission was purposeful and not
the product of inadvertence.  *Id.*  Applying this standard, Schnitzer acts "willfully" if it knows
what it is doing, intends to do it, and is a free agent.

The evidence will show here that Schnitzer failed to cooperate in two key respects.
First, as discussed above it unilaterally (and covertly) retained Bingham and allowed the
attorney fee rates to escalate without involving Continental (and its other insurers) or seeking
consent or attempting to negotiate lower rates with Bingham.  Of particular import, Schnitzer
undertook this subterfuge while pretending to cooperate with Continental by interviewing Earle
and McKallip when Schnitzer had no actual intent to seriously consider those lawyers, or any
counsel that Continental might have suggested.  Second, Schnitzer unreasonably delayed
responding to Continental's requests for clarification of invoices questions, resisted efforts to
instruct its consultants to provide more invoice detail, and failed to timely provide requested
documents and information needed to properly assess the reasonableness and necessity of
Schnitzer's defense costs.  Continental can establish prejudice by showing, among other things,
that Schnitzer's lack of cooperation inflicted a risk of economic loss on Continental that it
could have avoided with Schnitzer's cooperation.  Continental can also establish evidentiary
prejudice by demonstrating, for example, that witnesses and evidence concerning now alleged
"conflicts" are no longer available.  This latter issue is certainly implicated with respect to the
untimely passage of Skip McKallip, who was a key witness as to the availability and
competence of his firm to represent Schnitzer.

## 2.    Duty not to make voluntary payments

Schnitzer's duty to avoid making voluntary payments is similar to its duty to cooperate – the primary difference being that noncompliance with this duty does not invalidate the entire claim but rather prevents recovery of payments voluntarily made (or related to obligations voluntarily assumed). Additionally, Continental does not have to prove diligence, only that (1) Schnitzer willfully breached this "voluntary payments" duty and (2) that breach prejudiced Continental. *Charter Oak Fire Ins. Co.*, No. 3:10–cv–01505-PK, 2013 WL 3809466, at **16 & 31 n.4 (observing that there was no need to prove diligence "since it makes no sense to require the insurer to seek the insured's compliance with a no-voluntary-payment provision"). Again, the word "willful" does not necessarily cast blame or implicate malice. Finally, this defense involves the same conduct discussed above with respect to the duty to cooperate and, thus, implicates the same issues of prejudice.

## I.    Laches

Continental has also asserted the defense of laches. In order to prevail on this defense, Continental must prove (1) Schnitzer delayed asserting its claim for an unreasonable length of time; (2) Schnitzer knew all the facts relevant to its claim (and laches does not start to run until such knowledge is shown to exist); and (3) Schnitzer's delay resulted in such substantial prejudice to Continental that it would be inequitable for the court to not grant relief. *Mattson v. Commercial Credit Business Loans,* 301 Or. 407, 419, 723 P.2d 996 (1986).

Schnitzer claims that it was merely collecting "partial" reimbursement under conditions in the 2004 rate agreement with which it apparently had no intention of complying. It continued to invoice Continental for years at the agreed rate of reimbursement but then waited until after filing this lawsuit before specifically asserting a right to retroactive reimbursement of Bingham's full fees incurred since 2004.

Additionally, in 2010, Schnitzer claimed that payments Continental and other insurers made (beginning as early as 2001 and continuing through the time of trial) were somehow untimely, even though there was no time frame specified for reimbursement in any agreement between the parties. Also in 2010, Schnitzer alleged for the first time that Continental was responsible for 100% of the defense costs irrespective of its arrangement (of which Schnitzer was acutely aware) for partial payment with Schnitzer's other insurers.

To the extent that Schnitzer delayed asserting a claim for an unreasonably long and inexcusable period of time such that Continental was prejudiced in a significant way by the delay, Schnitzer would not be entitled to recover on its claim. Continental can establish prejudice based on evidentiary grounds (*e.g.* a loss of witnesses or evidence) or economic loss (*e.g.* a change in economic position that could have been avoided). Whether laches applies involves a consideration of fairness under the circumstances. If the jury finds that there was an unreasonable delay by Schnitzer in asserting its claims that prejudiced Continental, it should further find that laches bars Schnitzer's claims.

## J.    Continental Must Only Pay Reasonable and Necessary Defense Expenses

Schnitzer must prove that the alleged defense costs that its seeks to recover from Continental were both reasonable and necessary to investigate and/or defend the environmental claims against Schnitzer. *See Employers Insurance of Wausau v. Tektronix, Inc.,* 211 Or.App. 485, 509, *rev. den,* 343 Or. 363 (2007) ("Under Oregon law, the initial burden of proving coverage is on the insured."); ORS 465.480(2)(c) (insurance coverage is available for "reasonable and necessary fees, costs and expenses").[12]

---

[12] *See also, UnitedHealth Group Inc. v. Columbia Cas. Co.*, 941 F.Supp.2d 1029, 1036 (D.Minn. 2013) (holding that "an insured (like any plaintiff) bears the burden of proving its damages"); *Domtar, Inc. v. Niagara Fire Ins. Co.,* 563 N.W.2d 724, 738 (Minn.1997) ("[I]t

Continental has declined to pay certain costs that it determined are not related to Schnitzer's defense. These expenses fall into two categories. The first is "indemnity" costs, which are not at issue in this litigation. Unlike defense costs, indemnity costs may be recovered only if the insured proves that those costs arise from claims that are actually (not only potentially) covered under the applicable insurance policies. *Clarendon Nat. Ins. Co. v. American States Ins. Co.*, 688 F.Supp.2d 1186, 1193 (D. Or. 2010) (The duty to indemnify "is established by proof of actual facts demonstrating a right to recover."). With respect to environmental claims, the Oregon Environmental Cleanup Assistance Act establishes a presumption that certain types of expenses are indemnity-related and that others are defense-related. Again, as the party seeking coverage, Schnitzer has the burden of overcoming the presumption and proving that certain costs are incurred for its defense.[13]

The second category is ordinarily incurred business expenses. Most courts hold that such expenses are not covered by liability insurance. *See, e.g., Weyerhaeuser Co. v. Aetna Cas. & Surety Co*, 123 Wn. 2d 891, 905-06, 874 P.2d 142 (1994). Ordinary business costs include expenses Schnitzer incurs in operating its facility on the Portland Harbor. Schnitzer would incur ordinary business costs even in the absence of the environmental claims asserted against

---

(continued . . .)
is axiomatic that in order to establish its right to defense costs, an insured must first meet its burden of establishing that the costs sought were in fact reasonable and necessary to its defense of the action.").

[13] It does not appear that the defense versus indemnity issue will likely arise in this litigation, but Continental reserves the right to raise this argument to the extent Schnitzer attempts to recover any indemnity-related expenses.

it at the site.  Continental's environmental consultant, Chip Goodhue, has identified certain expenses as ordinary business expenses using a method he has denominated the 3/5-2/5 rule. He developed this rule given ambiguities and information gaps in Schnitzer's environmental consultant invoices/reports that have made it impossible to distinguish ordinary business from potential defense costs.  Although Continental requested additional information in an attempt to provide greater clarity, Schnitzer failed to comply.  Mr. Goodhue will testify concerning this issue at trial.

### K.  Many Legal and Factual Issues Must Be Resolved Before the Jury Can Determine Whether Schnitzer Is Entitled to Prejudgment Interest

Oregon courts award prejudgment interest under ORS 82.010.  This statutory provision states, in relevant part, that interest must be paid on "all moneys after they become due."  While such amounts have been found to be "due" when they are "demanded," the analysis applicable to prejudgment interest is somewhat more complex.  In particular, a court may award prejudgment interest only when the exact amount, and the time from which interest should run, is "ascertained" or "easily ascertainable."

Magistrate Judge Papak ruled on summary judgment that "[i]n determining whether the amount of the damages and starting date of the interest are ascertainable, [the court] do[es] not operate from the perspective of the parties during litigation but from an objective, post judgment perspective." *See* March 2012 F&R, at 35.  This ruling means that, while questions of fact in existence at the time that payment is demanded will not necessarily defeat a request for prejudgment interest, those questions of fact must be resolved at trial – which will determine when the date and amount of damages were ascertainable.

Applying the above standards, interest will potentially be found to be "due" from the date of the demand for an ascertained or reasonably ascertainable sum.  However, if

Continental proves that there was an enforceable rate agreement or estoppel/waiver applies, Schnitzer will not be entitled to prejudgment interest on the majority of its claims. Furthermore, if reasonable fees are determined using the magistrate's forum rule based standard, significant questions of fact will need to be decided before it will be known whether prejudgment interest should even be considered. Finally, given the fact-specific inquiry required to ascertain whether a payment was "reasonably prompt," the jury will likely have to determine whether prejudgment interest is appropriate on an invoice-by-invoice basis.

DATED this 14th day of March, 2014.

BETTS, PATTERSON & MINES, P.S.


By___/s/Lawrence Gottlieb_____
   Lawrence Gottlieb, OSB #070869
   lgottlieb@bpmlaw.com
   Brett Sommermeyer, OSB #964326
   bsommermeyer@bpmlaw.com
   Lisa C. Neal, WSB #25686, Admitted *pro hac vice*
   lneal@bpmlaw.com
   Betts, Patterson & Mines
   701 Pike St., Suite 1400
   Seattle, WA 98101
   206-292-9988
   Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and the document is available for viewing and downloading from the CM/ECF system.  I also certify that the foregoing document is being served electronically via the Court's CM/ECF notice system upon the following counsel of record:

**Counsel for Plaintiffs**
Scott J. Kaplan
STOEL RIVES, LLP
900 SW Fifth Ave., Ste. 2600
Portland, OR  97204

Joseph W. Montgomery, III
John E. Iole
Rebekah Byers Kcehowski
Allison B. Parker, Pro Hac Vice
JONES DAY
500 Grant St., Ste. 4500
Pittsburgh, PA  15219-2514

Louis A. Ferreira
Stoel Rives LLP
900 SW 5th Ave., Ste. 2600
Portland, OR  97204-1268

Crystal S. Chase
STOEL RIVES, LLP
900 SW Fifth Ave., Ste. 2600
Portland, OR  97204

DATED March 14, 2014.

By____/s/*Lawrence Gottlieb*_____
    Lawrence Gottlieb, OSB #070869
    lgottlieb@bpmlaw.com
    Brett Sommermeyer, OSB #964326
    bsommermeyer@bpmlaw.com
    Lisa C. Neal, WSB #25686, Admitted *pro hac vice*
    lneal@bpmlaw.com
    Betts, Patterson & Mines
    701 Pike St., Suite 1400
    Seattle, WA  98101
    206-292-9988
    Attorneys for Defendants