Scott J. Kaplan, OSB No. 913350
Email: sjkaplan@stoel.com
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

John E. Iole
Email: jeiole@jonesday.com
Rebekah B. Kcehowski
Email: rbkcehowski@jonesday.com
JONES DAY
500 Grant Street – Suite 4500
Pittsburgh, PA 15219-2514
Telephone: 412-391-3939
Facsimile: 412-394-7959
Associate Counsel (admitted *pro hac vice*)

***Attorneys for Plaintiffs***

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SCHNITZER STEEL INDUSTRIES, INC., an Oregon corporation; and MMGL CORP., a Washington corporation, | Case No.: 3:10-cv-01174-MO |
| Plaintiffs, | PLAINTIFFS' OMNIBUS MOTION IN LIMINE |
| v. | Electronically Filed Document |
| CONTINENTAL CASUALTY COMPANY, an Illinois corporation; and TRANSPORTATION INSURANCE COMPANY, an Illinois corporation, | Oral Argument Requested |
| Defendants. | |

PLAINTIFFS' OMNIBUS MOTION IN LIMINE

## Table of Contents

I. INTRODUCTION ................................................................................................. 1

II. CERTIFICATE OF CONFERRAL ................................................................... 1

III. *IN LIMINE* REQUESTS ..................................................................................... 1

    A.    Evidence Regarding Continental's Proposed Defense Counsel Should Be Excluded .... 1

        1.    Attorneys Earle And McKallip And Their Firms Had Conflicts Of Interest And Therefore Were Not Available To Represent Schnitzer ................................................. 2

        2.    At A Minimum, A Rule 104 Hearing Is Necessary Before Evidence Regarding Attorneys Earle And McKallip Can Be Presented To The Jury ................................. 5

        3.    Evidence Post-Dating Schnitzer's 2003 Interviews Of Continental's Proposed Defense Counsel Is Not Relevant ................................................................................. 6

    B.    Evidence Of Billing Format Or Internal Billing Guidelines Is Irrelevant To Reasonableness And Necessity Of Defense Costs And Should Be Precluded ............... 8

        1.    The Test For Recovery Of Defense Costs Is Their Reasonableness And Necessity .... 8

        2.    Continental Billing Guidelines And Billing Format Are Not Relevant To Prove Reasonableness And Necessity Of Defense Actions ...................................................... 9

    C.    Procedures For Calculation Of Prejudgment Interest Should Be Adopted ................... 10

        1.    Prejudgment Interest Is Mandatory Under The Facts Here ........................................ 11

        2.    Summary Evidence May Be Used To Streamline The Jury Verdict Form ................ 12

    D.    Continental's Pretrial Admissions Are Binding And Admissible ................................. 13

    E.    Schnitzer's Summary Damages Exhibits Are Admissible ............................................ 14

    F.    Statements Of Resolute Management, Inc. Are Party Admissions ............................... 15

    G.    Continental Witnesses Brought To Trial Should Be Subject To Full Examination ...... 16

    H.    Inflammatory References To "Exorbitant" And "Outrageous" Attorneys' Fees Are Prejudicial And Should Be Excluded ......................................................................... 17

    I.    Continental Should Be Precluded From Presenting Evidence Of An Affirmative Defense That It Has Not Pleaded .................................................................................. 18

    J.    Continental Cannot Use Irrelevant, Unauthenticated Pictures ..................................... 19

K.    Continental Should Be Precluded From Referring To Time Entry Descriptions On Bingham McCutchen's "Insurance Coverage" Invoices ............................................. 20

L.    Continental's Affirmative Defenses Regarding Insurer Percentage Shares And Legal Fees Cannot Apply Beyond The Filing Date ................................................................. 21

M.    Continental's Witnesses Cannot Offer Legal Opinions Regarding Policy Rights ........ 23

N.    Schnitzer May Call Lawrence Gottlieb, But Continental May Not Call Mr. Gottlieb Unless Schnitzer Chooses To Call Him ....................................................................... 24

O.    BPM Counsel Cannot Offer Or Suggest Personal Knowledge Of Facts In Questioning Or Argument ................................................................................................................. 27

IV. Conclusion ................................................................................................................................. 28

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Wal-Mart Stores, Inc.*, No. 2:11-cv-752 JCM, 2013 U.S. Dist. LEXIS 14019 (D. Nev. Feb. 1, 2013)................................................................................................ 18

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988)................................ 13

*American Cas. Cor. v. Krieger*, 160 F.R.D. 582 (S.D. Cal. 1995) ................................ 24

*Arco Industries Corp. v. American Motorists Ins. Co.*, 594 N.W.2d 61 (Mich. App. 1998)......... 3

*Arnold v. Pfizer, Inc.*, No. 10-cv-1025-AC, 2013 U.S. Dist. LEXIS 128114 (D. Or. Sept. 9, 2013)........................................................................................... 14

*Boston Gas Co. v. Century Indem. Co.*, 529 F.3d 8 (1st Cir. 2008) ............................ 12

*Caluori v. One World Techs., Inc.*, No. 07-cv-2035, 2012 U.S. Dist. LEXIS 77924 (C.D. Cal. June 4, 2012)............................................................................................ 28

*Columbia Steel Casting Co. v. Portland Gen'l Elec. Co.*, 1992 U.S. Dist. LEXIS 9335 (D. Or. June 12, 1992)........................................................................................... 25

*Coos County v. State*, 303 Or. 173, 734 P.2d 1348 (1987)........................................ 22

*Cusick v. Meyer*, 124 Or. App. 515, 863 P.2d 486 (1993).......................................... 22

*Gen-Probe Inc., v. Becton Dickinson Co.*, Nos. 09-cv-2319, 10-cv-0602, 2012 U.S. Dist. LEXIS 189388 (S.D. Cal. Nov. 26, 2012)....................................................... 17

*Greenbrier Cos. v. Am. Dynasty Surplus Lines Ins. Co.*, Civil No. 07-1445-KI, 2008 U.S. Dist. LEXIS 64281 (D. Or. Aug. 20, 2008)...................................................... 8

*Gulbranson v. Duluth*, 921 F.2d 139 (8th Cir. 1990) .............................................. 7

*Hardy v. Chemetron Corp.*, 870 F.2d 1007 (5th Cir. 1989) ....................................... 6

*HTI Holdings, Inc. v. Hartford Cas. Ins. Co.*, No. 10-cv-06021, 2011 U.S. Dist. LEXIS 94388 (D. Or. Aug. 23, 2011)........................................................................... 13

*In re Bakersfield Westar Ambulance, Inc.*, 123 F.3d 1243 (9th Cir. 1997) .................... 13

*In re Exxon Valdez*, 484 F.3d 1098 (9th Cir. 2007)................................................ 11

*Intel Corp. v. Am. Guar. & Liab. Ins. Co.*, No. 09-cv-00299, 2010 U.S. Dist. LEXIS 139903 (N.D. Cal. Dec. 7, 2010)...................................................................... 14

*Jadwin v. County of Kern*, No. 1:07-cv-26, 2009 BL 161463 (E.D. Cal. May 19, 2009) ........... 19

*Johnston Dev. Group. Inc. v. Carpenters Local Union*, 130 F.R.D. 348 (D.N.J. 1990) .......... 25

*Jones v. Rose*, No. CV 00-1795-BR, 2005 U.S. Dist. LEXIS 41025 (D. Or. Sept. 9, 2005) ....... 19

*Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 265 P.3d 777 (2011)....................... 5

*Key West Retaining Sys. v. Holm II, Inc.*, 185 Or. App. 182, 59 P.3d 1280 (2002) .............. 11, 12

*Krieg v. Union Pac. Land Res. Corp.*, 269 Or. 221, 525 P.2d 48 (1974) .................................... 11

*McMellon v. Safeway Stores*, 945 F. Supp. 1402 (D. Or. 1996) ........................................... 16

*Me. Bonding & Cas. Co. v. Centennial Ins. Co.*, 298 Or. 514, 693 P.2d 1296 (1985) ................. 5

*Miller v. Stryker Instruments*, No. CV 09-813, 2012 U.S. Dist. LEXIS 70314 (D. Ariz. Mar. 29, 2012) ........................................................................................................................... 7

*Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051 (9th Cir. 2008) ........................ 23, 24

*Nelson v. Hartford Ins. Co.*, No. CV 11-162-M-DWM, 2012 U.S. Dist. LEXIS 30983 (D. Mont. Mar. 8, 2012) ................................................................................................................ 28

*NFA Corp. v. Riverview Narrow Fabrics, Inc.,* 117 F.R.D. 83 (D.N.C. 1987) ......................... 24

*Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546 (5th Cir. 2004) ........................... 12

*Progress Quarries, Inc. v. Lewis*, 281 Or. 441, 575 P.2d 158 (1978) ...................................... 8

*Rapid Funding Group, Inc. v. Keybank Nat'l Ass'n*, No., 07-CV-1348-PK (D. Or. Sept. 10, 2008), *adopted* 2008 U.S. Dist. LEXIS 85510 (D. Or. Oct. 22, 2008) ................................... 25

*Rick Franklin Corp. v. State*, 207 Or. App. 183, 140 P.3d 1136, 1140-41 (2006) ...................... 22

*Sampley v. Wright*, No. 95-3549, 1996 U.S. App. LEXIS 28862 (7th Cir. Oct. 8, 1996) ........... 17

*Schmeck v. Bogatay*, 259 Or. 188, 485 P.2d 1095 (1971) .......................................................... 22

*Schnitzer Steel Indus. v. Cont'l Cas. Co.*, No. 3:10-cv-1174, 2012 U.S. Dist LEXIS 127702 (D. Or. Mar. 9, 2012) ..................................................................................................... 11

*Security State Bank v. Baty*, 439 F.2d 910 (10th Cir. 1971) ..................................................... 18

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*, No. CV 06-3459, 2012 U.S. Dist. LEXIS 188155 (C.D. Cal. Apr. 27, 2012) ........................................................................................ 19

*State Highway Comm'n v. DeLong Corp.*, 275 Or. 351, 551 P.2d 102 (1976) ......................... 11

*United States v. Bohn*, 622 F.3d 1129 (9th Cir. 2010) ............................................................ 23

*United States v. Oaxaca*, 569 F.2d 518 (9th Cir. 1978) ........................................................... 19

*United States v. Schepp*, 746 F.2d 406 (8th Cir. 1984) ........................................................... 17

*USA Gateway Travel, Inc. v. GEL Travel, Inc.*, No. C06-053JLR, 2006 U.S. Dist. LEXIS 92560 (W.D. Wash. Dec. 20, 2006) ........................................................................... 14

*Weitman v. Weitman*, No. 3:12-cv-00499-MO, 2013 U.S. Dist. LEXIS 178159 (D. Or. Dec. 19, 2013) ......................................................................................................................... 16

*Wilson v. Smurfit Newsprint Corp.,* 197 Or. App. 648, 107 P.3d 61 (2005) ........................ 11, 12

# STATUTES

ORS 82.010 ................................................................................................................ 11

ORS 465.480 .............................................................................................................. 21

# OTHER AUTHORITIES

UCJI No. 13.01 .......................................................................................................... 18

UCJI No. 30.03 .......................................................................................................... 16

# RULES

Fed. R. Civ. P. 8 ........................................................................................................ 13

Fed. R. Civ. P. 16 ...................................................................................................... 13

Fed. R. Civ. P. 26 ...................................................................................................... 24

Fed. R. Civ. P. 36 ...................................................................................................... 13

Fed. R. Evid. 104 ........................................................................................................ 6

Fed. R. Evid. 401 ...................................................................................................... 20

Fed. R. Evid. 402 ................................................................................................. passim

Fed. R. Evid. 403 ................................................................................................. passim

Fed. R. Evid. 602 ...................................................................................................... 23

Fed. R. Evid. 611 ...................................................................................................... 17

Fed. R. Evid. 701 ...................................................................................................... 23

Fed. R. Evid. 801 ................................................................................................. 13, 16

Fed. R. Evid. 807 ................................................................................................. 16, 29

Fed. R. Evid. 901 ...................................................................................................... 19

Fed. R. Evid. 1006 ............................................................................................... 14, 15

Or. R. P. C. 1.7 ......................................................................................................... 2, 4

Or. R. P. C. 3.4 ................................................................................................. 18, 27, 28

# TREATISES

1-104 Weinstein's Fed. Evid. § 104.40 .................................................................... 6

## I.  INTRODUCTION

Pursuant to this Court's Trial Management Order and Rule 103 of the Federal Rules of Evidence, Plaintiffs Schnitzer Steel Industries, Inc. and MMGL Corp. (collectively, "Schnitzer") request *in limine* rulings as set forth below.

## II.  CERTIFICATE OF CONFERRAL

Counsel for Schnitzer has conferred in good faith with counsel for Defendants Continental Casualty Company and Transportation Insurance Company (collectively, "Continental") regarding the contents of this omnibus motion but the parties have been unable to resolve the issues raised herein.

## III.  *IN LIMINE* REQUESTS

### A.    Evidence Regarding Continental's Proposed Defense Counsel Should Be Excluded

In 2003, Continental informed Schnitzer that Schnitzer should replace its then-existing defense counsel due to an alleged conflict of interest.  *See* Joint Pretrial Order (Dkt. No. 198) at III.D.8.  Continental proposed two alternative replacements—either (1) William Earle of Abbott, Davis, Rothwell, Mullin & Earle, or (2) George McKallip, Jr. of Sussman Shank.  *See id.* at III.D.10.  Schnitzer considered each lawyer, and interviewed them both.  After the interviews, however, Schnitzer advised Continental that, among other things:

> [W]e do not believe that either of these candidates possess the necessary depth and breadth of experience in sediment clean ups, natural resources damages and multi-party Superfund settlements and litigation . . . .  Given the complicated legal and technical nature of the Portland Harbor Superfund matter, the sophistication of the parties involved, and the huge potential liability, Schnitzer does not believe that it can be represented competently by an outside counsel who does not possess this type of experience.

*See* Iole Declaration (filed contemporaneously) at Exhibit A (P. Ex. 80).

At trial, Continental intends to offer evidence that Mr. Earle, Mr. McKallip, and their law firms could have competently represented Schnitzer in the Portland Harbor matter.  Continental

also intends to offer evidence regarding the alleged billing rates for their law firms. *See, e.g.*, B. Caplan Anticipated Testimony (Dkt. No. 307-1, Ex. B) at ¶¶ 3-5; W. Earle Anticipated Testimony (Dkt. No. 307-1, Ex. C) at ¶¶ 6-7; A. Gladstone Anticipated Testimony (Dkt. No. 307-1, Ex. E) at ¶ 4; *see also* H. Moore Anticipated Testimony (Dkt. No. 307-1, Ex. G) at ¶¶ 15-16; C. Reive Anticipated Testimony (Dkt. No. 307-1, Ex. I) at ¶ 8.  Such evidence is neither relevant nor admissible and should be excluded.

1.    **Attorneys Earle And McKallip And Their Firms Had Conflicts Of Interest And Therefore Were Not Available To Represent Schnitzer**

Continental concedes that Schnitzer was entitled to retain defense counsel free of conflicts of interest.  Continental has argued that "an insurer's disagreement with its insured over the decision of whom to retain as defense counsel should not constitute a breach of contract by the insurer *absent an actual conflict of interest*."[1]  Defs.' Objs. to Pls.' Proposed Jury Instructions & Verdict Form (Dkt. No. 286) at 5 (emphasis added).  Moreover, Oregon ethics rules require full disclosure of conflicts and (if a conflict is even waivable) a written waiver from the client.  Or. R. P. C. 1.7.  Continental itself insists on counsel free of conflicts of interest pursuant to corporate policy.  *See* Iole Decl. at Ex. I (P. Ex. 128).

At the time Continental proposed them, Mr. Earle, Mr. McKallip, and their firms had and failed to disclose conflicts of interest between Schnitzer and other parties.  *See* accompanying Decl. of Thomas Zelenka in Support of Pls.' Mot. in Limine ("Zelenka Decl.") at ¶ 2.  This is a material point because Schnitzer would not have waived such conflicts.  *Id.* ¶ 4.  Consequently,

---

[1] Under Continental's view of judicial estoppel, this statement precludes Continental from now adopting a different position whether or not the Court rules in Continental's favor.  *See* Defs.' Pre-Arg. Memo. (Dkt. No. 249) at 15 (Continental's formulation of judicial estoppel).

Mr. Earle, Mr. McKallip, and their firms were not "available" to Schnitzer as defense counsel, and Continental should be precluded from offering evidence regarding them.  Fed. R. Evid. 402.[2]

Mr. Earle and his law firm have historically acted as coverage counsel for Employers Insurance of Wausau ("Wausau"), including engagements adverse to Schnitzer in litigation and otherwise.  *E.g.,* Iole Decl., Ex. B (P. Ex. 3728); *see also id.* at Ex. C (P. Ex. 4239) (Mar. 19, 2014 Letter from W. Earle identifying "two matters in which we represented an insurance company [Employers Insurance of Wausau] adverse to [Schnitzer]").  Wausau is currently adverse to Schnitzer both at the Portland Harbor Superfund site and on other claims, and Wausau refuses to pay full defense costs to Schnitzer in the instant matter.  *See, e.g.*, Zelenka Decl. at ¶ 3; *see also* Iole Decl., Ex. C (P. Ex. 4239) (Mar. 19, 2014 Letter from W. Earle stating that he "acted as local counsel for Wausau with regard to a coverage lawsuit filed by two Schnitzer entities and advised Wausau on coverage issues").  In fact, Continental intends to present the testimony of a Wausau claims analyst (Harold Moore) to testify *against Schnitzer in this case*.  *See* H. Moore Anticipated Testimony (Dkt. No. 307-1, Ex. G) at ¶ 1.  Moreover, Mr. Earle and his firm currently represent Wausau in contending that there is no coverage for policyholders at the Portland Harbor Superfund site.  *E.g.,* Iole Decl., Exs. D & E (P. Exs. 3730, 3731).  Indeed, Wausau, Mr. Earle, and his firm have argued in this Court that the insurance policy under which

---

[2] In its Trial Memorandum (Dkt. No. 308) at 26-27, Continental cites a Michigan state court decision, *Arco Industries Corp. v. American Motorists Ins. Co.*, 594 N.W.2d 61, 71 (Mich. App. 1998), for the proposition that "[a]n attorney [with a conflict of interest] is available to engage in a representation if the attorney is willing and able to do so, even if the representation might require another client's informed consent."  Dkt. No. 308 at 26-27.  But the out-of-state *Arco* decision is inapposite.  In *Arco*, the plaintiff policyholder argued that the insurer's chosen trial counsel had been unavailable due to a purported conflict of interest that did not arise until over a year after the plaintiff had already rejected representation by that law firm.  *Arco Industries*, 594 N.W.2d at 72.  In contrast, here, Mr. Earle and Mr. McKallip *already had conflicts of interest* at the time that Continental suggested they serve as counsel to Schnitzer.

Schnitzer is an additional insured is exhausted and that Wausau need not provide coverage for Schnitzer at Portland Harbor. *Id.*

There is a direct conflict of interest here, given Mr. Earle's (and his firm's) directly adverse representation of Wausau. Even if there had not been a direct conflict, it is plainly inappropriate to attempt to force a policyholder like Schnitzer to accept, as defense counsel, an attorney or firm that regularly argues that policyholders have no coverage for environmental claims. This is particularly true in light of Continental's reservation of the right to deny coverage to Schnitzer. Moreover, it appears obvious that Mr. Earle and his firm had conflicts of interest that were not waivable. *See* Or. R. P. C. 1.7(b)(1) (stating a lawyer may only request a conflict waiver if, despite the existence of conflicts, he or she nonetheless "reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client"); *id.* at 1.7(b)(3) (stating a lawyer may only request a conflict waiver if "the representation does not obligate the lawyer to contend for something on behalf of one client that the lawyer has a duty to oppose on behalf of another client"). In any event, Mr. Earle and his firm failed to disclose their conflicts, and Schnitzer would not have waived the conflicts if they had. Zelenka Decl. at ¶ 4.

Similarly, the Sussman firm knew, when Schnitzer interviewed former Sussman partner Mr. McKallip, that Sussman had conflicts of interest as to any representation of Schnitzer at Portland Harbor. *See, e.g.,* Iole Decl. at Ex. F (P. Ex. 490). Sussman disclosed some of these conflicts to Continental, but failed to disclose any conflict to Schnitzer, its putative client. Zelenka Decl. at ¶ 2; Iole Decl. at Ex. F (P. Ex. 490). For example, Sussman represented other Portland Harbor potentially responsible parties, including Columbia River Sand and Gravel, Tosco, and Western Machine Works. These were not simply technical conflicts. Western

Machine Works was a former tenant of plaintiff MMGL (formerly known as Schnitzer Investment Corp.) at the International Terminals facility, and consequently is directly adverse to Schnitzer.  Zelenka Decl. at ¶ 3.  This is a material conflict, and Schnitzer would not have waived such conflicts had Sussman disclosed them.  *Id.* ¶ 4.

Under the Court's legal standard, only attorneys who would have been "available"[3] to Schnitzer are relevant to Schnitzer's choice of counsel.  *See* Dec. 17, 2013 Order (Dkt. No. 254) at 5 (holding local rates apply only if, *inter alia*, "local counsel" are "*available* to represent the insured") (emphasis added).  Consequently, Continental should be precluded from offering evidence that Mr. Earle or Mr. McKallip or their law firms could have represented Schnitzer, and should be precluded from offering evidence as to their abilities or billing rate.  Fed. R. Evid. 402.  To present such evidence, in light of these conflicts, would be unduly prejudicial to Schnitzer and risk confusing the issues and misleading the jury.  Fed. R. Evid. 403.

### 2.    At A Minimum, A Rule 104 Hearing Is Necessary Before Evidence Regarding Attorneys Earle And McKallip Can Be Presented To The Jury

Schnitzer contends that the existing record establishes—and that the Court can rule *in limine*—that Mr. Earle, Mr. McKallip, and their law firms had conflicts of interest that made them unavailable to represent Schnitzer on the Portland Harbor matter.  If the Court believes that any questions exist, then the Court should hold an evidentiary hearing under Federal Rule of

---

[3] An insurance company cannot compel a policyholder to waive conflicts and accept defense counsel with divided loyalties.  This would be inconsistent not only with Continental's concession that proposed defense counsel must be free from conflicts (*see* Defs.' Objs. to Pls.' Proposed Jury Instructions & Verdict Form (Dkt. No. 286) at 5), but with the nature of the attorney-client relationship under Oregon law, one of the highest degree of trust and confidence (*see Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 279, 265 P.3d 777, 782 (2011)), and the insurer's obligation to "exercise reasonable care to protect its insured's interests" (*see Me. Bonding & Cas. Co. v. Centennial Ins. Co.*, 298 Or. 514, 518-19, 693 P.2d 1296, 1299 (1985)).

Evidence 104, outside the presence of the jury, before allowing any evidence regarding

Mr. Earle, Mr. McKallip, or their firms as proposed alternative counsel.

These attorneys and firms are relevant here as alternative counsel *only if* they did not

have conflicts of interest, and the absence of any conflict must be established before evidence

about them is relevant and admissible.  *See* Dec. 17, 2013 Order (Dkt. No. 254) at 5.  Under such

circumstances, a preliminary evidentiary hearing under Federal Rule of Evidence 104 is

appropriate.  *See, e.g.*, Fed. R. Evid. 104(a) ("The court must decide any preliminary question

about whether . . . evidence is admissible."); *id*. at 104(b) ("When the relevance of evidence

depends on whether a fact exists, proof must be introduced sufficient to support a finding that the

fact does exist."); *id*. at 104(c) ("The court must conduct any hearing on a preliminary question

so that the jury cannot hear it if . . . justice so requires.").  Here, justice requires that the Court

conduct a preliminary hearing outside the presence of the jury to establish the absence of

conflicts for Mr. Earle, Mr. McKallip, and their firms because the jury is likely to be confused

and misled if these attorneys are identified at trial, and the jury is not independently equipped to

assess legal ethical rules to determine whether an attorney has a disabling conflict of interest.

*See Hardy v. Chemetron Corp.*, 870 F.2d 1007, 1010 (5th Cir. 1989) (excluding evidence:

"[T]he jury is called upon to judge the credibility of evidence whose relevance is conditioned on

fact only after the party offering the evidence has made a threshold showing of relevance to the

court."); 1-104 Weinstein's Fed. Evid. § 104.40 ("The primary consideration of the judge in

deciding whether to exclude the jury is the potential for prejudice.").

### 3.    Evidence Post-Dating Schnitzer's 2003 Interviews Of Continental's Proposed Defense Counsel Is Not Relevant

Schnitzer made its choice of defense counsel over ten years ago, based on the information

available to Schnitzer at the time, and based on the experience of the respective counsel at that

time.  Continental intends to offer evidence at trial of the professional activities, client representations, accomplishments, and awards of potential counsel after 2003, as well as counsel (like Allan Gladstone) who were not offered to Schnitzer in 2003.  *See, e.g.*, B. Caplan Anticipated Testimony (Dkt. No. 307-1, Ex. A) at ¶¶ 6-9; W. Earle Anticipated Testimony (Dkt. No. 307-1, Ex. C) at ¶ 4; H. Moore Anticipated Testimony (Dkt. No. 307-1, Ex. G) at ¶ 16; A. Gladstone (Dkt. No. 307-1, Ex. E) at ¶ 3-4.  Such evidence is irrelevant and unduly prejudicial under Rules 402 and 403 of the Federal Rules of Evidence, and should be precluded.

Schnitzer's choice of counsel can be assessed only by considering the facts available to Schnitzer in 2003—post-2003 facts are not relevant to assessing the reasonableness of Schnitzer's 2003 decision.  *See Gulbranson v. Duluth*, 921 F.2d 139, 142 (8th Cir. 1990) (finding error in admitting meeting minutes indicating the defendant railroad's awareness of safety problem in 1985 because such evidence was not probative of awareness in 1984 at time that accident occurred); *Miller v. Stryker Instruments*, No. CV 09-813, 2012 U.S. Dist. LEXIS 70314, at *36-*37 (D. Ariz. Mar. 29, 2012) (on negligence and strict liability claim, excluding expert opinion relating to the defendant's knowledge of harmful effects of surgical practice where such opinion was based on "articles published after" the plaintiff's surgery—those articles or events are not relevant because they do not "indicate that [defendant] knew or could have known of harmful effects prior to Plaintiff's surgery").  Similarly, information about the accomplishments and abilities of counsel (such as Allan Gladstone) who Continental did *not* offer to Schnitzer in 2003 is likewise not relevant.  Allowing the jury to hear this type of post-2003 information would result in unfair prejudice, confusion of the issues, misleading the jury, and undue delay.  Accordingly, it should be precluded under Rules 402 and 403 of the Federal Rules of Evidence.

**B.      Evidence Of Billing Format Or Internal Billing Guidelines Is Irrelevant To Reasonableness And Necessity Of Defense Costs And Should Be Precluded**

Schnitzer moves to exclude any evidence or argument from Continental that attempts to justify nonpayment of Schnitzer's defense costs for reasons other than the reasonableness and necessity of such costs.  In particular, Schnitzer seeks to exclude evidence and argument on billing formats or Continental's internal billing guidelines.

**1.      The Test For Recovery Of Defense Costs Is Their Reasonableness And Necessity**

In *Greenbrier Cos. v. Am. Dynasty Surplus Lines Ins. Co.*, Civil No. 07-1445-KI, 2008 U.S. Dist. LEXIS 64281 at *10 (D. Or. Aug. 20, 2008), this Court set forth Oregon's standard for recoverable damages for breach of the duty to defend:

> A breach of the duty to defend makes the insurer liable for the reasonable and necessary costs of the defense.  *Northwest Pump v. American States Ins. Co.*, 144 Or. App. 222, 230, 925 P.2d 1241 (1996); *Mutual of Enumclaw Ins. Co. v. Gass*, 100 Or. App. 424, 428, 786 P.2d 749 (1999).  The insured may also recover prejudgment interest based on the amounts paid to defense counsel as of the dates of the payments.  *Klamath Pacific Corp. v. Reliance Ins. Co.*, 151 Or. App. 405, 419, 950 P.2d 909 (1997), *op. adhered to as modified on recons. on other grounds*, 152 Or. App. 738, 955 P.2d 340 (1998).

In the parties' Joint Pretrial Order, "Continental acknowledge[d] a duty to pay 'reasonable and necessary' defense costs."  Joint Pretrial Order (Dkt. No. 198) at III.D.7.

Whether defense costs are "reasonable" in a given case is a fact question.  *See, e.g.*, *Progress Quarries, Inc. v. Lewis*, 281 Or. 441, 451, 575 P.2d 158, 163 (1978) ("[T]he question of what is a reasonable attorney fee to be awarded in a particular case is an issue of fact to be determined as any other issue of fact.").  Nowhere in the Oregon authority is any indication that, for example, compliance with an insurance company's billing guidelines, the format of billing statements, or other matters related to an insurance company's administrative convenience are relevant to the factual question of the reasonableness or necessity of such costs.  This is because

insurance company administrative requirements, such as billing guidelines, are not part of the insurance contract and have no bearing on the reasonableness or necessity of defense costs.

### 2.    Continental Billing Guidelines And Billing Format Are Not Relevant To Prove Reasonableness And Necessity Of Defense Actions

Continental has refused to pay certain of Schnitzer's defense costs for reasons other than the reasonableness or necessity of those costs.  As one example of this behavior, Continental has refused to pay portions of billing statements of Schnitzer's Portland Harbor defense counsel on the grounds of "block billing," an alleged lack of specificity in billing statements, and other billing format objections.

For example, evidence will show that Continental refused to pay for, among other things, the contract lawyers engaged in the massive document review necessary to respond to the U.S. EPA's request for information, in part because the contract lawyers' time entries often read "extensive review and analysis of client documents for responsiveness to 104(e)[4] request; code documents for responsiveness."  Continental objected to the wording of these time entries when in fact what the contract lawyers were doing was precisely what the time entries stated: reviewing and coding documents for eight hours a day.

Similarly, Continental refused to pay for time recorded by Schnitzer's lead counsel, Jim Dragna, due to the shorthand style of some of his time entries.  Schnitzer's expert, David Markowitz, will testify (if this motion is denied) that Mr. Dragna's activities are readily apparent by reviewing the Bingham McCutchen time entries as a whole, most of which are very precise. Alternatively, the invoice cutters could have called or emailed Mr. Dragna.

---

[4] The government's request for information was under Section 104(e) of CERCLA, 42 USC § 9604(e).

Continental's criticisms of the Bingham McCutchen billing entries are not relevant to the reasonableness and necessity of defense costs. Consequently, the criticisms are simply not relevant under Federal Rule of Evidence 402 to prove the reasonableness or necessity of defense costs. Schnitzer's burden on fees in this case is to show that Bingham McCutchen's fees were reasonable for tasks that were necessary. The manner in which an attorney's actions are described in a billing entry is relevant to neither inquiry. First, the evidence will show that Schnitzer never agreed to the billing guidelines or to the demanded billing formats (Schnitzer had numerous consultants who each used a variety of different formats). Moreover, billing guidelines and formats do not define what is "reasonable or necessary." *See Philadelphia Indemnity Ins. Co. v. Chicago Title Ins. Co.*, No., 09-C-7063, 2012 U.S. Dist. LEXIS 82751 (N.D. Ill. June 10, 2012). In *Philadelphia Indemnity*, the court rejected the insurer's argument against defense costs, holding that "any noncompliance with the billing guidelines does not render the fees legally unreasonable and does not otherwise affect the amount that [the insurer] owes." *Id*. at *15-*16.

Therefore, any evidence and argument from Continental purporting to justify nonpayment of defense costs based on billing format or guidelines should be excluded.

## C.    Procedures For Calculation Of Prejudgment Interest Should Be Adopted

Schnitzer moves *in limine* regarding the procedure to be used at trial in determining the amount of its award of prejudgment interest. Schnitzer will show at trial that Continental has underpaid—or failed to pay at all—well over 300 defense cost invoices. The principal amount of unpaid defense costs exceeds $8 million, some of which has gone unpaid for over nine years. At the Oregon statutory rate of nine percent, prejudgment interest, as calculated by Schnitzer's expert Charles Wilhoite, exceeds $1.4 million.

1.    **Prejudgment Interest Is Mandatory Under The Facts Here**

"Prejudgment interest in a diversity action is … a substantive matter governed by state law." *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007).  Thus Oregon law governs both the interest rate and standard by which an award of prejudgment interest will be evaluated.

The statutory interest rate in Oregon is nine percent (ORS 82.010), and a prejudgment interest award is mandatory:  "the allowance of prejudgment interest in an action is not a matter of judicial discretion, but is required by ORS 82.010(1)(a) on 'all moneys after they become due.'"  *State Highway Comm'n v. DeLong Corp.*, 275 Or. 351, 357 n.2, 551 P.2d 102, 104 n.2 (1976).  As this Court has recognized, prejudgment interest should be awarded even if damages are disputed by the parties and are not ascertainable until after the jury verdict.  *See Schnitzer Steel Indus. v. Cont'l Cas. Co.*, No. 3:10-cv-1174, 2012 U.S. Dist LEXIS 127702, at *57-58 (D. Or. Mar. 9, 2012) (quoting *Strader v. Grange Mut. Ins. Co.*, 179 Or. App. 329, 339, 39 P.3d 903 (2002)); *see also Krieg v. Union Pac. Land Res. Corp.*, 269 Or. 221, 233-35, 525 P.2d 48, 53-54 (1974) (awarding prejudgment interest where jury resolved dispute regarding the reasonableness of bills).  When "determining whether the amount of the damages and starting date of the interest are ascertainable, [courts] do not operate from the perspective of the parties during litigation but from an objective, post-judgment perspective." *Wilson v. Smurfit Newsprint Corp.,* 197 Or. App. 648, 673, 107 P.3d 61, 76 (2005).  In other words, if there are fact issues, the Court asks whether the amount is ascertainable after, and in light of, the determination of those fact issues by the trier of facts.  *See, e.g., Key West Retaining Sys. v. Holm II, Inc.*, 185 Or. App. 182, 194, 59 P.3d 1280, 1286 (2002) (finding disputed bill amount reasonably ascertainable because the contractor "was able to ascertain how much it owed [the subcontractor] once the trial court made its findings of fact").

2.    **Summary Evidence May Be Used To Streamline The Jury Verdict Form**

Damages in this action are based on liquidated sums shown in unpaid or underpaid invoices, and therefore ascertainability should not be a jury issue. *See, e.g., Boston Gas Co. v. Century Indem. Co.*, 529 F.3d 8, 22 (1st Cir. 2008) (affirming prejudgment interest award on insurance invoices, in absence of special interrogatories to jury, "because we are convinced that no factual questions are implicated. The material facts are known and undisputed."); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 566 (5th Cir. 2004) (holding interest on claim for breach of the duty to defend runs from date insured pays defense invoices). Moreover, Continental offers no testimony from a witness qualified to dispute either the amount of Schnitzer's defense costs or when they were due. As a result, Schnitzer continues to believe there are no fact issues with regard to prejudgment interest and that the Court can award prejudgment interest as a matter of law.

But, if at trial the Court determines that there is a factual dispute regarding prejudgment interest, then those facts should be added to the jury verdict form so that the jury can definitively resolve them. Here, Schnitzer has already proposed specific language addressing certain possible factual disputes on its filed verdict form. *See* Pls.' Proposed Verdict Form (Dkt. No. 278-1) at 3. Applying the answers to these interrogatories to the individual invoices would then be a ministerial matter that could be calculated post-verdict.[5] *See Key West Retaining Sys.*, 185 Or. App. at 194; *Wilson*, 197 Or. App. at 673.

---

[5] If the Court, after the evidence is presented, believes there are additional or different factual issues that need to be submitted to the jury on prejudgment interest, then Schnitzer would propose that the parties have a further meet and confer session in an effort to develop mutually agreeable verdict form language that would be reasonable and understandable for a jury. As explained in Schnitzer's objections thereto, Continental's twelve-page verdict form with twenty-five questions and more than thirty additional subpart questions is not reasonable,

(continued . . .)

**D.    Continental's Pretrial Admissions Are Binding And Admissible**

Schnitzer plans to offer pretrial admissions made by or on behalf of Continental.  These

are collected in Plaintiffs' Exhibit 31.  *See* Iole Declaration, Ex. G (P. Ex. 31).  Continental's

counsel has stated that it will object to the admissibility of these pretrial admissions.  To sustain

such an objection would contravene the rule in this Circuit that "[f]actual assertions in pleadings

and pretrial orders, unless amended, are considered judicial admissions conclusively binding on

the party who made them."  *In re Bakersfield Westar Ambulance, Inc.*, 123 F.3d 1243, 1248 (9th

Cir. 1997) (emphasis removed) (quoting *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226

(9th Cir. 1988)).  The admissions are in the following forms, all of which are binding on

Continental:

1.    *Statements in the Parties' Joint Pretrial Statement.*  This joint, agreed statement was signed by counsel and filed with the Court on October 5, 2012.  There is no basis on which Continental may renege on these statements.  Statements signed by counsel are binding on the party and the matters must be deemed admitted.  *See Bakersfield*, 123 F.3d at 1248.; Fed. R. Civ. P. 16.

2.    *Answers to Requests for Admission.*  These statements are conclusively established.  Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.").

3.    *Deposition Testimony by Corporate Representatives or Employees.*  These statements are directly admissible and binding against Continental.  *See* Fed. R. Evid. 801(d)(2); *HTI Holdings, Inc. v. Hartford Cas. Ins. Co.*, No. 10-cv-06021, 2011 U.S. Dist. LEXIS 94388, at *15 (D. Or. Aug. 23, 2011) (testimony of a Fed. R. Civ. P. 30(b)(6) witness is "both admissible and binding" against the corporation).

4.    *Statements in Pleadings.*  These statements are directly admissible and binding against Continental.  *Am. Title Ins. Co.*, 861 F.2d at 226; *see also* Fed. R. Evid. 801(d)(2); Fed. R. Civ. P. 8(b).

---

(. . . continued)

understandable, or relevant.  *See* Pls.' Objs. to Defs.' Proposed Verdict Form (Dkt. No. 281) at 19-24.

Accordingly, Schnitzer requests an order that Plaintiffs' Exhibit 31 be admitted and that the statements contained therein be published to the jury as facts conclusively established. *Id*.

**E.      Schnitzer's Summary Damages Exhibits Are Admissible**

"[S]ummaries are permissible when the information summarized 'cannot be conveniently examined in court' and where the proponent of the summary makes the documents summarized available for examination or production in court." *Arnold v. Pfizer, Inc.*, No. 10-cv-1025-AC, 2013 U.S. Dist. LEXIS 128114, at *60 (D. Or. Sept. 9, 2013) (quoting Fed. R. Evid. 1006 and concluding summary of records documenting distribution of sample products are admissible). Summaries are regularly used for presentation of damages evidence when invoices or other supporting material is voluminous. *See, e.g.*, *Intel Corp. v. Am. Guar. & Liab. Ins. Co.*, No. 09-cv-00299, 2010 U.S. Dist. LEXIS 139903, at *8 n.5 (N.D. Cal. Dec. 7, 2010) (admitting summary of 17,000 pages of invoices and payment information); *USA Gateway Travel, Inc. v. GEL Travel, Inc.*, No. C06-053JLR, 2006 U.S. Dist. LEXIS 92560, at *12 (W.D. Wash. Dec. 20, 2006) (permitting use of a summary to quantify plaintiff's damages).

The defense costs claimed as damages in this case span from 2003 to December 2013—ten years. The defense costs include monthly or other billings of not only the Bingham McCutchen law firm, but also the environmental consultants and other vendors necessary to the defense efforts. Each invoice has been organized along with its related materials, including narrative summaries of the work performed, correspondence to and from insurers, invoice review worksheets prepared by the insurers and/or their consultants, and checks for payment. The volume of invoice documentation is large, comprising more than 31,000 pages (more than twelve banker's boxes or about eighty-eight three-inch binders) of material. *See* P. Exs. 357-367.

Accordingly, for the convenience of the Court and jury, Schnitzer has prepared summary evidence of these documents including: (1) Plaintiffs' Exhibit 357 (an Excel spreadsheet listing

all of the legal and environmental consultant invoices by date); (2) Plaintiffs' Exhibits 357A-357JJJJ (invoice binders consisting of each invoice with the documents related to that particular invoice); (3) Plaintiffs' Exhibits 358-364 (Excel spreadsheets listing the legal and environmental consultant invoices by vendor); and (4) Plaintiffs' Exhibits 365-367 (Excel spreadsheets listing all of the checks received by Schnitzer from Continental, ACE, and Wausau). Schnitzer has also provided all of the underlying documents to Continental, along with the summaries, and the underlying documents are included on Schnitzer's exhibit list. These summaries, accordingly, are admissible pursuant to Fed. R. Evid. 1006 and should be admitted.

## F.    Statements Of Resolute Management, Inc. Are Party Admissions

In or about 2010, Continental-affiliated companies paid National Indemnity Company ("NICO," a Berkshire Hathaway subsidiary) $2 billion and also transferred to NICO the right to collect receivables with a net book value of approximately $200 million. *See* CNA Press Release, CNA Enters into Agreement to Transfer its Asbestos and Environmental Pollution Liabilities to National Indemnity Company (July 15, 2010).[6] In return, NICO agreed to effectively take over the management of and liability for (via reinsurance) Continental's legacy environmental and asbestos liabilities. *Id*. The liabilities at issue in this case are such legacy environmental liabilities. *See* J. Alpine Dep. Tr. Designation (Dkt. No. 303-1) at 14:24-15:16.

As part of this arrangement, NICO installed its affiliate, Resolute Management, Inc., as a claims-handling agent for these liabilities, including as a claims handler for this case. *See* Continental Rule 30(b)(6) Dep. Tr. Designation (T. Barriball) (Dkt. No. 303-2) at 24:11-25:15. Resolute has the authority to make coverage decisions, to pay or refuse to pay claims, and to pay or refuse to pay defense costs. *See id*. at 21:19-22:11. Moreover, two Resolute employees were

---

[6] Available at http://investor.cna.com/phoenix.zhtml?c=104503&p=irol-news&nyo=4 (last visited March 18, 2014).

designated by Continental as its corporate designee deponents.  *See id.* at 4:24-5:10; *see also* Continental Rule 30(b)(6) Dep. Tr. Designation (L. Ellison) (Dkt. No. 303-4) at 6:24-7:17.  And, via email, Continental's counsel asserted that current Resolute employees are "all still my clients for this matter."  Iole Declaration, Ex. H (P. Ex. 4247) (Mar. 13, 2014 Email from L. Gottlieb) ("Thomas Barriball, Luanne Ellison & Gladys Muskwe [are] all still my clients for this matter and are still working for Resolute.").

Thus, for the time period of its involvement, Resolute is the agent of Continental and is fully authorized to act on Continental's behalf.  *See, e.g.*, UCJI No. 30.03 ("A corporation can act only through its officers, *agents*, or employees.  Any action by the [officer / *agent* / employee] of the corporation is the act of that corporation if the act was within the scope of that person's [authority / employment].") (emphasis added).  Accordingly, all statements by Resolute, including but not limited to writings and deposition testimony, are admissible pursuant to Federal Rule of Evidence 801(d)(2) if offered against Continental.  *See McMellon v. Safeway Stores*, 945 F. Supp. 1402, 1407 (D. Or. 1996) (admitting statements of party-opponent or its agents under Fed. R. Evid. 801(d)(2) over hearsay objection); *Weitman v. Weitman*, No. 3:12-cv-00499-MO, 2013 U.S. Dist. LEXIS 178159, at *6 (D. Or. Dec. 19, 2013) (Mosman, J.) (same).  Alternatively, these statements are admissible pursuant to Fed. R. Evid. 807.

## G.    Continental Witnesses Brought To Trial Should Be Subject To Full Examination

Continental steadfastly refuses—despite Schnitzer's requests—to make any Continental corporate representative witness available for trial in Schnitzer's affirmative case-in-chief.  Continental also refuses to consent to trial depositions for any corporate witnesses.  *See* Memo. in Support of Mot. for Leave (Dkt. No. 288) at 3-4.  At the same time, Continental's counsel plan to bring these corporate witnesses to Portland to testify live only in *Continental's* defense case.  Indeed, the Continental witness list identifies Luanne Ellison and Thomas Barriball as live "Will

Call" witnesses—the two Continental corporate representatives that Schnitzer requested. *See* Defs.' Witness List (Dkt. No. 307) at 2-3.

This Court has full control over the order of proof and presentation of witnesses at trial, Fed. R. Evid. 611(a), and "may allow inquiry into additional matters as if on direct examination," Fed. R. Evid. 611(b), including when doing so "would aid in the development of evidence[.]" *United States v. Schepp*, 746 F.2d 406, 410 (8th Cir. 1984); *see also Gen-Probe Inc., v. Becton Dickinson Co.*, Nos. 09-cv-2319, 10-cv-0602, 2012 U.S. Dist. LEXIS 189388, at *16 (S.D. Cal. Nov. 26, 2012) ("[T]he Court has discretion to permit inquiry on cross-examination into matters even beyond the scope of direct."). This discretion includes permitting counsel to "go beyond the subject matter of direct examination while cross-examining [that] witness." *Sampley v. Wright*, No. 95-3549, 1996 U.S. App. LEXIS 28862, at *6-7 (7th Cir. Oct. 8, 1996).

Pursuant to Federal Rule of Evidence 611(a) and 611(b), and in light of Continental's refusal to produce a corporate representative witness for Schnitzer's case-in-chief or otherwise agree to trial depositions, Schnitzer should be given leave to either: (1) not close its case until it can examine these witnesses, or (2) to reopen its case at the time Continental brings these witnesses to trial. At that time, Schnitzer should be given leave to conduct an examination (as though on cross) that is not limited in scope by the direct examination by Continental.

**H.    Inflammatory References To "Exorbitant" And "Outrageous" Attorneys' Fees Are Prejudicial And Should Be Excluded**

Continental's counsel routinely have used words such as "exorbitant" and "outrageous" to describe Schnitzer's incurred attorneys' fees and rates. *See, e.g.*, Defs.' Resp. to Pl.'s Mot. for Partial J. on the Pleadings (Dkt. No. 20) at 11 ("legal expenses at exorbitant rates"); Defs.' Mem. in Support of Mot. for Partial Summ. J. (Dkt. No. 73) at 5 ("exorbitant fees"); *id.* ("outrageously high rates charged by counsel"); *id.* at 6 ("excessive, out-of-forum rates"); *id.* at 22 ("Schnitzer's

claim for retroactive and prospective payment of exorbitant, out-of-forum attorney fees"). Continental's portions of the Joint Pretrial Order and Continental's recently filed trial memorandum repeat these inflammatory phrases.  *See* Joint Pretrial Order (Dkt. No. 198) at 25 ("Schnitzer's claim for exorbitant, out-of-forum defense counsel fees"); Defs.' Tr. Memo. (Dkt. No. 308) at 7 ("excessive, out-of-forum rates"); *id* at 9 ("exorbitant rates").

Counsel's opinion and argument, as expressed through such terms, are not appropriate commentary for the jury.  *See* Or. R. P. C. 3.4 ("A lawyer shall not . . . (e) in trial . . . state a personal opinion as to the justness of a cause . . . .")*; see also Security State Bank v. Baty*, 439 F.2d 910, 913 (10th Cir. 1971) ("The opening statement is no place for argument."); *Alexander v. Wal-Mart Stores, Inc*., No. 2:11-cv-752 JCM, 2013 U.S. Dist. LEXIS 14019, at *15 (D. Nev. Feb. 1, 2013) ("[S]tatements of personal opinion . . . are never proper and are prohibited in front of the jury.").  Any such statements will be inflammatory and unduly prejudicial to Schnitzer and are likely to mislead the jury.  Fed. R. Evid. 403.  Schnitzer requests an order that Continental's counsel may not use such argumentative or inflammatory language at trial in referring to Schnitzer's attorneys' fees.

## I.   Continental Should Be Precluded From Presenting Evidence Of An Affirmative Defense That It Has Not Pleaded

Continental's witness statements and trial memorandum suggest that it intends to present evidence and argument regarding an alleged cooperation breach by Schnitzer.  *See* Defs.' Tr. Memo. (Doc. No. 308) at 29-30; *see also* L. Ellison Anticipated Testimony (Dkt. No. 307-1, Ex. D) at ¶ 6.  This is improper because Continental did not plead failure to cooperate as an affirmative defense, nor did it plead breach of the duty to cooperate as a counterclaim.  *See* Answer to Am. Compl. (Dkt. No. 232); *see also* UCJI No. 13.01 (noting that "only these questions" presented by the pleadings "are submitted for the jury's determination").

Continental's failure to plead a claimed breach of the duty to cooperate prejudiced Schnitzer by depriving Schnitzer of the opportunity to explore this issue fully in discovery. Accordingly, Continental should not be allowed to inject this issue—through evidence or argument—into the case now. *See Spin Master, Ltd. v. Zobmondo Entm't, LLC*, No. CV 06-3459, 2012 U.S. Dist. LEXIS 188155, at *32-35 (C.D. Cal. Apr. 27, 2012) (excluding evidence of unpled unclean hands defense); *Jadwin v. County of Kern*, No. 1:07-cv-26, 2009 BL 161463, at *2 (E.D. Cal. May 19, 2009) (excluding evidence supporting unpled defenses).

## J.    Continental Cannot Use Irrelevant, Unauthenticated Pictures

Continental's exhibit list identifies two photographs described as "Photograph[s] of Schnitzer Steel yard." *See* Defs.' Trial Ex. List (Dkt. No. 306) at Defs.' Exs. 5185 and 5186. The photographs are not bates-labeled with a production number, and they were not produced in discovery. Instead, they were provided to Schnitzer for the first time on March 14, 2014—just a week ago—when Continental served its witness list and exhibits in this case. The photographs are unauthenticated, and there are no distinguishing features in the photographs that identify them as pictures of *any* Schnitzer scrap yard, let alone *the* Schnitzer Portland scrap yard involved in this matter. Continental's witness statements confirm that it has no witness to authenticate the photographs. There is no Continental witness identified as having taken the photographs or having personal knowledge that the photographs are a fair and accurate representation of any portion of the Portland "Schnitzer Steel yard" on the date the photographs were allegedly taken. Without such testimony the authenticity and relevance of the photos cannot be established, and they should be excluded. *See* Fed. R. Evid. 901(a); *cf. United States v. Oaxaca*, 569 F.2d 518, 525 (9th Cir. 1978) (authenticating photo with testimony that witness was present when photograph was taken); *Jones v. Rose*, No. CV 00-1795-BR, 2005 U.S. Dist. LEXIS 41025, at *86 (D. Or. Sept. 9, 2005) (excluding photos not properly authenticated).

Moreover, the unproduced, unauthenticated photographs, which are clearly intended to depict a "zoomed-in" portion of a scrap yard in an effort to prejudice the jury against Schnitzer, are not probative of any fact at issue in this case. They do not make any fact of consequence more or less likely in this breach of contract action and the photos should be excluded as irrelevant or, at a minimum, substantially more prejudicial than probative and likely to confuse the issues and mislead the jury. *See, e.g.*, Fed. R. Evid. 401, 402, 403.

## K.    Continental Should Be Precluded From Referring To Time Entry Descriptions On Bingham McCutchen's "Insurance Coverage" Invoices

Continental apparently intends to offer evidence regarding Bingham McCutchen law firm invoices submitted to Continental in error that relate to Schnitzer's pursuit of insurance coverage from Continental. *See* L. Ellison Anticipated Testimony (Dkt. No. 307-1, Ex. D) at ¶ 8. Schnitzer does not dispute that these invoices were erroneously sent to Continental—Schnitzer has, to date, been required to bear the very large legal costs of pursuing coverage against Continental. Nor does Schnitzer object generally to testimony that Schnitzer mistakenly sent a few insurance coverage invoices to Continental. Schnitzer does, however, object to reference or use, in any way, of the descriptive time entries on those bills, all of which describe insurance coverage attorney work performed for Schnitzer. The details of the time entries and tasks performed by Schnitzer's coverage counsel are not relevant because Schnitzer does not claim recovery for the amounts in those invoices. Under these circumstances, revealing the content of Schnitzer's insurance coverage invoices is substantially more prejudicial than probative and likely to confuse the issues and mislead the jury. *See* Fed. R. Evid. 402, 403. Continental, accordingly, should be precluded from referring to or offering evidence of the insurance coverage work performed, including time entry descriptions on any Schnitzer insurance coverage invoices.

**L.    Continental's Affirmative Defenses Regarding Insurer Percentage Shares And Legal Fees Cannot Apply Beyond The Filing Date**

At trial, Continental will be unable to prove that Schnitzer waived or otherwise relinquished its rights to pursue the full amount of its defense costs from Continental.  The evidence instead will show that Schnitzer fully reserved all rights against Continental under the relevant policies.  This will be a fact issue.  However, Schnitzer is entitled to an *in limine* ruling, before trial, that any waiver or estoppel defense based on insurer percentage shares or legal fee amounts fails beyond the date Schnitzer filed this lawsuit.

Schnitzer filed its complaint in this action on September 28, 2010.  On that date, Schnitzer plainly asserted its right, under ORS 465.480, to seek to recover all defense costs from Continental alone:

> 42.    Under ORS 465.480(b), Schnitzer is entitled to select, and hereby selects, the [Continental] Policies to pay all future defense costs and to reimburse Schnitzer for all defense costs that have been incurred by Schnitzer that proximately arise from the claims with respect to the [Portland Harbor Superfund] Site, until such time as the limits of the Policies have been exhausted by the payment of settlements or judgments thereunder.

Complaint (Dkt. No. 1) at ¶ 42.  Specifically, under ORS 465.480(3)(a), Continental has an obligation to pay "all defense or indemnity costs, or both, proximately arising out of the risk pursuant to the applicable terms of its policy . . . independent and unaffected by other insurance that may provide coverage for the same claim."  Accordingly, going forward, if Continental believes that it has paid more than its appropriate share of defense or indemnity costs, then Continental "may seek contribution from any other insurer that is liable or potentially liable," but—by statute—Schnitzer has no obligation to pursue multiple insurers.  *See* ORS 465.480(4).

Because Schnitzer unequivocally and clearly asserted its election right under ORS 465.480 to pursue all defense costs from Continental alone as of the date it filed this action, any Continental affirmative defenses based on agreement to insurer percentage shares or reduced

legal fees (whether fashioned as waiver, estoppel, agreement, or any other argument) must fail—as a matter of law—beyond September 28, 2010.  As of that date, when Schnitzer affirmatively asserted its statutory rights, Continental cannot claim that Schnitzer abandoned a known right, as required for its affirmative defense of waiver (*see* Defs.' Proposed Jury Instruction No. 15, Dkt. No. 279 at 40), or that Continental was "ignorant" of the truth or reasonably acting upon misinformation provided by Schnitzer, as required for its affirmative defense of estoppel (*see* Defs.' Proposed Jury Instruction No. 14, Dkt. No. 279 at 38-39), regarding the amount or percentage of attorneys' fees it was owed by Continental.  Indeed, post-September 28, 2010, in the face of Schnitzer's pleading, Continental cannot establish that Schnitzer unequivocally relinquished its legal rights to pursue Continental for the full amount of its defense costs.  *See, e.g.*, *Schmeck v. Bogatay*, 259 Or. 188, 196, 485 P.2d 1095, 1099 (1971); *Cusick v. Meyer*, 124 Or. App. 515, 522, 863 P.2d 486, 490 (1993) (waiver requires "the acts showing an intention of the party to waive are clear, unequivocal and decisive"); *see also Coos County v. State*, 303 Or. 173, 181, 734 P.2d 1348, 1354 (1987) ("The party seeking estoppel must demonstrate not only reliance, but a right to rely upon the representation of the estopped party . . . .  Reliance is not justified where a party has knowledge . . . of the fact or representation allegedly relied upon."); *id*. at 189, 734 P.2d at 1359 ("If, at the time when he acted, [a] party had knowledge of the truth, . . . he cannot claim to have been misled."); *cf. Rick Franklin Corp. v. State*, 207 Or. App. 183, 191-92, 140 P.3d 1136, 1140-41 (2006) (reliance not reasonable where contrary to a statement made in writing).

Schnitzer is entitled to a ruling *in limine* that Continental's affirmative defenses regarding insurer percentage shares or reduced legal fees (waiver, estoppel, agreement, or any other argument) cannot apply beyond September 28, 2010, the date it filed this action.

**M.      Continental's Witnesses Cannot Offer Legal Opinions Regarding Policy Rights**

Witnesses must testify as to facts within their personal knowledge.  Fed. R. Evid. 701

(witness may testify only to "an opinion . . . that is (a) rationally based on the witness's

perception; [and] (b) helpful to clearly understanding the witness' testimony or to determining a

fact in issue"); Fed. R. Evid. 602.  Legal opinions or conclusions—including opinions regarding

contract interpretation—are improper subjects for witness testimony.  *United States v. Bohn*, 622

F.3d 1129, 1138 (9th Cir. 2010) ("[A] lay witness 'may not . . . testify as to a legal conclusion,

such as the correct interpretation of a contract.'") (quoting *United States v. Crawford*, 239 F.3d

1086, 1090 (9th Cir. 2001)); *Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1058

(9th Cir. 2008) ("[A]n expert witness cannot give an opinion as to her *legal conclusion*, *i.e.*, an

opinion on an ultimate issue of law.") (emphasis in original); *id*. at 1059-60 (affirming exclusion

of legal opinion testimony by a lay witness as "not helpful to a clear understanding of the

testimony or a fact in issue" because such testimony "simply tells the jury how to decide").

Continental should be precluded from offering legal opinions and conclusions.

Continental, for example, intends to proffer Thomas Barriball, the Assistant Vice President—

Director of Claims for Resolute Management, Inc., to testify to "the provisions and limitations of

the policies issued to Schnitzer by Continental, and the scope of Continental's obligations to

Schnitzer under those policies, including Continental's right to select and appoint defense

counsel under the policies."  T. Barriball Anticipated Testimony (Dkt. No. 307-1, Ex. A) at ¶ 4.

He also intends to testify "that there is no specific 'time frame' for review and payment of

submitted invoices under the policies."  *Id*. at ¶ 12.  Continental likewise has proffered William

"Chip" Goodhue to testify as to whether work performed by Schnitzer's consultants "was

covered" under the relevant insurance policies.  He is also apparently slated to describe his

"2/5 – 3/5 rubric," which he used to "account for the partially non-defense work costs" under the

policies.  W. Goodhue Anticipated Testimony (Dkt. No. 307-1, Ex. F) at ¶¶ 5, 7.  Continental

also designates James Downes's (an invoice reviewer) testimony as to what is "not covered

under the policy."  J. Downes Dep. Designations (Dkt. No. 309-3) at 94:6-10.  Any such

testimony or other evidence (documentary or otherwise) from any Continental witnesses

constitutes improper legal opinions, conclusions, and contract interpretation and should be

precluded.  *See Nationwide Transp.*, 523 F.3d at 1059-60.

### N.    Schnitzer May Call Lawrence Gottlieb, But Continental May Not Call Mr. Gottlieb Unless Schnitzer Chooses To Call Him

The circumstances of Mr. Gottlieb's status as a "may call" witness have been fully

briefed in connection with Continental's motion to strike that listing and are only summarized

briefly here.  *See* Pls.' Resp. in Opp. to Mot. to Strike (Dkt. No. 312).  Since at least 2007,

several years before this lawsuit was filed, Lawrence Gottlieb of Betts, Patterson & Mines

("BPM")—litigation counsel for Continental—has acted as an agent of Continental with respect

to Schnitzer's claim for defense costs.  As a result, Mr. Gottlieb might be a necessary witness for

Schnitzer to prove its case.  Schnitzer therefore requests a ruling that Schnitzer may list

Mr. Gottlieb as a "may call" witness, who may be called to testify to factual matters if Schnitzer

believes it to be necessary according to proof at trial.  *See* Fed. R. Civ. P. 26(a)(3)(A)(i)

(witnesses may be identified as "those [a party] may call if the need arises").

A party's attorney may be called as a fact witness where—as here (*see* Pls.' Resp. in

Opp. to Mot. to Strike (Dkt. No. 312) at 1-10)—he or she possesses relevant facts.  *American*

*Cas. Cor. v. Krieger*, 160 F.R.D. 582, 588 (S.D. Cal. 1995) (calling a party's attorney "will be

both necessary and appropriate, for example, where the attorney is a fact witness, such as an

'actor or a viewer'") (*quoting NFA Corp. v. Riverview Narrow Fabrics, Inc.,* 117 F.R.D. 83, 85

n.2 (D.N.C. 1987)).  Indeed, "where the attorney's conduct itself is the basis of a claim or

defense, there is little doubt that the attorney may be examined as any other witness." *Johnston Dev. Group. Inc. v. Carpenters Local Union*, 130 F.R.D. 348, 352 (D.N.J. 1990). This Court, too, has permitted a party to compel the testimony of an adverse party's attorney. *E.g., Rapid Funding Group, Inc. v. Keybank Nat'l Ass'n*, No., 07-CV-1348-PK (D. Or. Sept. 10, 2008), *adopted* 2008 U.S. Dist. LEXIS 85510 (D. Or. Oct. 22, 2008) (Mosman, J.); *Columbia Steel Casting Co. v. Portland Gen'l Elec. Co.,* 1992 U.S. Dist. LEXIS 9335 at *6 (D. Or. June 12, 1992).

Given Mr. Gottlieb's direct involvement and personal knowledge of disputed facts, and as explained in more detail in opposition to Continental's motion to strike (*see* Pls.' Resp. in Opp. to Mot. to Strike (Dkt. No. 312)), Schnitzer properly identified Mr. Gottlieb as a "may call" witness. But Continental did not identify Mr. Gottlieb as such—in its initial disclosures, in its trial witness list or witness disclosures (*see* Defs.' Witness List (Dkt. No. 307)), or any other filings. Continental, accordingly, must be precluded from itself calling Mr. Gottlieb—or any other unidentified BPM attorney—to testify to the underlying facts unless, of course, Schnitzer first calls such a witness. *See, e.g.,* Tr. Mgmt. Order (Dkt. No. 211) at ¶ 4(c)(1) (requiring parties to identify "all parties, corporate representatives and other witnesses to be called" with statements summarizing the substance of testimony, and ordering that "[t]estimony at trial will be limited to the subject matter identified"). Continental, in fact, agreed as much during discovery in an effort to avoid depositions of BPM witnesses.

On April 19, 2011, Schnitzer's counsel emailed Mr. Gottlieb and Mr. Biddle, stating:

> We need to determine how to handle the prospect of your status as witnesses. At present, what I have in mind is a stipulation that defendants cannot call either of you to testify, but that Schnitzer can call you [to] testify. If Schnitzer elects to call you to testify as though on cross, then of course defendants could conduct an examination limited in scope to the direct. *On this basis, I am considering the prospect that we may forego your depositions.* This is just to tell you what I am

thinking as a way to handle this, and it is not approved yet by the client.  To avoid unnecessary effort on this, please let me know if the prospect of a stipulation as outlined above is a non-starter.  That is, if defendants want to reserve the right to call either or both of you to testify at trial, then I'd be grateful if you would let me know.

Iole Decl. (Dkt. No. 313) at Ex. M (emphasis added).

On April 20, 2011, Mr. Biddle responded as follows:

The only reason we have that "status" is because you put us on your list.  Please note that Resolute did not designate Larry or me as potential witnesses.  *We have no intention of participating as witnesses* and will not stipulate that Schnitzer can call Resolute's outside coverage/trial counsel as witnesses.

Iole Decl. (Dkt. No. 313) at Ex. M (emphasis added).  Consequently, on April 21, 2011,

Schnitzer confirmed as follows by letter:

This is to confirm that you will not be offering oral testimony in this action, nor will you be offering written testimony by way of declaration or otherwise except with regard to procedural matters.  Please let us know immediately if the foregoing is incorrect.  If not, *based on these representations, Schnitzer will forgo taking your depositions.*  Should you offer such testimony, however, Schnitzer obviously will need to reconsider.

*Schnitzer reserves the right to list you as witnesses at trial for the reasons previously communicated.*

Iole Decl. (Dkt. No. 313) at Ex. N (emphasis added).  Schnitzer has not found any response from

Continental or its attorneys, and believes that none was received.

Based on the foregoing, and as explained in more detail in opposition to Continental's

motion to strike (*see* Dkt. No. 312), Schnitzer requests a ruling that Schnitzer may call

Mr. Gottlieb to testify at trial as to factual matters if Schnitzer deems it to be necessary, and that

Continental is precluded from calling any BPM witness unless they are called by Schnitzer, and

then should be limited to the scope of Schnitzer's examination.

**O.    BPM Counsel Cannot Offer Or Suggest Personal Knowledge Of Facts In Questioning Or Argument**

The status of Mr. Gottlieb and other members of the BPM firm as both trial counsel and underlying fact witnesses regarding payment of defense costs creates another serious issue for trial. Mr. Gottlieb apparently intends to offer documents that he himself drafted and sent to Schnitzer before this lawsuit was filed, and both parties' witnesses intend to present testimony regarding meetings, calls, and other communications in which Mr. Gottlieb and others from BPM were personally involved:

1.    The exhibit list that Mr. Gottlieb filed and served on behalf of Continental (*see* Defs.' Ex. List (Dkt. No. 306) filed by "(Gottlieb, Lawrence)") identifies over thirty documents that Mr. Gottlieb or members of his firm (including Mr. Biddle and Mr. Brett Sommermeyer) authored or received, and Mr. Gottlieb personally authored at least twelve substantive letters identified as "Will Use" or "May Use" on Continental's own exhibit list. *See, e.g., id.* at Defs.' Exhibits 5009, 5159, 5163.

2.    Continental's summaries of witness testimony also appear to refer to communications and meetings in which Mr. Gottlieb and others at BPM were involved. *See* L. Ellison Anticipated Testimony (Dkt. No. 307-1, Ex. D) at ¶¶ 4,6.

3.    Continental's own deposition designations refer to Mr. Gottlieb's actions. *See* T. Minier Dep. Designation (Dkt. No. 310-3) at 45-46 ("Typically my understanding was that the two coverage counsels were working together. . . . [I]f we're waiting on information, Larry may be aware of that so he would share what we need. . . . I had Larry work with them . . . .").

4.    Schnitzer's witness testimony summaries refer to various events involving Mr. Gottlieb. *See, e.g.,* D. McCall Anticipated Testimony (Dkt. No. 284-8) at ¶¶ 13-14 ("Mr. McCall is expected to testify to the many letters and emails and telephone calls that he exchanged with Mr. Gottlieb in an effort to obtain payment for defense costs.").

Trial counsel are precluded from "assert[ing] personal knowledge of facts in issue." *See* Or. R. P. C. 3.4(e). Trial counsel are likewise precluded from "stat[ing] a personal opinion as to the justness of a cause, the credibility of a witness, [or] the culpability of a civil litigant." *Id.* Such prohibitions are necessary to eliminate confusion over the lawyer's role and to avoid

prejudicing a party. *Caluori v. One World Techs., Inc.*, No. 07-cv-2035, 2012 U.S. Dist. LEXIS 77924, at *12 (C.D. Cal. June 4, 2012); *see also Nelson v. Hartford Ins. Co.*, No. CV 11-162-M-DWM, 2012 U.S. Dist. LEXIS 30983, at *6, *21 (D. Mont. Mar. 8, 2012) (recognizing that "when an attorney has personal knowledge of the subject, her questions to a witness . . . at trial may be construed as argument by a jury").

Here, to avoid such a prejudicial reference to personal knowledge, Mr. Gottlieb and other attorneys at BPM must be precluded from inquiring of witnesses or making arguments about letters that they personally sent, authored or received, and otherwise must be precluded from asking questions or making arguments about specific telephone calls, meetings or letters in which they were personally involved or drafted.  Mr. Gottlieb, for example, should be precluded from questioning Schnitzer witnesses regarding letters that he wrote and sent to them.  Such first-person questioning (*e.g.*, "Mr. McCall, didn't I send you this letter on June 27, 2008?") or argument (*e.g.*, "Isn't it true that, when I met with you and Mr. McCall, we discussed . . . .") clearly suggests personal knowledge of underlying facts, personally vouches for the truth of questions and arguments, and would be prejudicial and improper.  *See* Or. R. P. C. 3.4(e); Fed. R. Evid. 403.  Other BPM attorneys should likewise be precluded from prejudicial questions and arguments that suggest either personal knowledge or "inside information" about the matter (*e.g.*, "Mr. McCall, on June 27, 2008, my colleague Mr. Gottlieb sent you a letter stating as follows . . ., isn't that right?").

## IV.  CONCLUSION

For all of the reasons stated above, Schnitzer requests the following *in limine* relief from the Court:

> A.  An order that Continental may not offer evidence or argument (i) regarding the potential that Mr. Earle, Mr. McKallip, or their firms could have represented

Schnitzer in the Portland Harbor matter, (ii) regarding the capabilities of Mr. Earle, Mr. McKallip, or their firms, (iii) regarding the alleged billing rates of Mr. Earle, Mr. McKallip, or their firms, or (iv) regarding any activities of Mr. Earle, Mr. McKallip, or their firms after July 24, 2003.

B. An order that Continental may not offer evidence or argument as to Continental's requested billing format or billing guidelines that attempts to justify nonpayment of Schnitzer's defense costs.

C. A ruling that prejudgment interest will be awarded pursuant to Oregon law, and that, only if Continental establishes that fact issues exist, any necessary predicate facts will be found by the jury via the special interrogatories proposed by Schnitzer's jury verdict form or to be further negotiated by the parties upon instruction from the Court.

D. An order that Plaintiffs' Exhibit 31 and Continental's pretrial admissions contained therein are admissible and should be published to the jury as facts conclusively established.

E. An order that Schnitzer's summary damages exhibits, including Plaintiffs' Exhibits 357-367, are admissible.

F. An order that statements by Resolute Management within the relevant time period are admissible as admissions of party opponents, or alternatively are admissible under Fed. R. Evid. 807.

G. An order that Continental witnesses brought to trial to testify live should be subject to full examination that is not limited to the scope of any direct examination.

H. An order that Continental may not attempt to influence the jury by referring to "exorbitant" or "outrageous" attorneys' fees.

I. A ruling that Continental is precluded from presenting evidence or argument of its unpleaded affirmative defense based on an alleged breach by Schnitzer of a cooperation duty.

J. An order that Continental cannot use irrelevant and unduly prejudicial unauthenticated pictures.

K. An order that Continental is precluded from referring to or offering evidence of the actual work performed on insurance coverage issues, including time entry descriptions on any Schnitzer insurance coverage invoices.

L.  A ruling that Continental's affirmative defenses regarding insurer percentage shares and legal fees (whether based on waiver, estoppel, agreement, or any other argument) cannot apply beyond September 28, 2010, the date Schnitzer filed its complaint in this action.

M.  An order that Continental's witnesses, including but not limited to Thomas Barriball and William Goodhue, cannot offer legal opinions or conclusions regarding policy rights or obligations.

N.  A ruling that Schnitzer may call Lawrence Gottlieb but Continental may not do so.

O.  An order that Continental's trial counsel from Betts, Patterson & Mines cannot offer evidence or suggest personal knowledge of facts in questioning or argument and are precluded from making arguments or asking questions about evidence or events in which they were personally involved.

DATED: March 21, 2014                Respectfully submitted,

                                     JONES DAY

                                     */s/ John E. Iole*
                                     John E. Iole
                                     Rebekah B. Kcehowski
                                     500 Grant Street – Suite 4500
                                     Pittsburgh, PA 15219-2514
                                     Telephone: 412-391-3939
                                     Facsimile: 412-394-7959
                                     Associate Counsel (admitted *pro hac vice*)
                                     ***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 21, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and the document is available for viewing and downloading from the CM/ECF system.  I also certify that the foregoing document is being served electronically via the Court's CM/ECF notice system upon the following counsel of record:

> Lawrence Gottlieb, Esq.
> Lisa Neal, Esq.
> Brett Sommermeyer, Esq.
> Betts Patterson & Mines, P.S.
> 701 Pike Street, Ste. 1400
> Seattle, WA 98101
>
> ***Attorneys for Defendants***

*/s/ John E. Iole*
One of the Attorneys for Plaintiffs
