Lawrence Gottlieb, OSB #070869
lgottlieb@bpmlaw.com
Brett Sommermeyer, OSB #964326
bsommermeyer@bpmlaw.com
Lisa C. Neal, *pro hac vice*
lneal@bpmlaw.com
Betts, Patterson & Mines, P.S.
701 Pike Street, Suite 1400
Seattle, WA  98101-3927
Telephone:   206-292-9988
Facsimile:    206-343-7053

Attorneys for Defendants
Continental Casualty Company and
Transportation Insurance Company

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| SCHNITZER STEEL INDUSTRIES, INC., an Oregon corporation; and MMGL CORP., a Washington corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>CONTINENTAL CASUALTY COMPANY, an Illinois corporation; and TRANSPORTATION INSURANCE COMPANY, an Illinois corporation,<br><br>Defendants. | NO. 3:10-cv-01174-MO<br><br>DEFENDANTS' RESPONSE TO THE COURT'S LAW OF THE CASE RULINGS |

## I.  INTRODUCTION

Defendants Continental Casualty Company and Transportation Insurance Company

(collectively "Continental") appreciate the Court's attempt to provide the parties with some

tentative rulings and an effective "Job of the Jury" instruction during the April 4, 2014 Pre-

Page 1 –DEFENDANTS' RESPONSE TO
LAW OF THE CASE RULINGS
685893.1/040714 1736/80360002

Trial Hearing. In response to the Court's request, Continental submits the following observations and recommendations concerning the Court's proposed "law of the case," as encompassed by its tentative rulings and Job of the Jury instruction.

## II.    ARGUMENT

### A.    The Court Should Reconsider the Existence of a Rate Agreement

In its tentative "law of the case" rulings concerning the attorney fee rate agreement, the Court made three principal sets of observations for which Continental respectfully requests reconsideration before the Court issues final rulings.

First, the Court devoted considerable attention to the question of what benefits the parties received under the rate agreement. With respect to this issue, the Court found that Continental received Schnitzer's agreement to (1) conditions regarding travel expenses and postage (and related) fees attributable to the use of non-local counsel and (2) a specified attorney fee rate. As observed by the Court:

> It's just that the November '03 communication involved other demands or offers which, if I run through what Judge Papak held and didn't hold, result in Schnitzer being – accepting those. So, for example, if Continental said, well, you don't get, if you're going to use L.A. lawyers, you have to use the local pay rate, but you also don't get travel costs, and you don't get excess postage and you don't get anything else associated with having an out-of-state lawyer coming and going. And so there is that exchange, that Continental could have rationally agreed to Schnitzer's interpretation of the March '04 letter because it would get Schnitzer being bound by those requests in exchange for settling or punting, which parties sometimes do, a dispute they have.

*See* Exhibit A (excerpts from April 4, 2014 Pre-Trial Hearing transcript) to Declaration of Lawrence Gottlieb ("Gottlieb Decl."), at p.19: ll. 7-21. The Court further found that Schnitzer received "zero" benefits:

> Of course Continental gets an agreement to a lower rate of pay. Continental's theory gives Schnitzer the right to ask for pay rate increases down the line and really nothing else. And, of course, that's Schnitzer gaining zero, since they could have asked for those down the line anyway without those communications.

*Id.* at p.18: 1.22 – p.19: l.1.

However, as pointed out by Continental's counsel during the Pre-Trial Hearing, this description is not accurate because ***Schnitzer received a significant benefit – the right to retain Bingham McCutchen ("Bingham") as its defense counsel.*** Taking this substantial benefit into account, and considering it along with the alleged benefits received by Continental, a more accurate portrayal of the actual exchange (pursuant to the Court's tentative ruling) is as follows:

- Continental received the right to control travel and other expenses arising from the retention of non-local counsel.

- Continental received the right to pay its selected attorney fee rate, but only until sometime in the indeterminate future when Schnitzer unilaterally decided to retroactively seek full reimbursement.

- Schnitzer received the right to retain Bingham with the future opportunity to seek full, retroactive reimbursement. In return, Schnitzer agreed to pay minor fees (travel expenses and postage) necessitated by the use of non-local counsel.

Thus, Continental relinquished its absolute right to select defense counsel and negotiate attorney fee rates for that counsel in return for Schnitzer's temporary agreement to "punt" the rate issue down the road. Viewed from this perspective, it was Continental that received "zero"

benefits from the "agreement." By focusing on the minor conditions[1] in the rate agreement, the Court does not account for the material terms of that agreement, which are (1) the retention of Bingham (2) at the rates selected by Continental.

As emphasized by Continental in prior briefing, the above-described "agreement" does not meet the requirements of a valid contract. More particularly, Schnitzer's alleged reserved right is equivalent to a unilateral right to cancel the contract at any time, without notice, and without any obligation to return the valued (and bargained for) benefits received under the contract. Accordingly, the "agreement" was effectively: "Schnitzer accepts Continental's conditions, but Schnitzer reserves the right to later reject Continental's conditions after benefitting from Continental's performance." This proposed construction is not reasonable and certainly does not describe a valid contract.[2] Moreover, this interpretation of the agreement unjustly enriches Schnitzer while leaving Continental without a legal remedy for recovering the conferred benefits of its performance. In traditional contractual parlance, there would be no means of returning the parties to the pre-contractual status quo. At the risk of repeating itself, Continental again emphasizes that no rational party in Continental's position would enter into such a one-sided agreement.

---

[1] The Court's interpretation of Schnitzer's alleged reservation also leaves in doubt the extent to which Schnitzer could not also now seek retroactive reimbursement of the relatively minor fees covered by the additional conditions.

[2] Under general principles of contract law, the promisor's reservation of a unilateral right to cancel the entire agreement negates the existence of any consideration because it renders the promise empty or illusory. *See, e.g., Local 3-7, Intern. Woodworkers of America v. DAW Forest Products Co.*, 833 F.2d 789, 795-796 (9th Cir. 1987) (Or. law).

The second set of observations by the Court concerns Schnitzer's alleged reservation of rights. The Court began by directly tying the reservation issue to what the "rational jury could decide" based upon the alleged exchange of benefits (discussed above):

> So to get where Judge Papak says, well here's what this means and here's what happened and I find as a matter of law reservation of rights, here's the meaning of the reservation of rights acceptance, I think it involves determining which of the two meanings that are on the table in front of him have any plausibility in terms of what a rational jury could accept. And that has, I think, something to do with sort of classic considerations of who is giving up what and where does the consideration lie.

*See* Exhibit A to Gottlieb Decl., at p.18: ll.16-24.

Given its linkage between the reservation and "who is giving up what," the Court should reconsider its finding concerning the scope of the alleged reservation to the extent it re-evaluates the "benefits" exchanged under the rate agreement. In other words, if the Court agrees that Schnitzer received a material benefit (retention of Bingham), then it should further revisit the issue of the scope of Schnitzer's alleged reservation.

In assessing Schnitzer's reservation, the Court should also view it in light of the maxim that contractual language must be construed against the drafter. In applying this maxim, the Court must initially determine if the language of the reservation is ambiguous. *Williams v. R.J. Reynolds Tobacco Co.*, 351 Or. 368, 379, 271 P.3d 103, 109 (2011). The reservation only becomes a jury issue if the Court finds the reservation to be ambiguous. *Alpine Mountain Homes, Inc. v. Bear Creek Homes, Inc.*, 202 Or.App. 390, 397, 122 P.3d 111, 114 (2005). Additionally, if found to be ambiguous, the jury must interpret the reservation against the drafter, which in this instance is Schnitzer. *Quality Contractors, Inc. v. Jacobsen*, 139 Or.App. 366, 371, 911 P.2d 1268, 1271 (1996).

Page 5 –DEFENDANTS' RESPONSE TO
LAW OF THE CASE RULINGS

At a minimum, the Court should find that Schnitzer's purported reservation is ambiguous and, thus, must be evaluated by the jury. As the Court will recall, Schnitzer reserved "all rights available under applicable law to challenge [Continental's] decision." Schnitzer's *post-hoc* interpretation of this reservation (after filing the present lawsuit) was, of course, that it was reserving the right to challenge Continental's conditional payment of less than full rates and the right to seek recoupment of the additional amounts Schnitzer was paying at the full rates. However, there is nothing in the language of the actual "reservation" expressing such a specific right. As acknowledged by Schnitzer's cases cited in prior submissions, the terms of a reservation must be clear to be effective. More importantly, the reservation of all rights "under applicable law" requires that Schnitzer actually possess the reserved right under Oregon law. The Court has now definitively ruled that Schnitzer did not possess the right to unilaterally retain defense counsel and agree to the rates that its defending insurer must pay. Thus, it did not have the asserted right to reserve in the first place. In any case, if there is ambiguity concerning the specific right reserved, the jury must assess that issue, construing the language against Schnitzer.

Finally with respect to the alleged reservation, the Court appears to have factored the reservation into its "benefit" analysis under the rate agreement. Specifically, the Court noted that, if construed as a right to negotiate fee increases in the future, then "that's Schnitzer gaining zero, since they could have asked for those down the line anyway without those communications." *See* Exhibit A to Gottlieb Decl., at p.19: l.24 – p.20: l.3. Nevertheless, the reservation was not an exchanged benefit under the rate agreement but, rather, a means of effectuating the exchange – Continental's right to limit rates and Schnitzer's right to retain its

counsel of choice. The Court should not, therefore, weigh the reservation in assessing the relative benefits exchanged under the rate agreement.

The third and final set of rate agreement-related observations that Continental would like the Court to reconsider concerns the finding of a counteroffer. The Court apparently found that Continental accepted the "terms" of this alleged counteroffer. However, this finding should be reevaluated because Schnitzer's reservation does not qualify as a "counteroffer." Under well-established contract law, *a counteroffer must be capable of being accepted* by the other party. Here, there was not an "offer" capable of acceptance by Continental because *the reservation was not an invitation to further negotiation, but instead simply a unilateral statement made in connection with accepting Continental's offer*. See Restatement (2nd) of Contracts § 39, cmt a. (noting that a "counter-offer must be capable of being accepted; it carries negotiations on rather than breaking them off"); *see also, Restatement (2nd) of Contracts* § 38 cmt a ("A counter-offer amounts in legal effect to a statement by the offeree not only that he is willing to do something different in regard to the matter proposed, but also that he will not agree to the proposal of the offeror. A counter-offer must fulfill the requirements of an original offer. There is none unless there is a manifestation sufficient to create a power of acceptance in the original offeror.").[3]

---

[3] *Martin v. Ore Ins. Co.*, 232 Or. 197, 209-210, 375 P.2d 75, 81 (1962) (discussing requirements for a counter-offer under the Restatement), overruled on other grounds, *Bunn v. Monarch Life Ins. Co.*, 257 Or. 409, 478 P.2d 363 (1970).

**B.     The Court Should Reconsider Its Estoppel Ruling Concerning the Fee Differential**

The Court has also tentatively found that the law of the case precludes Continental's estoppel defense directed toward the attorney fee differential (versus Continental's responsibility for 70% of the reasonable and necessary defense costs pursuant to a cost sharing agreement). The Court appears to have partially predicated its tentative ruling on Schnitzer's alleged lack of knowledge regarding Continental's understanding of the nature of the parties' rate agreement. *See* Exhibit A to Gottlieb Decl., at p.23: ll.7-17. Thus, the Court imposes a requirement that the party against whom estoppel is asserted have actual knowledge of the other party's detrimental reliance. However, with respect to the reliance prong, there is no such requirement. Rather, in determining whether a party has detrimentally relied on particular representations or silence, the relevant focus is upon the knowledge of the relying party in judging whether its reliance was reasonable under the circumstances. *See In re Marriage of Menard,* 180 Or.App. 181, 186-187, 42 P.3d 359, 363 (2002) (setting forth the test for equitable estoppel).

Even if the Court imposes this additional requirement, the factual record supports a finding that Schnitzer should have known of Continental's reliance on the existence of a rate agreement. The parties operated under an institutionalized billing arrangement for many years while the Bingham rates continued to steeply rise. It was unreasonable for Schnitzer to assume that Continental would expose itself to the potential future risk that it would be required to retroactively make up the growing difference in rates. There is also no evidence that Schnitzer made any attempt to communicate the specific parameters of its alleged 2004 reservation until

after it filed this lawsuit. Thus, it was also unreasonable for Schnitzer to simply assume that Continental knew that Schnitzer was reserving a right that it did not have under Oregon law.

The Court concludes its discussion of this issue by observing that the knowledge issue is not determinative because "the law of the case just forecloses that argument as to a false understanding and moving forward with it." *See* Exhibit A to Gottlieb Decl., at p.23: ll.15-17. Continental understands this observation to relate to the Court's earlier tentative finding that Continental's interpretation of the agreement was not reasonable in light of the lack of any benefit to Schnitzer from entering into the rate agreement. Nevertheless, as addressed above, the Court should revaluate this predicate finding given the substantial benefit Schnitzer enjoyed in retaining its counsel of choice. Thus, the Court should reconsider its conclusion that there was not a "false understanding" in view of Continental's belief that both parties were benefiting under the terms of the rate agreement. At the very least, this issue is a question of fact for the jury.

## C.   Continental Is in General Agreement with the Court's Prejudgment Interest Proposal

Continental understands that the prejudgment interest calculation only potentially extends to allegedly late payments on invoices, not the attorney fee differential claim. Continental further understands that the Court proposes, in the interest of time,to allow Schnitzer to submit blocks of invoices organized by invoice type – *e.g.* attorney fee or consultant – to the jury. If possible, the jury will then decide what the reasonable time for submission of payment is for each invoice type. Post-trial, the Court will then apply any

reasonable time period(s) found by the jury to the invoice amounts to determine prejudgment interest.

Within this general framework, the Court has further found that, if Schnitzer is unable to provide admissible evidence regarding a reasonable time period, then prejudgment interest is not ascertainable and will be denied. Additionally in this regard, the Court will only allow Schnitzer to group the invoices into blocks if the evidence adduced at trial supports such grouping.

Continental is in general agreement with this approach subject to one caveat. To the extent the "time frame" issue now goes to the jury, Continental requests that the jury be instructed that any payments falling outside this time frame are not a basis for finding that Continental was in breach of contract. The jury's function is simply to weigh any admissible evidence regarding the appropriate time frame for payment to derive a number or numbers that can be used by the Court to calculate prejudgment interest post-trial.

### D.     Specific Comments Regarding "Job of the Jury" Instruction

#### 1.     The "Papak Rule"

In subsections 1(a) and 1(b), the Court sets forth an instruction based upon the so-called "Papak Rule" for determining if local or non-local rates apply. Continental generally agrees with the substance of this instruction. However, Continental is concerned that the instruction does not instruct the jury concerning the burden of proof. Continental incorporated burden of proof language into its version of the "Papak Rule" instruction. Nonetheless, Continental believes the Court's formulation would be perfectly acceptable if there will also be burden of

proof instructions on this issue that are the same as, or substantively similar to, the ones submitted by Continental.

### 2.  Reasonable and Necessary Defense Costs

Subpart 3 states: "Of Schnitzer's reasonable and necessary defense costs, how much, if any, has Continental not paid?"  Continental proposes that the instruction be rewritten to reflect the fact that Schnitzer has also submitted its invoices to, and those invoices have been paid by, other insurers.  Thus, the instruction should reflect this fact by providing: "Of Schnitzer's reasonable and necessary defense costs, how much, if any, has Continental and Schnitzer's other insurers not paid?"  This version recognizes the actual facts at issue and does not leave the jury with the misleading impression that Continental is solely responsible for Schnitzer's alleged defense expenses.

### 3.  Continental's 70 Percent Share

Subpart 5 provides: "Did Schnitzer waive its right to recover more than seventy percent of its defense costs from Continental?"  From the Court's April 4, 2014 rulings, Continental understood that the Court was preserving Continental's claim that it only owes 70 percent of Schnitzer's reasonable and necessary defense expenses on the basis of both equitable estoppel and waiver.  In accord with those rulings, Continental requests that the instruction be reworded to reflect the jury may also uphold Continental's claim based also upon its equitable estoppel defense.

### III.  CONCLUSION

For the foregoing reasons, Continental respectfully requests that the Court reconsider its tentative rulings addressed herein and adopt Continental's proposed, specific changes to the

Page 11 –DEFENDANTS' RESPONSE TO
LAW OF THE CASE RULINGS

685893.1/040714 1736/80360002

Court's Job of the Jury instruction.

DATED this 7th day of April 2014.

BETTS, PATTERSON & MINES, P.S.


By  */s/Lawrence Gottlieb*
   Lawrence Gottlieb, OSB #070869
   lgottlieb@bpmlaw.com
   Brett Sommermeyer, OSB #964326
   bsommermeyer@bpmlaw.com
   Lisa C. Neal, WSB #25686, Admitted *pro hac vice*
   lneal@bpmlaw.com
   Betts, Patterson & Mines
   701 Pike St., Suite 1400
   Seattle, WA  98101
   Attorneys for Defendants

Page 12 –DEFENDANTS' RESPONSE TO
LAW OF THE CASE RULINGS

685893.1/040714 1736/80360002

CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and the document is available for viewing and downloading from the CM/ECF system.  I also certify that the foregoing document is being served electronically via the Court's CM/ECF notice system upon the following counsel of record:

**Counsel for Plaintiffs**
Scott J. Kaplan
STOEL RIVES, LLP
900 SW Fifth Ave., Ste. 2600
Portland, OR  97204

Joseph W. Montgomery, III
John E. Iole
Rebekah Byers Kcehowski
JONES DAY
500 Grant St., Ste. 4500
Pittsburgh, PA  15219-2514

Louis A. Ferreira
Stoel Rives LLP
900 SW 5th Ave., Ste. 2600
Portland, OR  97204-1268

Crystal S. Chase
STOEL RIVES, LLP
900 SW Fifth Ave., Ste. 2600
Portland, OR  97204

DATED April 7, 2014.

By     */s/Lawrence Gottlieb*
Lawrence Gottlieb, OSB #070869
lgottlieb@bpmlaw.com
Betts, Patterson & Mines
701 Pike St., Suite 1400
Seattle, WA  98101
206-292-9988
Attorneys for Defendants