IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**SCHNITZER STEEL INDUSTRIES,
INC.,** an Oregon corporation; and
**MMGL CORP.,** a Washington corporation,

      Plaintiffs,

    v.

**CONTINENTAL CASUALTY
CORPORATION,** an Illinois corporation;
and **TRANSPORTATION INSURANCE
COMPANY,** an Illinois corporation,

      Defendants.

No. 3:10-cv-01174-MO

OPINION AND ORDER

**MOSMAN, J.,**

    Schnitzer Steel Industries, Inc. ("Schnitzer") was the prevailing party in the above captioned case. Under Oregon law, as the prevailing party, Schnitzer is entitled to its reasonable attorney fees. ORS § 742.061. Schnitzer's counsel seeks $3,483,878 in attorney fees for litigating the case on the merits, and $49,681 for fees incurred in their preparation of their fee petition.

## BACKGROUND

    On September 28, 2010, Schnitzer filed its complaint seeking damages for breach of contract in excess of $3,000,000 plus interest, and declaratory relief to resolve disputes regarding the parties' relationship going forward. (Complaint [1].) The claims arose out of Schnitzer's Portland Harbor insurance claim that had been pending with Continental Casualty Corporation ("Continental") for an extended period of time. (Memo. in Support of Costs [448] at 1.) Schnitzer alleged that Continental refused to pay, underpaid, or paid only after a substantial

delay Schnitzer's defense costs in the Portland Harbor matter. (*Id.*) Schnitzer retained two law firms to prosecute its claim: Jones Day and Stoel Rives.

After extensive discovery, numerous motions for summary judgment, and failed attempts at mediation and settlement, the parties ultimately tried the case in April 2014. The jury returned a verdict in favor of Schnitzer on every claim presented. The jury awarded Schnitzer the full amount of requested damages—$8,601,700. (Verdict [394].)

Continental filed post-trial motions regarding attorney fees, equitable estoppel, and laches. I denied each of Continental's motions, and entered judgment in favor of Schnitzer. (Order [419].) I confirmed the jury's damages award, awarded prejudgment interest of $2,463,867, and held that Schnitzer was entitled to recover its reasonable attorney fees and costs. *Id.*

## LEGAL STANDARDS

In diversity cases, attorney fee awards are governed by state law. *Schumacher v. City of Portland*, 2008 WL 219603, at *2 (D. Or. Jan. 23, 2008). In this case, ORS § 742.061(1) provides the relevant rules regarding whether or not an award of attorney fees is appropriate. That statute states, in relevant part:

> if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.

ORS § 742.061(1). This statute is intended to "encourage the settlement" of insurance claims and to "reimburse successful plaintiffs reasonably for moneys expended for attorneys fees in suits to enforce insurance contracts." *Chalmers v. Or. Auto. Ins. Co.*, 263 Or. 449, 452 (1972). When the

conditions enumerated in ORS § 742.061(1) are met, attorney fees must be awarded. *See*

*Petersen v. Farmers Ins. Co. of Oregon*, 162 Or. App. 462, 466 (1999).

Subsections (1) and (2) of ORS § 20.075 list the factors the Court must consider in

determining the amount of an award of attorney fees. The factors listed in subsection (1) are:

(a)     The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

(b)     The objective reasonableness of the claims and defenses asserted by the parties.

(c)     The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

(d)      The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

(e)     The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

(f)     The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

(g)     The amount that the court has awarded as a prevailing party fee under ORS 20.190.

(h)     Such other factors as the court may consider appropriate under the circumstances of the case.

ORS § 20.075(1). The factors listed in subsection (2) are:

(a)     The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

(b)     The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

(c)     The fee customarily charged in the locality for similar legal services.

(d)     The amount involved in the controversy and the results obtained.

      (e)      The time limitations imposed by the client or the circumstances of the case.

      (f)      The nature and length of the attorney's professional relationship with the client.

      (g)      The experience, reputation and ability of the attorney performing the services.

      (h)      Whether the fee of the attorney is fixed or contingent.

ORS § 20.075(2).

When analyzing the factors under ORS § 20.075, the Court should "includ[e] in its order a brief description or citation to the factor or factors on which it relies." *McCarthy v. Or. Freeze Dry, Inc.*, 327 Or. 185, 188 (1998). But the Court "ordinarily has no obligation to make findings on statutory criteria that play no role in the court's decision." *Frakes v. Nay*, 254 Or. App. 236, 255 (2012).

## DISCUSSION

## I.    <u>Application of ORS § 742.061</u>

Continental begins its opposition to Schnitzer's fee petition with a very interesting argument regarding the applicability of ORS § 742.061 to this case. Schnitzer tries to brush away Continental's argument as a frivolous attempt to avoid paying a fee award that Schnitzer argues is clearly mandated by statute. I disagree with Schnitzer that this is a clear cut decision, but ultimately agree with Schnitzer that ORS § 742.061 does apply to this case.

Continental argues that the plain language of ORS § 742.061 does not apply to this case. (Defs.' Opposition [464] at 7.) The statute clearly states that it applies when "an action is brought in any court of this state upon any policy of insurance . . ." (ORS § 742.061.) Continental argues that because Schnitzer did not bring its claim in a court *of* Oregon, but rather a court *in* Oregon, this statute does not apply. Continental's best piece of evidence to support its position is a recent

Ninth Circuit opinion interpreting the phrase "the courts of" in the context of a forum selection

clause. In that case, the Ninth Circuit held:

> We conclude[] that the choice of the preposition "of" in the phrase "the courts of
> Virginia" was determinative—"of" is a term "denoting that from which anything
> proceeds; indicating origin, source, descent, and the like." Thus, the phrase "the
> courts of" a state refers to courts that derive their power from the state—*i.e.* only
> state court—and the forum selection clause, which vested exclusive jurisdiction in
> the courts "of" Virginia, limited jurisdiction to the Virginia state courts.
>
> In short . . . a forum selection clause that specifies "courts of" a state limits
> jurisdiction to state courts, but specification of "courts in" a state includes both
> state and federal courts.

*Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205–06 (9th Cir. 2011) (internal citations omitted).

Continental would have this court interpret the statutory language of ORS § 742.061 the same

way that the *Expedia* court interprets the term "of" when found in forum selection clauses.

Schnitzer scoffs at this argument and lists the following unconvincing counter arguments:

(1) Continental waived this argument when it failed to raise it in its original objections to the

proposed judgment form that Schnitzer filed; (2) there are at least 30 prior decisions where

courts have granted attorney fees under ORS § 742.061 after an action brought in federal court;

and (3) Continental is precluded from raising this argument because of the principles of judicial

estoppel. (Pls.' Reply [471] at 2–9.)

Schnitzer's first argument is a very weak argument in favor of waiver. The Judgment

submitted by Schnitzer that I signed states that "[n]othing herein shall be construed to limit or

abridge Schnitzer's right under ORS 742.061 to the recovery of its attorney's fees in future

proceedings . . ." (Judgment [458] at 6.) While this phrase certainly suggests that Schnitzer will

eventually be awarded attorney fess pursuant to this statute, Continental reasonably could have

believed that an objection to the form of a judgment was not the proper time to raise arguments

as to the applicability of a fee shifting statute—it is not unreasonable to think that such an

objection would be better placed in an objection to the fee petition. I find that waiver is inappropriate in this case and reject it as a basis for disposing of Continental's argument against the application of ORS § 742.061.

I also reject Schnitzer's second argument that because 30 prior federal courts have awarded fees in the past under ORS § 742.061 that I must therefore follow suit and award fees as well. (Pls.' Reply [471] at 8–9.) As Continental points out, none of those prior cases ever considered the argument that Continental now raises. (Defs.' Opposition [464] at 7 n.4.) Because none of these cases dealt with the argument that Continental now makes, these 30 cases are of little to no precedential value in deciding the argument before me.

Schnitzer's third argument that I reject is that the principles of judicial estoppel apply to this argument. The principles of judicial estoppel prevent a party from gaining an advantage by taking one position at an early stage of the proceedings, and then seeking to gain a second advantage at a later stage of the proceedings by taking a second position that is incompatible with the first. *See Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). In determining whether judicial estoppel applies, courts generally consider 3 factors: (1) whether the party's later position is clearly inconsistent with the first; (2) whether the party succeeded in persuading a court of the earlier position; and (3) whether the party would gain an unfair advantage or impose an unfair disadvantage on its opponent if allowed to argue the second position. *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001). I do not believe that the principles of judicial estoppel apply in this case. The principles of judicial estoppel exist to prevent parties from manipulating courts, and that is not what I believe is going on here. While it is true that Continental has itself received attorney fees awards pursuant to ORS § 742.061 for cases held in federal court, I do not believe that that is very strong evidence that Continental is

trying to manipulate the court in making an argument against the applicability to this statute in this case. Continental was not seeking to defend itself from the application of ORS § 742.061 in those previous cases, and therefore had no motivation to think of creative or complex arguments as to why that statute might not apply. Continental has never taken an inconsistent position to the one it takes now with regards to ORS § 742.061 at an early stage of these proceedings. In addition, nothing in the position that Continental is now taking with regards to ORS § 742.061 creates an unfair advantage for Continental or unfair disadvantage for Schnitzer in dealing with this fee petition. I therefore find that judicial estoppel should not apply to this argument.

Schnitzer makes one final argument in favor of rejecting Continental's argument that ORS § 742.061 should not apply in this case based on *Erie* principles that I adopt in part. I believe that the *Erie* doctrine together with good public policy dictate that ORS § 742.061 should apply in this case. If I were to find that ORS § 742.061 was not applicable to this case, it would lead to the strange result that a federal court in Oregon sitting in diversity and an Oregon state court, applying the same Oregon law, would reach different results about whether attorney fees were available or not. Federal courts across the country applying ORS § 742.061 would look the same (i.e. would not award attorney fees), but a federal court in Oregon and a state court in Oregon would not. This result would also seem to stifle the stated purpose of ORS § 742.061 which is "is 'to encourage the settlement of claims and to discourage the unreasonable rejection of claims by insurers.'" *See Axis Surplus Ins. Co. v. Lebanon Hardboard, LLC*, No. CV 07-292-MO, 2009 U.S. Dist. LEXIS 15754, at *7 (D. Or. Feb. 26, 2009) (internal citations omitted). Parties would be able to get around this stated purpose by merely removing a case to federal court.

On the other hand, if I were to find that ORS § 742.061 did apply in this case because I determine that a federal court in Oregon is a court "of" Oregon, it would lead to the strange result that a federal court in Oregon sitting in diversity and a federal court in a foreign state sitting in diversity, both applying Oregon law, would reach a different result as to whether or not attorney fees are available. One would be a court "of" Oregon and the other would not. However, it would result in the federal court in Oregon and the Oregon state court reaching the same result. This seems like the proper result because it will avoid the intrastate forum shopping that *Erie* is intended to prevent and it would support the stated purpose of this statute by not creating an easy backdoor to thwart any impact it might have on encouraging settlements or discouraging unreasonable rejections of insurance claims.

I do not believe that this is an easy argument to deal with. Continental makes an interesting and compelling argument that linguistically this statute does not apply to this case. However, given that its argument is based on linguistics alone, I believe that the proper result in this case is the one that reduces intrastate forum shopping and supports the stated purpose of the statute. Therefore, I find that ORS § 742.061 is applicable to this case.

## II.    <u>Appropriate Hourly Rates</u>

Having determined that ORS § 742.061 does in fact mandate an award of attorney fees in this case, I must now determine what is a reasonable attorney fees award. Pragmatically, there are two main components in any attorney fees award: (1) determining whether or not the hourly rates claimed by the attorneys and their staff are reasonable; and (2) determining whether or not the total number of hours claimed by the attorneys and their staff is reasonable. ORS § 20.075 contains several factors that are relevant to determining the appropriate hourly rate for each timekeeper. The most relevant factors are those that require the court to consider the complexity

of the case, the rates charged in the locality for similar legal services, the time limitations imposed by the client or the case, and the experience, reputation, and ability of the attorney performing the services. (ORS § 20.075(2).) Continental claims that rates sought by Schnitzer for each one of its timekeepers are unreasonably large for the Portland market. (Defs.' Opposition [464] at 11–12.) I take up the reasonableness of each timekeeper's hourly rates below.

### A.    *Joan Snyder*

Ms. Snyder is a partner at Stoel Rives. Schnitzer's fees expert, David Markowitz, believes that $560 per hour is a reasonable billing rate for Ms. Snyder. (Markowitz Decl. [452] at 2.) Mr. Markowitz provides no support for this rate other than stating that he believes it to be reasonable given Ms. Snyder's experience, skills, and reputation in the area of environmental law. *Id.* While I normally would not view this as a sufficient basis to justify a claimed billing rate, Continental makes no objection to Ms. Snyder's billing rate despite making rather detailed objections to every other timekeepers' hourly rate. I therefore find that it is appropriate to use $560 per hour as the 2014 billing rate for Ms. Snyder. For the years prior to 2014, I adopt the rates suggested by Mr. Markowitz in the table he attached to his declaration. (*Id.* Ex. 3.)

### B.    *Scott Kaplan*

Mr. Kaplan is also a partner at Stoel Rives. Mr. Markowitz opines that $480 per hour is a reasonable billing rate for Mr. Kaplan. (*Id.*) Mr. Markowitz goes into much more detail regarding his determination of Mr. Kaplan's reasonable hourly rate. Mr. Markowitz consulted both the Oregon State Bar 2012 Economic Survey ("Bar Survey") and the 2014 Morones Survey ("Morones Survey"). (*Id.* at 2.) According to the Bar Survey, the 95th percentile rate for all attorneys admitted to practice 21 to 30 years is $470 per hour and the 95th percentile rate for

business/corporate litigation attorneys is $450. (*Id.*) According to the Morones Survey, the average hourly rate for an attorney with 30+ years of experience is $448 per hour. (*Id.*)

Mr. Kaplan has 25 years of experience as a corporate litigator. Without telling us how or why Mr. Kaplan's skills are above average, Mr. Markowitz argues that Mr. Kaplan's above average experience and skill warrant treating him as an attorney with 30+ years of experience. Assuming that I chose to do that, Mr. Markowitz argues that by applying what he believes to be reasonable growth rates to the two surveys rates, $480 per hour is a reasonable hourly rate for Mr. Kaplan's work on this case.

Continental argues that this rate is too high. Continental's fees expert, William Stockton, opines that none of the partners in this case should be able to charge an hourly rate that exceeds $400. (Stockton  Decl. [467] at 8.) Mr. Stockton bases his opinion on the Bar Survey and his own anecdotal experience of the Portland market. (*Id.*)

Given the evidence that I have before me, I find that a reasonable hourly rate for Mr. Kaplan in 2014 is $480. In reaching this number, I did not determine that Schnitzer's expert was more credible than Continental's. The parties presented me with a battle of their experts' subjective opinions without any objective way to choose between the two. What tipped the scale in Schnitzer's favor was the fee schedule that Mr. Kaplan attached to his declaration in support of the fees petition that detailed what rates Stoel Rives actually charged its clients in the relevant years. (Kaplan Decl. [450] Ex. 2.) Mr. Markowitz's suggested hourly rates for the years 2010 to 2014 track the rates that Stoel Rives was actually charging its other clients for Mr. Kaplan's time. (Markowitz Decl. [452] Ex. 3.) For the years prior to 2014, I adopt Mr. Markowitz's suggested rates for Mr. Kaplan.

C.    *Crystal Chase*

For the same reasons that I adopted Mr. Markowitz's suggested rates for Mr. Kaplan, I

adopt the rates set out in his table for Ms. Chase as well. (*Id.* Ex. 3.)

D.    *John Iole and Joseph Montgomery*

Mr. Iole and Mr. Montgomery are partners at Jones Day. Mr. Markowitz opines that $619

per hour is a reasonable billing rate for someone of similar experience and skill as Mr. Iole or

Mr. Montgomery. (*Id.* at 5.) Mr. Markowitz only relies on the Morones Survey in making this

determination. (*Id.*) Mr. Iole's current billing rate is $727.50 per hour and Mr. Montgomery's is

$921.50 per hour. (Iole Decl. [451] Ex. F.) Mr. Markowitz points to the Morones Survey that

shows that the 2012 average billing rate for the 15 attorneys with the highest rates in Oregon was

$569 per hour. (Markowitz Decl. [452] at 5.) Given the data that has been collected so far,

Mr. Markowitz projects that that number will rise to $619 for 2014. (*Id.*) Mr. Markowitz believes

that Mr. Iole's and Mr. Montgomery's individual experiences on other large insurance cases

justifies them receiving the highest of rates available in the Oregon market. (*Id.*) Continental,

through Mr. Stockton, repeats the same arguments to lower this rate to $400 as it did for

Mr. Kaplan. (Stockton  Decl. [467] at 8.)

I find that the rates charged by Mr. Iole and Mr. Montgomery outside of Oregon, together

with their extensive background in major insurance litigation, justify adopting $619 per hour as

the appropriate 2014 billing rate for Mr. Iole and Mr. Montgomery. I disagree, however, with

Mr. Markowitz that for 2010 up to the present $619 is the proper reasonable rate. In 2010,

Mr. Iole's hourly rate was $625, and Mr. Montgomery's was $775. (Iole Decl. [451] Ex. F.) That

means from 2010 until 2014, Mr. Iole's and Mr. Montgomery's hourly rates increased 16.4% and

18.9% respectively. I choose to take a conservative approach to calculating attorney fees and

therefore order that the fee suggested by Mr. Markowitz for 2010 be decreased by 18.9% and then increased each year at an average growth rate of roughly 4.4%. I find that the appropriate reasonable rate for the years 2010 to 2014 respectively are $521, $544, $568, $593, and $619.

### E.   *Rebekah Kcehowski*

Ms. Kcehowski is an attorney with Jones Day. She began working on this case as a senior associate, and in the course of the litigation she was made a partner. (Markowitx Decl. [452] at 5.) Mr. Markowitz opines that the respective rates for Ms. Kcehowski's work on this case from 2011 to 2014 are $360, $380, and $400. (*Id.* at 6.) Mr. Markowitz calculated these numbers from the Bar Survey and the Morones Survey in the same way as for earlier individuals discussed. He references the 2012 95th percentile rate for lawyers with equivalent experience ($428), and the 2012 75th percentile rate for business and corporate litigators ($360). (*Id.*) Mr. Markowitz says that we should use $360 as the appropriate rate without any arguments why, and then adjusts that rate upwards for inflation for the subsequent years. (*Id.*)

Continental agrees that I should look to the relevant 75th percentile amount, but argues that I should apply the 75th percentile rate of attorneys with 10–12 years of experience ($300) and not the 75th percentile rate for business and corporate litigators. (Stockton Decl. [467] at 11.) Like Mr. Markowitz, Mr. Stockton does not provide me with any substantial evidence for why I should choose one over the other.

I therefore, again, am left with Jones Day billing rates as the tie breaker. According to the billing rates table attached to Mr. Iole's declaration, for the years that Ms. Kcehowski was working on this case, Jones Day was billing clients in a range of $436.50 to $674.15 per hour from the years 2011 to 2014 for her time. (Iole Decl. [451] Ex. F.) Given that clients outside of Portland were willing to pay such a high rate for Ms. Kcehowki's time, I find that it is

appropriate to give her the higher starting rate of $360 per hour for 2012. I therefore also adopt

the suggested rates set out in Mr. Markowitz's table for Ms. Kcehowski. (Markowitz Decl. [452]

Ex. 3.)

### F.    *Johanna Miralles, Allison Parker, and Matthew Samburg*

Johanna Miralles, Allison Parker, and Matthew Samburg are, or were at the time of their

work on this case, associates at Jones Day. I agree with Mr. Markowitz's argument that there is

no obvious reason why these associates should bill at any lower of a rate than Ms. Chase's actual

rates. (*Id.* at 6.) I therefore adopt her actual rates as the appropriate reasonable billing rates for

these similarly situated associates.

### G.    *Paralegal Rates*

Neither party makes very compelling arguments to support their proposed rate for

paralegal work. Mr. Markowitz points out in his declaration that according to the Morones

Survey, the average paralegal billing rate for 2012 for all paralegals in Portland was $173 per

hour. (*Id.* at 7.) Given the absence of any compelling evidence showing that I should adopt

Mr. Markowitz's suggested rate of $240–$250 or Mr. Stockton's suggested rate of $100–$125, I

simply adopt the average rate from the Morones Survey as the appropriate rate—$173 per hour.

### H.    *Support Personnel Rates*

Mr. Markowitz argues that the appropriate hourly rates for litigation technology assistants

and for production assistants are $140 per hour and $80 per hour respectively. (*Id.* at 7.) These

numbers are purely derived from Mr. Markowitz's personal experiences. (*Id.*) Mr. Stockton,

without citing any authority, simply states that he thinks these fees should not be recoverable at

all. (Stockton Decl. [467] at 11–12.) I disagree with Mr. Stockton, and therefore find, given no

alternative proposed rates, that the appropriate rates to use for these timekeepers are $140 for litigation technology assistants and $80 for production assistants.

### III.    Application of ORS § 20.075 Factors

Having determined what the appropriate hourly rate for each time keeper is, I now turn to determining the appropriate number of hours that should be billed on this case. ORS § 20.075(2) requires me to consider the relevant factors in subsections (1) and (2) in determining this value. The parties briefed arguments on what they believe to be the relevant sections. I take up those arguments below. I conclude that Schnitzer's number of hours worked on this case is reasonable.

####     A.    *ORS § 20.075(1)(a): The Conduct of the Parties*

Schnitzer makes a lot of the fact that it won on all of its claims at trial and therefore it should get all the fees it asks for. (Petition for Fees [449] at 6–7.) I agree with Continental, however, that this factor has little to do with the size of the fee award in this case, and therefore does nothing to advance Schnitzer's argument. The fact that Schnitzer won on all of its claims has little probative value in determining whether or not the total time its lawyers spent winning those claims was reasonable.

####     B.    *ORS § 20.075(1)(b): The Objective Reasonableness of the Claims, and Defenses Asserted by the Parties*

Again, I find that this favor does not cut in either party's favor. Schnitzer argues that the fact that the jury took only a few hours to deliberate and award Schnitzer everything it had asked for somehow evidences that Continental's defenses at trial were objectively unreasonable. (Petition for Fees [449] at 9). I agree with Continental that such an inference from those facts would be inappropriate. (Defs.' Opposition [464] at 14.) The fact that a party loses at trial on certain claims or defenses does not without more imply that those claims or defenses were objectively unreasonable. I believe that both parties' respective claims and defenses were

reasonable, and therefore find that this factor is neutral as to the ultimate fee award.

**C.      *ORS § 20.075(1)(c) & (d): Effect of Award on Good Faith Claims and Defenses, and on Meritless Claims and Defenses in Future Cases***

Schnitzer correctly states that the purpose of ORS § 742.061 "is 'to encourage the settlement of claims and to discourage the unreasonable rejection of claims by insurers.'" *See Axis Surplus Ins. Co.*, 2009 U.S. Dist. LEXIS 15754, at *7 (internal citations omitted). Awarding Schnitzer all of its requested attorney fees would serve this purpose.

Continental first argues that it did not pursue any meritless defenses and so this factor is inapplicable. It then argues that an award of all the fees sought by Schnitzer would deter even good faith defenses by similarly situated defendants in the future. (Defs.' Opposition [464] at 17–18.)

I agree with Continental that subsection (d) is not relevant to this case because Continental did not pursue any meritless defenses. It did whittle down the number of defenses it would present at trial over the course of the litigation, but that is a fairly common practice as cases are refined and rethought throughout the discovery process. I do, however, find that subsection (c) weighs quite heavily in Schnitzer's favor given the stated purpose of ORS § 746.061. Granting attorney fees in any amount imposes a cost on defendants who present good faith defenses at trial but who ultimately lose, and therefore any amount of attorney fees deters all defendants from asserting any and all good faith defenses. The Oregon Legislature has determined that this is an appropriate burden to place on defendant insurers in order to meet its public welfare goals. I have no power to second guess that decision. I therefore find that ORS § 20.075(1)(c) weighs in favor of granting Schnitzer all of its reasonable attorney fees because it helps accomplish the stated purpose of ORS § 742.061.

### D.    ORS § 20.075(1)(e): Objective Reasonableness of Parties' Diligence

Schnitzer argues that it created and followed a litigation plan with the two firms that it hired, which led to efficient and non-duplicative legal work on this case. (Petition for Fees [449] at 7–9.) Continental argues that Schnitzer's attorney billing sheets tell a different story. Continental, however, fails to sufficiently support its position. Continental merely identifies 8 different examples of what it believes to be excessive or duplicative work, and it claims, without identifying them, that there are many more such cases of overbilling. (Defs.'s Opposition [464] at 15–16.) Continental fails to tell me how much time these tasks should have taken or identify exactly where the duplicative billing occurred. I reviewed the Schnitzer billing sheets that Continental attached to Mr. Sommermeyer's declaration, but I fail to see any obvious examples duplicative billing. (Sommermeyer Decl. [466] Ex. G.) Continental tells me that these are just a few examples and that I should now go and find more. (*Id.* at 3; *see also* Defs.' Opposition [464] at 16.) Continental apparently believes that its time is more valuable than mine, and therefore leaves the task of combing through the record to find evidence supporting their arguments up to me. I disagree that its time is more valuable than mine. Because Continental has failed to provide adequate evidence in support of its position that Schnitzer's attorneys engaged in excessive billing and duplicative work, I find that this factor weighs in Schnitzer's favor.

### E.    ORS § 20.075(1)(f): Objective Reasonableness of the Parties in Pursuing Settlement

I find that this factor is neutral as to each party's position. The parties tell conflicting stories without providing any great evidence to sort out all of the details. Continental argues that it attempted on numerous occasions to get Schnitzer to agree to meet with a mediator to attempt to resolve their dispute outside of court. (Defs.' Opposition [464] at 18.) Continental claims that Schnitzer refused to participate unless Continental bore the burden of all the costs related to

mediation. (Gottlied Decl. [465] Ex.s 1–7.) Schnitzer responds that the reason it refused to engage in mediation unless Continental bore all of the costs was because previous attempts at settlement had shown that Continental had no real desire to settle, but rather just sought to force its "settlement terms" down Schnitzer's throat. (Pls.' Reply [471] at 19.) Nothing in Continental's briefing rebuts Schnitzer's story, but Schnitzer has not provided much evidence to support its story. Given the state of the evidence, I cannot find that either side was more or less reasonable than the other. I therefore find that this factor weighs equally in each party's favor.

**F.    *ORS § 20.075(2)(a): Time and Labor Required / Novelty and Difficulty***

I have considered the arguments made by each party and find that this factor is neutral as to each party's position. Each party makes a few conclusory statements that this case was either very complex or a simple breach of contract case. At its most fundamental level, this was a simple breach of contract case. However, almost any case characterized in its most fundamental form can look quite basic. This case took nearly 4 years to run its course. It was something more than a simple breach of contract case. But whether or not it was as complex as Schnitzer argues it was is unclear given the lack of evidence that they have presented. Given the state of the evidence, I find that this factor weighs equally between the parties.

**G.    *ORS § 20.075(2)(d): Amount Involved and the Result Obtained***

It is undisputed that Schnitzer won on all claims, receiving all the monetary relief that it sought: roughly $8,600,000 in presently unpaid defense costs plus an additional $2,400,000 in prejudgment interest. I find this to be an odd factor because it does not seem to inform a finding of how much the attorneys are worth paying, but rather just a finding that they are in fact worth paying some amount greater than zero because they won the case. Nevertheless, given that this is a factor that I must consider, it undoubtedly weighs in Schnitzer's favor.

17 – OPINION AND ORDER

**CONCLUSION**

For the foregoing reasons, I find that all of the factors from ORS § 20.075 that I am required to consider are either irrelevant, neutral or weigh in favor of granting Schnitzer's petition for fees—both the fees it claims for litigating the case, and the fees it claims for preparing its fee petition. I order that the parties recalculate the total fees owed to Schnitzer based on the hours previously claimed, but with the rates for each timekeeper that I set out above. I will then review this calculation and award it as the reasonable attorney fees award in this case. Schnitzer's Petition for Fees [449] is GRANTED according to the foregoing instructions.

IT IS SO ORDERED.

DATED this  12th  day of November, 2014.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge